**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex M. Tomasevic (SBN 245598)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

Attorneys for Plaintiff,
ERIC LAGUARDIA

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ERIC LAGUARDIA, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

DESIGNER BRANDS INC., f.k.a. DSW, Inc., an Ohio corporation; and DSW SHOE WAREHOUSE, INC., a Missouri corporation,

Defendants.

CASE NO.: '19CV1568 JM BLM

CLASS ACTION

**COMPLAINT FOR COMPENSATORY, STATUTORY AND OTHER DAMAGES, AND INJUNCTIVE RELIEF**

Plaintiff Eric LaGuardia ("Plaintiff") brings this action on behalf of himself and all others similarly-situated against Designer Brands, Inc., an Ohio Corporation formerly known as DSW, Inc.; and DSW Shoe Warehouse, Inc., a Missouri corporation (collectively referred to as "DSW" or "Defendants"). Plaintiff alleges, on information and belief, except for information based on personal knowledge, as follows:

## INTRODUCTION

1. Plaintiff brings this class action against DSW to stop it from making unsolicited and auto-dialed "spam" text message calls to cellular phones, and to obtain redress for all persons injured by this illegal conduct.

2. Among other things, DSW sells brand name and designer footwear and accessories. Today, it operates more than 500 stores in 44 states.

3. In an effort to promote its sales, DSW transmits unauthorized advertisements in the form of bulk spam text message calls to the cellular telephones of unwilling consumers. And it bombards consumers with unwanted spam even after they tell DSW that they want the spam to stop. Moreover, DSW bombarded some consumers with unwanted spam even though they were registered on the National Do Not Call registry.

4. By sending these unauthorized text message calls, or wireless spam, DSW has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies wireless spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such wireless spam.

5. In order to redress these injuries, Plaintiff, on behalf of himself and others similarly-situated, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. Sections 227, *et seq.* ("47 U.S.C. § 227") and California Business & Professions Code Section 17538.41, which prohibit unsolicited voice and text calls to cell phones.

6. On behalf of the class, Plaintiff seeks an injunction requiring DSW to cease all wireless spam activities and an award of statutory damages to the class members.

///

///

///

**PARTIES**

7. Plaintiff Eric LaGuardia is an individual residing in San Diego County, California.

8. Defendant Designer Brands, Inc. is an Ohio Corporation headquartered at 810 DSW Drive, Columbus, Ohio. It is formerly known as DSW, Inc. Together with its subsidiaries, including co-Defendant Designer Shoe Warehouse, Inc., Designer Brands owns, operates, and controls the "Designer Shoe Warehouse" (aka "DSW") chain of shoe stores. At all relevant times, Designer Brands, Inc. has been doing business in at least 44 U.S. States, including California.

9. Upon information and belief, at all relevant times Defendant DSW Shoe Warehouse, Inc., a Missouri corporation also headquartered at 810 DSW Drive, Columbus, Ohio, has been doing business in at least 44 U.S. States, including California. Upon information and belief, DSW Shoe Warehouse, Inc. is a wholly owned subsidiary of co-Defendant Designer Brands, Inc. and, together, Defendants collectively own, operate, and control the "Designer Shoe Warehouse" (aka "DSW") chain of shoe stores. Defendants, at all relevant times, have had a common practice and policy of sending bulk unwanted spam messages, including those described more fully below.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1331 because this action arises under a law of the United States, namely the Telephone Consumer Protection Act, 47 U.S.C. Sections 227, *et seq*. This Court also has supplemental jurisdiction over the state law claims alleged herein under 28 U.S.C. Section 1367. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (d), because (a) at least one member of the putative class is a citizen of a state different from DSW, (b) the

amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

11. Venue is proper in this district because one or more Defendants transact business in this District, including by soliciting consumers in and from this District.

## ADDITIONAL FACTUAL BACKGROUND

12. In recent years, marketers and salesman, stymied by California and federal laws limiting solicitation by telephone, fax, and e-mail, have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

13. One of the newer types of such bulk marketing is advertising through Multimedia Messaging Service ("MMS") and Short Message Services ("SMS"). SMS is a messaging system that allows marketers and cellular telephone subscribers to send and receive short text messages, usually limited to 160 characters. The MMS standard extends the core SMS capability, allowing exchange of text messages greater than 160 characters in length as well as the exchange non-text media. Collectively, SMS and MMS messages are often referred to, simply, as "text messages."

14. Text messages are essentially calls to a wireless device. When a text message is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including text messages, may be received by the called party virtually anywhere worldwide.

15. Many marketers and sellers use auto-dialers, or "robo-callers" to blast out identical commercial text messages in bulk. DSW used and continues to use these auto-dialers to send unsolicited commercial spam messages to consumers like plaintiff Eric LaGuardia.

16. Unlike more conventional advertisements, wireless spam costs some recipients money because cell phone users must frequently pay their respective

wireless service providers either for each text message call they receive, or for a text plan, whether the message is authorized or not. As our own Federal Communications Commission ("FCC") has said: not only are such unsolicited messages "annoying and time-consuming," they "can be intrusive and costly." (FCC Guide, *Spam: Unwanted Text Messages and Email*.)

17. DSW, upon information and belief, and either itself or in conjunction with one or more marketing partners, acquired lists of consumer cell phone numbers.

18. Once DSW acquired its phone numbers, it sent massive amounts of spam commercial text message advertisements using auto-dialers or robo-callers, including to Plaintiff. Upon information and belief, DSW continues to do so today.

19. DSW not only sent and continues to send unsolicited text messages to consumers without their express consent, DSW persists in sending spam to consumers even after they have affirmatively and expressly told DSW that they do not want to receive such texts. DSW also sent its wireless spam to those consumers who were previously registered to the Naitonal Do Not Call Registry, pursuant to the TCPA, 47 USC 227(c).

20. For example, in July and August of 2019, DSW used an automatic telephone dialing system to make spam commercial text message calls to consumers, including to plaintiff Eric LaGuardia's cellular telephone.

21. DSW sent one such message on July 3, 2019. The "sender" or "from" field in the text cryptically contained only the 6-digit number: 748-588. The body of that commercial spam message said, in pertinent part:

DSW: 20% off + FREE gift! In
stores & online thru 7/8:
https://bit.ly/31q6AEK
Exclusions apply. Reply HELP

for help or STOP to end. Msg &
Data rates may apply.

22. Plaintiff immediately replied to DSW's message with "Stop" and received the following response immediately thereafter from DSW:

DSW SMS Alerts: You've been
unsubscribed and will receive
no further alerts from DSW.
Reply HELP or call
866-379-7463 for info.
Msg&DataRatesMayApply

23. But despite Plaintiff's "Stop" response, and despite DSW's acknowledgement and promise that it would send no further spam texts, on July 15, 2019, DSW sent Plaintiff *another* unsolicited and unauthorized spam text message from the same number. The body of that commercial spam message said, in pertinent part:

DSW: Get 20% off + a FREE
beach blanket! Shop now:
https://bit.ly/2LMZWTN. Reply
HELP for help or STOP to end.
Msg & Data rates may apply.

24. And DSW did not stop there. Several days later, on July 29, 2019, DSW sent yet another spam text message from the same 6-digit number: 748-588. The body of that spam message said, in pertinent part:

DSW: Get $10 off + an EXTRA
$5 off when you shop in-app:
https://bit.ly/2K3kZQW. Reply
HELP 4 help or STOP 2 end.
Msg & Data rates may apply.

25. Plaintiff replied a few hours later with another "Stop" message and, once again, DSW sent the following reply:

DSW SMS Alerts: You've been
unsubscribed and will receive
no further alerts from DSW.
Reply HELP or call
866-379-7463 for info.
Msg&DataRatesMayApply

26. But DSW's second promise to stop spamming was yet another lie. Days later, on August 15, 2019, DSW sent another spam text message from the same 6-digit number: The message said, in pertinent part:

DSW: Get $20 bonus card with
$49+ sneaker purchase! In
stores & online. Shop now:
https://bit.ly/2MaOLop. Reply
HELP 4 help or STOP 2 end.
Msg/Data rates apply.

27. Plaintiff then had to send several more "stop" messages and the like.

28. Here is what the frustratingly long series of bulk spam messages looked like on Mr. LaGuardia's phone, starting on July 3rd:

///

///

///

///

///

///

///

///

748-588 >

Text Message
Wed, Jul 3, 11:12 AM

DSW: 20% off + FREE gift! In stores & online thru 7/8: https://bit.ly/31q6AEK Exclusions apply. Reply HELP for help or STOP to end. Msg & Data rates may apply.

Stop

DSW SMS Alerts: You've been unsubscribed and will receive no further alerts from DSW. Reply HELP or call 866-379-7463 for info. Msg&DataRatesMayApply

Mon, Jul 15, 11:27 AM

DSW: Get 20% off + a FREE beach blanket! Shop now: https://bit.ly/2LMZWTN. Reply HELP for help or STOP to end. Msg & Data rates may apply.

Mon, Jul 29, 9:32 AM

DSW: Get $10 off + an EXTRA $5 off when you shop in-app: https://bit.ly/2K3kZQW. Reply HELP 4 help or STOP 2 end. Msg & Data rates may apply.

Mon, Jul 29, 2:42 PM

Stop

DSW SMS Alerts: You've been unsubscribed and will receive no further alerts from DSW. Reply HELP or call 866-379-7463 for info. Msg&DataRatesMayApply

I do not want these texts.

DSW Alerts: Sorry, keyword not recognized. Visit tinyurl.com/dswsms, call 866-379-7463 for more info. Reply HELP for help, STOP to cancel. Msg&DataRatesMayApply

Stop

DSW SMS Alerts: You've been unsubscribed and will receive no further alerts from DSW. Reply HELP or call 866-379-7463 for info. Msg&DataRatesMayApply

Today 9:17 AM

DSW: $20 bonus card with $49+ sneaker purchase! In stores & online. Shop now: https://bit.ly/2MaOLoP. Reply HELP 4 help or STOP 2 end. Msg/Data rates apply.

Stop

STOP

STOP 2

DSW SMS Alerts: You've been unsubscribed and will receive no further alerts from DSW. Reply HELP or call 866-379-7463 for info. Msg&DataRatesMayApply

DSW SMS Alerts: You've been unsubscribed and will receive no further alerts from DSW. Reply HELP or call 866-379-7463 for info. Msg&DataRatesMayApply

DSW SMS Alerts: You've been unsubscribed and will receive no further alerts from DSW. Reply HELP or call 866-379-7463 for info. Msg&DataRatesMayApply

Text Message

29. In short, DSW knowingly and intentionally sent multiple bulk commercial spam text messages to thousands of mobile phone users, including Plaintiff, without their consent and even after consumers expressly and repeatedly told DSW they wanted no such messages. And DSW sent many of these unauthorized texts to consumers who, like Eric LaGuardia, were already registered on the national Do Not Call Registry pursuant to 47 U.S. 227(c).

## CLASS ACTION ALLEGATIONS

30. Upon information and belief, DSW has had a common practice of sending bulk illegal spam text messages to consumers for some time.

31. Plaintiff, therefore, brings this action pursuant to Federal Rules of Civil Procedure, Rule 23(a) and 23(b)(2) and 23(b)(3) on behalf of himself and a class (the "Class") defined as follows:

> All persons who received one or more text messages from or on behalf of DSW.

32. Plaintiff also brings this lawsuit on behalf of himself and the following proposed sub-class of California consumers:

> All persons in California who received one or more text messages from or on behalf of DSW.

33. Plaintiff also brings this lawsuit on behalf of himself and the following proposed sub-class of consumers who were registered on the National Do Not Call Registry:

> All persons who received more than one text message from or on behalf of DSW in any 12-month period despite having been registered on the National Do Not Call Registry.

34. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class[1] may be

[1] The "Class" shall refer collectively to both the nationwide and California classes described in the above paragraphs.

expanded or narrowed by amendment, amended complaint, or at the time of moving for class certification.

35. ***Numerosity***. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains tens of thousands of members. The precise number of Class members is unknown to plaintiff. The true number of Class members is known by DSW, however, and thus, Class members may ascertained and may be notified of the pendency of this action by first class mail, electronic mail, text message, and by published notice, to the extent necessary.

36. ***Existence and Predominance of Common Questions of Law and Fact***. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) Does the wireless spam DSW distributed violate 47 U.S.C. Section 227?

(b) Does the wireless spam DSW distributed violate Cal. Bus. & Prof. Code Section 17538.41?

(c) Are the Class members entitled to damages or penalties?

(d) Are the Class members entitled to treble damages based on the willfulness of DSW's conduct?

(e) Are the Class members entitled to declaratory and/or injunctive relief?

37. ***Typicality***. Plaintiff's claims are typical of the claims of the members of the Class in that all class members were subject to the same kind of illegal spam text messaging at the hands of DSW.

38. ***Adequacy of Representation***. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and plaintiff intends to prosecute this

action vigorously. Plaintiff has no interests adverse or antagonistic to those of the Class.

39. ***Superiority***. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense in litigating claims individually against DSW. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

40. Unless a Class is certified and a Class-wide injunction is issued, DSW will continue to commit and wrongly profit from the violations alleged, and the members of the Class and the general public will continue to be injured.

41. DSW has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class in transmitting the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

42. The factual and legal bases of DSW's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all the other members of the Class as a result of the transmission of the wireless spam alleged here. Plaintiff and the other Class members have all suffered harm

and damages as a result of DSW's unlawful and wrongful conduct as a result of the transmission of wireless spam.

**COUNT NO. 1**

**(Violation of the TCPA, 47 U.S.C. § 227, on behalf of the Class)**

43. Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth here.

44. DSW, either on its own or in concert with one or more of its authorized agents, acquired lists of consumer phone numbers for the purpose of sending commercial spam text messages for its own monetary gain.

45. DSW then made thousands of unauthorized commercial text calls, including, but not limited to, the messages copied above, to wireless telephone numbers belonging to the Class, including to plaintiff Eric LaGuardia. Each such text message call was made using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator. By using such equipment, DSW was able to effectively send thousands of spam text messages simultaneously to thousands of wireless phones without human intervention.

46. DSW's text calls were made *en masse* and without the prior express consent of the Plaintiff and the other members of the Class to receive such wireless spam.

47. DSW has, therefore, violated the TCPA, including 47 U.S.C. Section 227(b)(1)(A)(iii). As a result of DSW's conduct, the members of the Class suffered actual damages including by having to pay their respective wireless carriers for the text messages and, under section 227(b)(3)(B), are each entitled to, *inter alia,* a minimum of $500 in damages for each violation.

48. Moreover, because DSW knowingly and willfully violated the TCPA, and had knowledge that Plaintiff and the Class did not consent to the receipt of wireless spam and, in fact, did not want such spam, the Court should, pursuant to

47 U.S.C. Section 227(b)(3), treble the amount of statutory damages recoverable by the Plaintiff and the other members of the Class.

**COUNT NO. 2**

**(Violation of the TCPA, 47 U.S.C. § 227,**

**on behalf of the Do Not Call Registry Sub-Class)**

49. Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth here.

50. As mentioned above, DSW made thousands of unauthorized and illegal commercial text calls, including, but not limited to, the messages copied above, to wireless telephone numbers belonging to the Class, including to plaintiff Eric LaGuardia. Many of those class members, including Plaintiff, had been previously registered on the National "Do Not Call" Registry pursuant to 47 U.S.C. § 227(c), i.e., were members of the Do Not Call Registry Sub-Class as defined above.

51. Plaintiff Eric LaGuardia has been registered on the national Do Not Call Registry since at least 2014. Plaintiff and his fellow Do Not Call Registry sub-class members were registered on that list when they received DSW's wireless spam.

52. DSW has, therefore, committed additional violations of the TCPA, including 47 U.S.C. Section 227(c). As a result of DSW's conduct, Plaintiff and the members of the Do Not Call Registry Sub-Class are each entitled to, *inter alia*, an additional $500, at a minimum, for each violation.

**COUNT NO. 3**

**(Violation of Cal. Bus. & Prof. Code § 17538.41,**

**on behalf of the California Sub-Class)**

53. Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth here.

54. California Business & Professions Code Section 17538.41 prohibits a person or entity conducting business in California from transmitting or causing to be transmitted a text message advertisement to a "mobile telephony services handset, pager, or two-way messaging device that is equipped with short message capability or any similar capability allowing the transmission of text messages." For the reasons discussed above, DSW has violated this statute.

55. DSW, either on its own or in concert with one or more of its authorized agents, acquired lists of consumer phone numbers for the purpose of sending commercial spam text messages for its own monetary gain.

56. DSW then made unauthorized commercial text calls, including, but not limited to, the messages copied above, to the wireless telephone numbers of the Class, including to plaintiff Eric LaGuardia.

57. DSW's text calls were made *en masse* and without the prior express consent of the Plaintiff and the other members of the Class to receive such wireless spam.

58. Plaintiff, on behalf of himself and all others similarly situated, seeks damages, restitution, and an injunction prohibiting DSW from continuing such practice, and all other relief this Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Eric LaGuardia, on behalf of himself and the Class prays for the following relief:

1. An order certifying the Class as defined above, including all sub-classes;
2. An award of actual and statutory damages, where appropriate;
3. Punitive or treble damages according to statute or where otherwise appropriate;
4. An injunction requiring DSW to cease all wireless spam activities;

5. An award of reasonable attorneys' fees and costs; and

6. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff hereby requests trial by jury of all claims that can be so tried.

Respectfully submitted:

DATED: August 20, 2019

**NICHOLAS & TOMASEVIC, LLP**

By: */s/ Alex Tomasevic*
Craig M. Nicholas
Alex Tomasevic

Attorneys for Plaintiff