**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex M. Tomasevic (SBN 245598)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

**LAKESHORE LAW CENTER**
Jeffrey Wilens (SBN 120371)
18340 Yorba Linda Blvd., Suite 107-610
Yorba Linda, California 92886
Telephone: (714) 854-7205
Facsimile: (714) 854-7206
Email: jeff@lakeshorelaw.org

**THE SPENCER LAW FIRM**
Jeffrey P. Spencer (SBN 182440)
2 Venture, Suite 220
Irvine, California 92618
Telephone: (949) 240-8595
Facsimile: (949) 377-3272
Email: jps@spencerlaw.net

Attorneys for Plaintiffs

[*Additional counsel for Plaintiffs appear on the following page.*]

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERIC LAGUARDIA, SOPHIA WINGATE, LINDSAY RUCKER, and NICOLE R. AUSTIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DESIGNER BRANDS INC., f/k/a DSW, INC., an Ohio corporation; and DSW SHOE WAREHOUSE, INC., a Missouri corporation,<br><br>Defendants. | CASE NO.: 3:19-cv-01568-JM-BLM<br><br>CLASS ACTION<br><br>**FIRST AMENDED COMPLAINT FOR COMPENSATORY, STATUTORY AND OTHER DAMAGES, AND INJUNCTIVE RELIEF** |

**BEAUMONT COSTALES**
William H. Beaumont, Esq.
Roberto Luis Costales, Esq.
(*pro hac vice* to be applied for)
107 W. Van Buren, Suite 209
Chicago, Illinois 60605
Telephone: (773) 831-8000
Facsimile: (504) 272-2956
Email: whb@beaumontcostales.com
Email: rlc@beaumontcostales.com

**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
(*pro hac vice* to be filed)
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 33301
Telephone: (954) 400.4713
Email: mhiraldo@hiraldolaw.com

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
(*pro hac vice* to be filed)
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
Telephone: (305) 479-2299
Facsimile: (786) 623-0915
Email: ashamis@shamisgentile.com

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
(*pro hac vice* to be filed)
19495 Biscayne Blvd #607
Aventura, FL 33180
Telephone: (305) 975-3320
Email: scott@edelsberglaw.com

1                                    3:19-cv-01568-JM-BLM

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Eric LaGuardia, Sophia Wingate, Lindsay Rucker, and Nicole R. Austin (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly-situated against Designer Brands, Inc., an Ohio Corporation formerly known as DSW, Inc. and DSW Shoe Warehouse, Inc., a Missouri corporation (collectively, "DSW" or "Defendants"). Plaintiffs allege, on information and belief, except for information based on personal knowledge, as follows:

## INTRODUCTION

1. Plaintiffs bring this class action against DSW to stop it from making unsolicited and auto-dialed "spam" text message calls to cellular phones, and to obtain redress for all persons injured by this illegal conduct.

2. Among other things, DSW sells brand name and designer footwear and accessories. Today, it operates more brick and mortar locations in 44 states.

3. In an effort to promote its sales, DSW transmits unauthorized advertisements in the form of bulk spam text message calls to the cellular telephones of unwilling consumers, and it bombards consumers with unwanted spam even after they tell DSW that they want the spam to stop. Moreover, DSW bombarded some consumers with unwanted spam even though they were registered on the National Do Not Call registry.

4. By sending these unauthorized text message calls, or wireless spam, DSW has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies wireless spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such wireless spam.

5. In order to redress these injuries, Plaintiffs, on behalf of themselves and others similarly situated, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. Sections 227, *et seq.* ("47 U.S.C. § 227") which prohibits unsolicited voice and text calls to cell phones.

6. On behalf of the class, Plaintiffs seek an injunction requiring DSW to cease all wireless spam activities and an award of statutory damages to the class members.

## PARTIES

7. Plaintiff Eric LaGuardia is an individual and a citizen of the State of California and resident of San Diego County, California.

8. Plaintiff Sophia Wingate is an individual and a citizen of the State of California and resident of Oakley, California.

9. Plaintiff Lindsay Rucker is an individual and a citizen of the State of California and resident of Novato, California.

10. Plaintiff Nicole R. Austin is an individual and a citizen of the State of California and resident of Los Angeles County.

11. Defendant Designer Brands, Inc. is an Ohio Corporation headquartered at 810 DSW Drive, Columbus, Ohio. It is formerly known as DSW, Inc. Together with its subsidiaries, including co-Defendant Designer Shoe Warehouse, Inc., Designer Brands owns, operates, and controls the "Designer Shoe Warehouse" (aka "DSW") chain of shoe stores. At all relevant times, Designer Brands, Inc. has been doing business in at least 44 U.S. States, including California.

12. Upon information and belief, at all relevant times Defendant DSW Shoe Warehouse, Inc., a Missouri corporation also headquartered at 810 DSW Drive, Columbus, Ohio, has been doing business in at least 44 U.S. States, including California. Upon information and belief, DSW Shoe Warehouse, Inc. is a wholly owned subsidiary of co-Defendant Designer Brands, Inc. and, together, Defendants collectively own, operate, and control the "Designer Shoe Warehouse" (aka "DSW") chain of shoe stores. Defendants, at all relevant times, have had a common practice and policy of sending bulk unwanted spam messages, including those described more fully below.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

14. This Court has subject matter jurisdiction over this action pursuant to 47 U.S.C. § 227(b)(3).

15. Defendants are subject to personal jurisdiction in California because this suit arises out of and relates to Defendants' significant contacts with this State. Defendants initiated and directed, or caused to be initiated and directed by its agent(s), telemarketing and/or advertisement text messages into California, via an ATDS and without the recipients' prior express written consent, in violation of the TCPA.

16. Specifically, Defendants initiated and directed, or caused to be initiated and directed by its agent(s), the transmission of unsolicited advertisement or telemarketing SMS text messages to Plaintiffs' cellular telephone numbers to sell products and services in California. Plaintiffs' telephone numbers have area codes that specifically coincide with locations in California, and Plaintiffs received such messages on their cellular telephones while residing in and physically present in California.

17. Plaintiffs' claims for violation of the TCPA against Defendants, and the resulting injuries caused to Plaintiffs by Defendants' advertisement and telemarketing messages, which includes the invasion of Plaintiffs' privacy, arose in substantial part from Defendants' direction of those messages into California.

18. Further, Defendant has employees and regularly transacts substantial business in California through its 48 brick-and-mortar locations located in California; the most locations in any state in which Defendants operate, followed only by Texas which consists of 47 locations. In Ohio – claimed by Defendants as their primary place of business – Defendants only operate 21 locations.

19. Defendants' California locations account for the largest percentage of its total locations throughout the United States, which establishes that Defendants derive substantial revenue from goods and services its sells in California.

20. Defendants target consumers in California, including through print, radio, and/or television advisements.

21. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because a substantial part of Defendants' actions and omissions, as well as Plaintiffs' suffered injuries, which gave rise to the claims asserted in this action occurred, in part, in this District.

## **FACTS**

22. In recent years, marketers and salesman, stymied by California and federal laws limiting solicitation by telephone, fax, and e-mail, have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

23. One of the newer types of such bulk marketing is advertising through Multimedia Messaging Service ("MMS") and Short Message Services ("SMS"). SMS is a messaging system that allows marketers and cellular telephone subscribers to send and receive short text messages, usually limited to 160 characters. The MMS standard extends the core SMS capability, allowing exchange of text messages greater than 160 characters in length as well as the exchange non-text media. Collectively, SMS and MMS messages are often referred to, simply, as "text messages."

24. Text messages are calls to a wireless device. When a text message is sent, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including text messages, may be received by the called party virtually anywhere worldwide.

25. Many marketers and sellers use auto-dialers, or "robo-callers" to blast identical commercial text messages in bulk. DSW used and continues to use these

FIRST AMENDED CLASS ACTION COMPLAINT

auto-dialers to send unsolicited commercial spam messages to consumers like the Plaintiffs.

26. Unlike more conventional advertisements, wireless spam costs some recipients money because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive, or for a text plan, whether the message is authorized or not. As our own Federal Communications Commission ("FCC") has said: not only are such unsolicited messages "annoying and time-consuming," they "can be intrusive and costly." (FCC Guide, *Spam: Unwanted Text Messages and Email*.)

27. Further, the Federal Trade Commission has identified slower cell phone performance caused by space taken up on the phone's memory as a real harm. *See* https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that text message solicitations like the ones sent by Defendant present a "triple threat" of identity theft, unwanted cell phone charges, and slower cell phone performance).

28. DSW, upon information and belief, and either itself or in conjunction with one or more marketing partners, acquired lists of consumer cell phone numbers.

29. Once DSW acquired its phone numbers, it sent massive amounts of spam commercial text message advertisements using automatic telephone dialing system, including to Plaintiffs. Upon information and belief, DSW continues to do so today.

30. DSW not only sent and continues to send unsolicited text messages to consumers without their express consent, DSW persists in sending spam to consumers even after they have affirmatively and expressly told DSW that they do not want to receive such texts. DSW also sent its wireless spam to those consumers who were previously registered to the National Do Not Call Registry, pursuant to the TCPA, 47 USC 227(c).

31. For example, in July and August of 2019, DSW used an automatic telephone dialing system to make spam commercial text message calls to consumers, including to Plaintiff Eric LaGuardia's cellular telephone.

32. DSW sent one such message on July 3, 2019. DSW used the following "short-code" to transmit the message: 748-588. The body of that commercial spam message stated:

> DSW: 20% off + FREE gift! In
> stores & online thru 7/8:
> https://bit.ly/31q6AEK
> Exclusions apply. Reply HELP
> for help or STOP to end. Msg &
> Data rates may apply.

33. Plaintiff LaGuardia did not provide Defendants with his express written consent to receive the above text message.

34. Plaintiff LaGuardia immediately replied to DSW's message with "Stop" and received the following response immediately thereafter from DSW:

> DSW SMS Alerts: You've been
> unsubscribed and will receive
> no further alerts from DSW.
> Reply HELP or call
> 866-379-7463 for info.
> Msg&DataRatesMayApply

35. Despite Plaintiff LaGuardia's "Stop" request, and DSW's acknowledgement and promise that it would send no further spam texts, on July 15, 2019, DSW sent Plaintiff *another* unsolicited and unauthorized spam text message from the same number. The body of that commercial spam message stated:

> DSW: Get 20% off + a FREE
> beach blanket! Shop now:
> https://bit.ly/2LMZWTN. Reply
> HELP for help or STOP to end.
> Msg & Data rates may apply.

36. And DSW did not stop there. Several days later, on July 29, 2019, DSW sent Plaintiff LaGuardia yet another spam text message from the short-code. The body of that spam message stated:

7  3:19-cv-01568-JM-BLM

FIRST AMENDED CLASS ACTION COMPLAINT

> DSW: Get $10 off + an EXTRA
> $5 off when you shop in-app:
> https://bit.ly/2K3kZQW. Reply
> HELP 4 help or STOP 2 end.
> Msg & Data rates may apply.

37.     Plaintiff LaGuardia replied a few hours later with another "Stop" request and, once again, DSW sent the following reply:

> DSW SMS Alerts: You've been
> unsubscribed and will receive
> no further alerts from DSW.
> Reply HELP or call
> 866-379-7463 for info.
> Msg&DataRatesMayApply

38.     However, DSW's second promise to stop spamming was again false. Days later, on August 15, 2019, DSW sent Plaintiff LaGuardia another spam text message from the same short-code. The message said, in pertinent part:

> DSW: Get $20 bonus card with
> $49+ sneaker purchase! In
> stores & online. Shop now:
> https://bit.ly/2MaOLop. Reply
> HELP 4 help or STOP 2 end.
> Msg/Data rates apply.

39.     Plaintiff LaGuardia then had to send several more "stop" messages.

40.     The following is a depiction of what the frustratingly long series bulk spam messages looked like on Plaintiff LaGuardia's phone, starting on July 3rd:

8                                   3:19-cv-01568-JM-BLM

FIRST AMENDED CLASS ACTION COMPLAINT

9                                                    3:19-cv-01568-JM-BLM

DSW Alerts: Sorry, keyword not recognized. Visit tinyurl.com/dswsms, call 866-379-7463 for more info. Reply HELP for help, STOP to cancel. Msg&DataRatesMayApply

Stop

DSW SMS Alerts: You've been unsubscribed and will receive no further alerts from DSW. Reply HELP or call 866-379-7463 for info. Msg&DataRatesMayApply

Today 9:17 AM

DSW: $20 bonus card with $49+ sneaker purchase! In stores & online. Shop now: https://bit.ly/2MaOLoP. Reply HELP 4 help or STOP 2 end. Msg/Data rates apply.

Stop

STOP

STOP 2

DSW SMS Alerts: You've been unsubscribed and will receive no further alerts from DSW. Reply HELP or call 866-379-7463 for info. Msg&DataRatesMayApply

DSW SMS Alerts: You've been unsubscribed and will receive no further alerts from DSW. Reply HELP or call 866-379-7463 for info. Msg&DataRatesMayApply

DSW SMS Alerts: You've been unsubscribed and will receive no further alerts from DSW. Reply HELP or call 866-379-7463 for info. Msg&DataRatesMayApply

Text Message

10                                        3:19-cv-01568-JM-BLM

FIRST AMENDED CLASS ACTION COMPLAINT

41.     Prior to receiving Defendants' text messages, Plaintiff LaGuardia had registered his number on the National Do Not Calls List.

42.     Similarly, on or about July 3, 2019, July 11, 2019, and July 15, 2019, DSW sent the following text messages to Plaintiff Lindsay Rucker from the same short-code:



43.     Plaintiff Rucker did not provide Defendants with her express written consent to receive the above text messages.

44.     Similarly, on or about August 7, 2019 and August 10, 2019, DSW sent the following text messages to Plaintiff Sophia Wingate from the same short-code:

FIRST AMENDED CLASS ACTION COMPLAINT



45. Plaintiff Wingate did not provide Defendants with her express written consent to receive the above text messages.

46. On July 15, 2019, Defendants sent a text message to Plaintiff Austin's cellular phone number offering a 20% discount and free gift if she would click on a link, which leads to Defendant's storefront website. The text message also stated "Reply … STOP to end."

47. She responded to the text message by typing "Stop."

FIRST AMENDED CLASS ACTION COMPLAINT

48. She received an immediate response "DSW SMS Alerts: You've been unsubscribed and will receive no further alerts from DSW. Reply HELP or call 866-379-7463 for info. Msg&DataRatesMayApply."

49. Nevertheless, between July 29, 2019 and August 15, 2019, Defendants sent five additional text messages, with similar content encouraging Plaintiff Austin to click on a link to Defendants' storefront website.

50. Like the other Plaintiffs herein, Plaintiff Austin did not provide Defendants with her express written consent to receive the above text messages.

51. Prior to receiving Defendants' text messages, Plaintiff LaGuardia had registered his number on the National Do Not Calls List.

52. In short, DSW knowingly and intentionally sent multiple bulk commercial spam text messages to thousands of mobile phone users, including Plaintiffs, without their consent and even after consumers expressly and repeatedly told DSW they wanted no such messages.

53. As is apparent, the text messages above advertised the commercial availability of Defendants' property, goods, and services and encourages the future purchase or investment in property, goods, or services.

54. Upon information and belief, Defendants caused other text messages identical to the one above to be sent to individuals residing within this judicial district and throughout the United States.

55. Plaintiffs are the subscribers and/or sole users of the cellular telephones that received Defendant's text message solicitations.

56. Defendants knew or should have known that they were transmitting text messages to Plaintiffs, individuals located in California, prior to transmitting the messages.

57. The source of each of the unsolicited SMS text messages sent by Defendants to Plaintiffs was 748-588, which is an SMS short code owned or leased by or on behalf of Defendants or Defendants' agent(s) or affiliate(s), and is used for

FIRST AMENDED CLASS ACTION COMPLAINT

operating Defendants' text message campaigns, including the sending of SMS text messages telemarketing and advertising various of Defendants' goods and services.

58. The source of each of the unsolicited SMS text messages sent by Defendants, i.e., short code telephone number 748-588, is a short code telephone number that is registered as having been assigned to Defendants.

59. All telephone contact by Defendants and/or affiliates, subsidiaries, or agents of Defendants to Plaintiffs occurred via an ATDS ("automated telephone dialing system") as defined by 47 U.S.C. § 227(b)(1)(A) because the unsolicited telemarketing SMS text messages were sent from 748-588, which is a short code telephone number used to message consumers *en masse*, and because the hardware and software used by Defendants to send such messages have the capacity to store, produce, and dial either random or sequential numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Further, the complained of SMS text messages were written in a generic and impersonal manner, thus demonstrating that the text messages were sent to numerous other consumers.

60. To send the text messages, Defendants used a messaging platform (the "Platform") that permitted Defendants to transmit thousands of automated text messages without any human involvement.

61. The Platform has the capacity to store telephone numbers.

62. The Platform has the capacity to generate sequential numbers.

63. The Platform has the capacity to dial numbers in sequential order.

64. The Platform has the capacity to dial numbers from a list of numbers.

65. The Platform has the capacity to dial numbers without human intervention.

66. The Platform has the capacity to schedule the time and date for future transmission of text messages, which occurs without any human involvement.

FIRST AMENDED CLASS ACTION COMPLAINT

67. Defendants' text message invaded Plaintiffs' privacy, intruded upon their seclusion and solitude, constituted a nuisance, and wasted their time by requiring them to interact with the messages.

68. Furthermore, Defendants' text messages took up 190 bytes of memory per message on Plaintiffs' cellular telephones. The cumulative effect of unsolicited text messages like Defendants' poses a real risk of ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being taken up. In fact, the FTC has identified slower cell phone performance caused by space taken up on the phone's memory as a real harm. *See* https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that text message solicitations like the ones sent by Defendant present a "triple threat" of identity theft, unwanted cell phone charges, and slower cell phone performance).

69. Defendants' text messages also caused the depletion of Plaintiffs' cellular telephone battery. The battery used to power Plaintiffs' cellular telephone can only be recharged a limited number of times before the battery's voltage begins to decrease, causing the cellular phone to turn off completely, without warning, if the battery drops below the minimum voltage needed to safely power Plaintiff's cellular telephone.

## CLASS ALLEGATIONS

70. Upon information and belief, DSW has had a common practice of sending bulk illegal spam text messages to consumers without their consent, and even after they have requested for the messages to stop.

71. Plaintiffs, therefore, bring this action pursuant to Federal Rules of Civil Procedure, Rule 23(a) and 23(b)(2) and 23(b)(3) on behalf of themselves and the following classes defined as follows:

> **No Consent Class: All persons within the United States who, within the four years prior to the filing of this action, were sent a text message by Defendants or anyone on Defendants' behalf, to said person's cellular telephone number, using the same equipment used to**

FIRST AMENDED CLASS ACTION COMPLAINT

**text message Plaintiffs' cellular telephones, for the purpose of advertising Defendants' goods or services.**

**Revocation Class: All persons who from four years prior to the filing of this action were sent a text message to their cellular phone number by Defendants or on Defendants' behalf, using the same equipment used to send the text messages to Plaintiffs, for the purpose of advertising Defendants' goods or services, *after* making a request to Defendants to not receive future text messages.**

72. Plaintiff LaGuardia and Plaintiff Austin also bring this lawsuit on behalf of themselves and the following proposed sub-class of consumers who were registered on the National Do Not Call Registry:

**Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action were sent a text message by or on behalf of Defendants, more than one time within any 12-month period, where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, for the purpose of selling Defendants' products and/or services.**

73. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes may be expanded or narrowed by amendment, amended complaint, or at the time of moving for class certification.

74. *Numerosity*. The members of the Classes are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe, and on that basis allege, that the proposed Classes contain tens of thousands of members. The precise number of Class members is unknown to Plaintiffs. The true number of Class members is known by DSW, however, and thus, Class members may ascertained and may be notified of the pendency of this action by first class mail, electronic mail, text message, and by published notice, to the extent necessary.

FIRST AMENDED CLASS ACTION COMPLAINT

75. ***Existence and Predominance of Common Questions of Law and Fact***. Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) Does the wireless spam DSW distributed violate 47 U.S.C. Section 227?

(b) Are the Class members entitled to damages or penalties?

(c) Are the Class members entitled to treble damages based on the willfulness of DSW's conduct?

(d) Are the Class members entitled to declaratory and/or injunctive relief?

76. ***Typicality***. Plaintiffs' claims are typical of the claims of the members of the Classes in that all Class members were subject to the same kind of illegal spam text messaging at the hands of DSW.

77. ***Adequacy of Representation***. Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no interests adverse or antagonistic to those of the Classes.

78. ***Superiority***. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense in litigating claims individually against DSW. It would thus be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay

FIRST AMENDED CLASS ACTION COMPLAINT

and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

79.    Unless the Classes are certified and a class-wide injunction is issued, DSW will continue to commit and wrongly profit from the violations alleged, and the members of the Classes and the general public will continue to be injured.

80.    DSW has acted and failed to act on grounds generally applicable to the Plaintiffs and the other members of the Classes in transmitting the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

81.    The factual and legal bases of DSW's liability to Plaintiffs and to the other members of the Class are the same, resulting in injury to the Plaintiffs and to all the other members of the Class as a result of the transmission of the wireless spam alleged here.  Plaintiffs and the other Class members have all suffered harm and damages as a result of DSW's unlawful and wrongful conduct as a result of the transmission of wireless spam.

## COUNT NO. 1
### (Violation of the TCPA, 47 U.S.C. § 227, on
### behalf of all Plaintiffs, the No Consent Class, and the Revocation Class)

82.    Plaintiffs incorporate by reference all of the foregoing allegations as if fully set forth here.

83.    DSW, either on its own or in concert with one or more of its authorized agents, acquired lists of consumer phone numbers for the purpose of sending commercial spam text messages for its own monetary gain.

84.    DSW then made thousands of unauthorized commercial text calls, including, but not limited to, the messages copied above, to wireless telephone numbers belonging to the Class members, including to Plaintiffs.  Each such text

FIRST AMENDED CLASS ACTION COMPLAINT

message call was made using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator. By using such equipment, DSW was able to effectively send thousands of spam text messages simultaneously to thousands of wireless phones without human intervention.

85. DSW's text calls were made *en masse* and without the prior express written consent of the Plaintiffs and the other members of the Class to receive such wireless spam.

86. DSW has, therefore, violated the TCPA, including 47 U.S.C. Section 227(b)(1)(A)(iii). As a result of DSW's conduct, the members of the Class suffered actual damages including by having to pay their respective wireless carriers for the text messages and, under section 227(b)(3)(B), are each entitled to, *inter alia,* a minimum of $500 in damages for each violation.

87. Moreover, because DSW knowingly and willfully violated the TCPA, and had knowledge that Plaintiffs and the Class did not consent to the receipt of wireless spam and, in fact, did not want such spam, the Court should, pursuant to 47 U.S.C. Section 227(b)(3), treble the amount of statutory damages recoverable by the Plaintiff and the other members of the Class.

**COUNT NO. 2**
**(Violation of the TCPA, 47 U.S.C. § 227,**
**on behalf of Plaintiff LaGuardia and Plaintiff Austin,**
**and the Do Not Call Registry Class)**

88. Plaintiffs incorporate by reference all of the foregoing allegations as if fully set forth here.

89. As mentioned above, DSW made thousands of unauthorized and illegal commercial text calls, including, but not limited to, the messages copied above, to wireless telephone numbers belonging to the Class, including to Plaintiffs. Many of those class members, including Plaintiff LaGuardia and Austin, had been previously

registered on the National "Do Not Call" Registry pursuant to 47 U.S.C. § 227(c), i.e., were members of the Do Not Call Registry Class as defined above.

90.    Plaintiff Eric LaGuardia has been registered on the national Do Not Call Registry since at least 2014. Plaintiff Austin was registered on the national Do Not Call Registry since May 2019 or earlier. Plaintiffs and their fellow Do Not Call Registry Class members were registered on that list when they received DSW's wireless spam.

91.    DSW has, therefore, committed additional violations of the TCPA, including 47 U.S.C. Section 227(c).  As a result of DSW's conduct, Plaintiff and the members of the Do Not Call Registry Sub-Class are each entitled to, *inter alia,* an additional $500, at a minimum, for each violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Eric LaGuardia, Sophia Wingate, Lindsay Rucker, Nicole R. Austin, on behalf of themselves and the Class prays for the following relief:

1.    An order certifying the Class as defined above, including all sub-classes;

2.    An award of actual and statutory damages, where appropriate;

3.    Punitive or treble damages according to statute or where otherwise appropriate;

4.    An injunction requiring DSW to cease all wireless spam activities;

5.    An award of reasonable attorneys' fees and costs; and

6.    Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff hereby requests trial by jury of all claims that can be so tried.

Respectfully submitted,
Dated:  November 21, 2019                    **NICHOLAS & TOMASEVIC, LLP**


By:    */s/ Craig M. Nicholas*
         Alex Tomasevic
         Craig M. Nicholas

**LAKESHORE LAW CENTER**
Jeffrey Wilens (SBN 120371)
18340 Yorba Linda Blvd., Ste 107-610
Yorba Linda, California 92886
Telephone: (714) 854-7205
Facsimile: (714) 854-7206
Email: jeff@lakeshorelaw.org

**THE SPENCER LAW FIRM**
Jeffrey P. Spencer (SBN 182440)
2 Venture, Suite 220
Irvine, California 92618
Telephone: (949) 240-8595
Facsimile: (949) 377-3272
Email: jps@spencerlaw.net

**BEAUMONT COSTALES**
William H. Beaumont, Esq.
Roberto Luis Costales, Esq.
(*pro hac vice* to be applied for)
107 W. Van Buren, Suite 209
Chicago, Illinois 60605
Telephone: (773) 831-8000
Facsimile: (504) 272-2956
Email: whb@beaumontcostales.com
Email: rlc@beaumontcostales.com

**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
(*pro hac vice* to be filed)
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 33301
Telephone: (954) 400.4713
Email: mhiraldo@hiraldolaw.com

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
(*pro hac vice* to be filed)
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
Telephone: (305) 479-2299
Facsimile: (786) 623-0915
Email: ashamis@shamisgentile.com

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
(*pro hac vice* to be filed)
19495 Biscayne Blvd #607
Aventura, FL 33180
Telephone: (305) 975-3320
Email: scott@edelsberglaw.com

*Attorneys for Plaintiffs*

3:19-cv-01568-JM-BLM

FIRST AMENDED CLASS ACTION COMPLAINT