**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Eric LaGuardia, *et al*.,

                Plaintiffs,           :     Case No. 2:20-cv-2311

     - vs -                         Judge Sarah D. Morrison
                                      Magistrate Judge Vascura

Designer Brands Inc., *et al*.,

                                    :

                Defendants.

## **OPINION & ORDER**

     "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020). That derision extends to commercial text messages sent to cellular telephones. Plaintiffs Eric LaGuardia, Sophia Wingate, Lindsey Rucker and Nicole Austin allege that Defendants Designer Brands, Inc. and DSW Shoe Warehouse, Inc. (collectively "DSW") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") by sending them such texts without their consent. Plaintiffs filed this putative class action under the TCPA to get DSW to stop contacting them in this manner.

     DSW, on the other hand, wants this case to stop. But its efforts to achieve that result are premature. For that reason, the Court **GRANTS** in part and **DENIES** in part Plaintiffs' Motion to Strike (ECF No. 60), **DENIES** Defendants' Motion for Judgment on the Pleadings (ECF No. 45), and **DENIES** Defendants' Motion to Stay (ECF No. 74). The Court further determines that oral argument is unnecessary.

1

## I.     BACKGROUND

Plaintiffs are California residents. (ECF No. 22 ¶¶ 7-11.) DSW Shoe Warehouse, Inc. sells footwear and is a wholly owned subsidiary of Designer Brands, Inc. (ECF No. 44 ¶¶ 2, 12.) DSW Shoe Warehouse is a Missouri corporation headquartered in Columbus, Ohio. *Id*. ¶ 12. Designer Brands is an Ohio corporation with headquarters in Columbus.

Plaintiffs allege that DSW sent them spam texts advertising DSW's products without their consent in July and August 2019. (ECF No. 22 ¶¶ 31-45.) LaGuardia and Austin further assert that DSW continued to send the solicitations even though they told DSW to stop, and even though they were on the National Do Not Call Registry. *Id*. ¶¶ 34, 41, 47, 50-51. Plaintiffs allege DSW's texts harmed them through the costs, slower cell phone service, reduction in cell phone memory and depletion of cell phone battery life associated with receiving the texts. *Id*. ¶¶ 4, 26, 27, 68, 69. Plaintiffs additionally allege the texts "invaded [their] privacy, intruded upon their seclusion and solitude, constituted a nuisance, and wasted their time by requiring them to interact with the messages." *Id*. ¶ 67.

Plaintiffs allege DSW sent the texts through a program that has the capacity to: (1) store telephone numbers; (2) generate sequential numbers; (3) dial numbers in sequential order; (4) dial numbers from a list of numbers; (5) dial numbers without human intervention; and (6) schedule the time and date for future transmission of text messages without human involvement. *Id*. ¶¶ 61-66. Plaintiffs thus allege that DSW's program is an automated telephone dialing system ("ATDS") as defined in the TCPA. *Id*. ¶ 59.

Count 1 alleges that DSW violated § 227 (b)(1)(A)(iii) of the TCPA by willfully and/or knowingly contacting Plaintiffs on their cellular telephones using an ATDS. *Id.* ¶¶ 82-87. Count 2 asserts that DSW violated § 227(c) of the TCPA by sending the texts to LaGuardia and Austin

despite the fact that they were on the Do Not Call Registry and by continuing to send the texts

after they told DSW to stop. *Id*. ¶¶ 88-91.

Plaintiffs seek certification under Fed. R. Civ. P. 23 of the following classes:

> **No Consent Class**: All persons within the United States who,
> within the four years prior to the filing of this action, were sent a
> text message by Defendants or anyone on Defendants' behalf, to
> said person's cellular telephone number, using the same equipment
> used to text message Plaintiffs' cellular telephones, for the
> purpose of advertising Defendants' goods or services.

> **Revocation Class**: All persons who from four years prior to the
> filing of this action were sent a text message to their cellular phone
> number by Defendants or on Defendants' behalf, using the same
> equipment used to send the text messages to Plaintiffs, for the
> purpose of advertising Defendants' goods or services, after making
> a request to Defendants to not receive future text messages.

*Id*. ¶ 71. LaGuardia and Austin seek certification of the following sub-class of individuals who

received the texts while being on the National Do Not Call Registry:

> **Do Not Call Registry Class**: All persons in the United States who from four
> years prior to the filing of this action were sent a text message by or on behalf of
> Defendants, more than one time within any 12-month period, where the person's
> telephone number had been listed on the National Do Not Call Registry for at
> least thirty days, for the purpose of selling Defendants' products and/or services.

*Id*. ¶ 72.

In addition to class certification, Plaintiffs seek compensatory, statutory and punitive

damages, attorney's fees, costs, and an injunction requiring DSW to cease all text "spam"

activities. *Id*. ¶ 6, Prayer for Relief ¶¶ 1-6.

DSW's Answer denies sending the texts to Plaintiffs. (ECF No. 44 at introduction and ¶

1.) Its narrative and detailed denials also relevantly plead in the alterative that:

> Plaintiffs were all customers of DSW during the relevant
> time period. Any text messages to Plaintiffs *would have been sent*
> *using Oracle Responsys* to a list of DSW's existing customers who
> provided their cellular telephone numbers to DSW and their prior

express consent to receive text messages. In addition, Plaintiffs all elected to become members of DSW's optional customer loyalty rewards program, known as the DSW VIP Club, and provided their cellular telephone numbers to DSW in connection with their memberships. A key benefit of joining the DSW VIP Club was to receive exclusive promotional offers from DSW.

DSW denies that there were any "unsolicited and auto-dialed 'spam' text message calls to [Plaintiffs'] cellular phones." As a threshold matter, no "automatic telephone dialing system" (ATDS) was used in connection with the alleged texts to Plaintiffs. Oracle Responsys offers a web-based application as a cross-channel tool to communicate and track customer communications. It does not have the capacity to generate random or sequential telephone numbers and then dial them. It cannot generate any telephone numbers. Rather, the platform will initiate texts solely from lists of designated telephone numbers created and provided by companies like DSW. *See* Oracle Responsys Mobile SMS 101, attached hereto as Ex. A ("In Oracle Responsys, you set up mobile SMS messages in Program. This allows you to build a program that ties together a series of **messages targeted to specific recipients**." (emphasis added)); Ex. B (describing SMS campaign settings as including "[t]he list for the campaign" (emphasis added)); Ex. C ("If you are creating a marketer-initiated message, the outbound message is the message that you are sending to **your subscriber list**." (emphasis added)); Ex. D ("Program allows you to build cross-channel programs that tie together a series of sequenced SMS messages or a sequence of email and SMS messages, **targeted to specific recipients**." (emphasis added)). Oracle Responsys is not an ATDS under the Telephone Consumer Protection Act ("TCPA"). Thus, any text messages sent to Plaintiffs by or on behalf of DSW are outside the reach of the TCPA.

*Id*. ¶ ¶ 1, 25 (italicized emphasis added).[1] The referenced exhibits are attached to the Answer and

consist of unauthenticated print-outs dated June 2020 purportedly from https://docs.oracle.com.

Oracle is not a party to this action.

DSW further avers that:

Plaintiffs LaGuardia and Austin, who purport to state a claim based upon their alleged registration on the National Do-

---

[1] SMS stands for "Short Message Service." SMS texts contain only text, no video. (ECF No. 22 ¶ 23.)

> Not-Call Registry, had an established business relationship ("EBR") with DSW when they allegedly received texts from or on behalf of DSW, which is a bar to their claim. An EBR is created by the "voluntary two-way communication" between an entity and a subscriber "on the basis of the subscriber's purchase or transaction with the entity within eighteen (18) months immediately preceding the date of the telephone call[.]" *Id*. [sic] § 64.1200(f)(5). Plaintiffs LaGuardia and Austin, elected to be members of the optional DSW VIP Club, affirmatively provided their cellular telephone numbers to DSW, and made one or more purchases from DSW within the 18 months prior to the alleged text messages. Specifically, Plaintiff LaGuardia made a purchase from DSW on December 3, 2018, and Plaintiff Austin made purchases from DSW on May 12, 2018, and November 22, 2018. *See* Exs. E, F.

*Id*. ¶ ¶ 3, 90. The referenced exhibits, which are also unauthenticated, show transaction histories for LaGuardia and Austin from an unspecified entity.

## II.  ANALYSIS

### A.  Motion to Strike

Plaintiffs utilize Fed. R. Civ. P. 12(f) to move to strike certain paragraphs in, and each Exhibit to, DSW's Answer. Specifically, Plaintiffs argue that the quoted paragraphs and those that incorporate them should be stricken as they go beyond merely admitting, denying or stating a lack of sufficient knowledge under Fed. R. Civ. P. 8. (ECF No. 60 at 3.) Plaintiffs further assert that all of the Answer's exhibits must be stricken as they are not "written instruments" within the meaning of Fed. R. Civ. P. 10(d). *Id*. DSW counters that the targeted language and documents equate to facts that are dispositive to Plaintiffs' claims. (ECF No. 64 at 5.)

#### 1.  Standard of Review

Rule 12(f) of the Federal Rules of Civil Procedure allows the Court to strike "any redundant, immaterial, impertinent, or scandalous matter." "While motions to strike are generally disfavored, and should be used sparingly, such motions are within the sound discretion of the district court." *Ohio Democratic Party v. Blackwell*, Case No. 2:04-CV-1055, 2005 U.S. Dist.

5

LEXIS 18126, at *11 (Aug. 26, 2005) (Marbley, J.) (internal quotations and citation omitted). The Court retains liberal discretion to strike pleadings as it deems appropriate when the purposes of justice so require. *Devault v. Wal-Mart, Inc*., No. 1:20-CV-00372, 2020 U.S. Dist. LEXIS 71462, at *4 (N.D. Ohio Apr. 23, 2020) (Barker, J.). "Typically, for a motion to strike to be granted, there must be evidence that the moving party has been prejudiced." *Oppenheimer v. City of Madeira*, No. 1:19-cv-770, 2020 U.S. Dist. LEXIS 157282, at *15 (S.D. Ohio Aug. 31, 2020) (Bowman, M.J.) (citation omitted.)

## 2. Discussion

### a. Exhibits

The Court begins with Plaintiffs' request to strike the Answer's six exhibits. The first four are printouts ostensibly from https://docs.oracle.com and address text message marketing campaigns. DSW's Answer cites to those exhibits to show that the program it "would have" used to send the messages, Oracle Responsys, does not have the capability to generate random or sequential telephone numbers and then dial them such that Oracle is not an ATDS under the TCPA. (ECF No. 44 at ¶ 1, Exs. A-D.) The Answer indicates the remaining two exhibits are offered to show that LaGuardia and Austin made purchases from DSW within the eighteen months before the text messages were sent. (*Id*. ¶ 3, Exs. E-F.) DSW relies on those exhibits to state that LaGuardia and Austin had EBRs with DSW that serve to bar Count 2. (*Id*.)

According to Plaintiffs, Rule 10(c) dictates that the Exhibits must be struck because they are not "written instruments." That rule states "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." The Sixth Circuit has not defined "written instrument" within the context of Rule 10(c). *Gooden v. Batz*, No. 3:18-cv-302, 2019 U.S. Dist. LEXIS 122610, at *13 (S.D. Ohio July 22, 2019) (Rice, J.). Courts within this district

have therefore relied upon the definition of "instrument" set forth in Black's Law Dictionary (11th ed. 2019), as "a written legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate." *Id*. (citing cases).

*Montgomery v. Buege*, No. 08-385, 2009 WL 1034518 (E.D. Cal. Apr. 16, 2009), further illuminates the issue. Therein, the court confronted a motion to strike exhibits attached to a complaint that included a declaration and articles addressing claimed health problems asserted in the complaint. The court addressed whether those exhibits qualified as "written instruments" under Rule 10(c). The court held that the rule allows consideration of written exhibits when they are documentary in nature, such as "contracts, notes, and other writings on which a party's action or defense is based." *Id*. \*9-10 (quotations and citation omitted.) The court held that Rule 10 does not allow "evidentiary material" "in the nature of evidence submitted to bolster" the complaint's allegations. *Id*. \*10-12 (citation omitted). Because the complaint did not reference the materials and because they did not form the basis of plaintiffs' claims, the court found them to be evidentiary in nature and therefore granted the motion. *Id*. \*11-13.

Plaintiffs' key case in support of their strike request is *Devault v. Wal-Mart, Inc*., No. 1:20-CV-00372, 2020 U.S. Dist. LEXIS 71462, at \*1 (N.D. Ohio Apr. 23, 2020). *Devault* is also instructive on the "written instrument" issue. It is an employment discrimination case that similarly involved a motion to strike a lengthy exhibit to a complaint detailing background information about Walmart's alleged discriminatory culture. Walmart moved to strike it under Fed. R. Civ. P. 12(f), arguing that the exhibit did not qualify as a written instrument under Rule 10(c). Devault countered that the exhibit constituted supporting evidence and did not prejudice Walmart such that the exhibit should remain. The *Devault* court granted the motion. Relying in

heavy part on *Buege's* documentary versus evidentiary distinction, *Devault* held that the exhibit clearly fell into the latter category because it equated to an unsworn witness declaration that lacked an identified witness. *Id*. *4-5. As such, the exhibit did not qualify as a written instrument able to be considered under Rule 10(c). *Id*. In addition, the court found Walmart would be prejudiced if the exhibit was not stricken, as the "additional allegations remain unanswered by [Walmart] because they are not part of the complaint." *Id*. *5.

Despite the striking similarity between *Buege*, *Devault* and the case *sub judice*, DSW argues that neither is applicable here because both addressed striking exhibits to complaints but not to answers. DSW provides no argument as to why that is a distinction with a difference, and the Court knows of none. This is especially true because Rule 10(c) applies to pleadings, and Fed. R. Civ. P. 7(a) defines an Answer as a pleading. *See Kinney v. Mohr*, No. 2:13-cv-1229, 2017 U.S. Dist. LEXIS 59737, at *7 (S.D. Ohio Apr. 19, 2017) (Kemp, M.J.) (applying Rule 10(c) to motion to strike exhibit to Answer). Thus, under *Buege* and *Devault*, the issue is two-fold. First, do the exhibits equate to evidentiary materials? Second, and only if so, would their admission prejudice Plaintiffs?

The Court answers both in the affirmative. Exhibits A-D are unauthenticated print-outs ostensibly from a non-party that purport to establish that Oracle Responsys does not qualify as an ATDS such that DSW could not have violated the TCPA. Exhibits E-F are unauthenticated business records purportedly showing that LaGuardia and Austin had an EBR with DSW that would bar Count 2. None of these documents define rights, duties or liabilities and none are a contract, note, deed, will, bond, or lease. *See Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989) (noting those types of documents are typically incorporated in the pleadings under Rule 10(c)). None are mentioned in the Complaint. Instead, Exhibits A-F constitute unauthenticated evidence

8

submitted to bolster DSW's defense that it did not violate the TCPA. "Lengthy exhibits

containing . . . evidentiary matter should not be attached to the pleadings." *Id.* (quotation and

citation omitted). The Exhibits therefore do not qualify as a written instruments under Rule

10(c), *Buege* and *Devault*.

Inclusion of the exhibits would prohibit Plaintiffs from challenging the veracity of

DSW's claimed dispositive assertions or defenses that are based upon the unverified documents.

This equates to prejudice to Plaintiffs. Moreover, "[t]o require district courts to accept unilateral

statements in documents written by a defendant as true simply because they were attached as

exhibits to a [pleading] would be contrary to the concept of notice pleading. It would enable

parties to hide behind untested, self-serving assertions." *N. Ind. Gun & Outdoor Shows v. City of

S. Bend*, 163 F.3d 449, 456 (7th Cir. 1998). In other words, simply because  a document is

attached to a pleading does not establish that is contents are true. *See Jones v. City of Cincinnati*,

521 F.3d 555, 561 (6th Cir. 2008). Additionally, judicial economy comes into play. Permitting

the Exhibits' incorporation:

> needlessly complicates challenges to the sufficiency of pleadings.
> The court could not consider the contents of these exhibits in
> ruling on a motion to dismiss for failure to state a claim without
> converting the motion into one for summary judgment. This
> practice would undoubtedly result in litigants making Rule 56(e)
> evidentiary challenges in connection with routine motions to
> dismiss. Under these circumstances, granting a motion to strike
> exhibits attached to a complaint that do not qualify as "written
> instruments" under Rule 10(c) serves the purpose of "avoid[ing]
> the expenditure of time and money . . . litigating spurious issues"
> later in the case.

*Buege*, 2009 WL 1034518, *12-13 (internal parentheticals and citations omitted).

In sum, because the Exhibits are not written instruments under Rule 10(c) and their admission would prejudice Plaintiffs, Plaintiffs' Motion to Strike Exhibits A-F from Defendants' Answer is **GRANTED**. (ECF No. 60.)

### b. Paragraphs

Plaintiffs also ask the Court to strike Paragraphs 1, 3, 25 and 90 from DSW's Answer. Plaintiffs argue in support that the paragraphs should be struck because they exceed the confines of Fed. R. Civ. P. 8.

Rule 8(b)(1) provides: "[i]n responding to a pleading, a party must: (A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party." Any denial "must fairly respond to the substance of the allegation" that is being denied. Fed. R. Civ. P. 8(b)(2). "Rule 8 . . . provides for only three possible responses to allegations contained in a civil complaint: (1) admit the allegations; (2) deny the allegations; or (3) state that there is insufficient knowledge or information to form a belief about the truth of the allegations." *United States v. Vehicle 2007 Mack 600 Dump Truck*, 680 F. Supp. 2d 816, 826 (E.D. Mich. 2010). Because the Answer's noted paragraphs make numerous assertions of fact and therefore exceed these confines, Plaintiffs argue that the paragraphs must be struck under Rule 12(f), presumably as impertinent.

DSW counters that Plaintiffs offer no authority for the relief they seek. (ECF No. 64 at 10.) DSW further argues that Rule 8 allows its Answer "to include detailed factual statements" even if such statements may be "argumentative in form" because "a pleader is free to select language that he believes most simply and clearly sets forth the claims or defenses that are being advanced." (ECF No. 64 at 10) (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § § 1268, 1281 (3d ed. 2004)).

The Amended Complaint avers in Paragraph 1 that: "Plaintiffs bring this action against DSW to stop it from making unsolicited and auto-dialed 'spam' text message calls to cellular phones, and to obtain redress for all persons injured by this illegal conduct."[2] (ECF No. 22 at ¶ 1.) DSW's responsive paragraph denies texting Plaintiffs via an auto-dialer system but pleads in the alternative that: (1) Plaintiffs provided their telephone numbers to DSW; (2) Plaintiffs consented to receive text messages from DSW; and (3) Oracle Responsys is incapable of generating and dialing random or sequential numbers. (ECF No. 44 ¶ ¶ 1, 25.)

The Amended Complaint alleges in Paragraph 3 that:

> In an effort to promote its sales, DSW transmits unauthorized advertisements in the form of bulk spam text message calls to the cellular telephones of unwilling consumers, and it bombards consumers with unwanted spam even after they tell DSW that they want the spam to stop. Moreover, DSW bombarded some consumers with unwanted spam even though they were registered on the National Do Not Call registry.

(ECF No. 22 ¶ 3.)[3] DSW's Answer denies the allegations and further claims that LaGuardia and Austin made purchases from DSW within the eighteen months preceding the text messages. (ECF No. 44 ¶ ¶ 3, 90.) The Answer states that those Plaintiffs had EBRs with DSW. *Id*.

The Answer comports with Rule 8 by denying Plaintiffs' allegations that it sent the text messages without consent via an ATDS and by denying that the text messages to LaGuardia and Austin violated the Do Not Call Registry. While the responses "include extra information and alternative versions of the Complaint's factual allegations, '[w]hatever additional information

---

[2] The last sentence of Paragraph 25 states "[b]y way of further response, DSW incorporates and re-allege [sic] its response to Paragraph 1 as if fully set forth herein at length." (ECF No. 22 ¶ 25.) Paragraph 90's last sentence provides "[b]y way of further response, DSW . . . and incorporates and re-alleges its responses to Paragraphs 1 and 3 as if fully set forth at length." *Id*. ¶ 90.

[3] Paragraph 90's final sentence incorporates Paragraph 3. *Id*.

[defendant] seeks to provide in addition to a denial is well within [its] right.'" *Dawley v. Acme Block & Brick, Inc*., 335 F.R.D. 122, 125 (M.D. Tenn. 2020) (quoting *Rapaport v. Soffer*, No. 2:10-cv-935, 2012 WL 2522069, at *2 (D. Nev. June 29, 2012)). Where, as here, "the statement fairly meets the substance of the averment being denied and it is clear what defenses the adverse party is being called upon to meet at trial, a responsive plea should be upheld even though it may be argumentative in form." § 1268 Argumentative Denials, 5 Fed. Prac. & Proc. Civ. § 1268 (3d ed.) Any such "affirmative allegations" will be treated as denials, thereby ensuring compliance with Rule 8(e)'s directive that pleadings shall be construed so as to do justice. *See Rapaport*, 2012 U.S. Dist. LEXIS 90324, at *6. Additionally, Plaintiffs fail to assert that they will suffer any prejudice through the inclusion of the noted paragraphs, and Plaintiffs do not dispute any of DSW's affirmative allegations. For these reasons, Plaintiffs' Motion to Strike Paragraphs 1, 3, 25 and 90 from DSW's Answer is **DENIED**. (ECF No. 60.)

### B. Motion for Judgment on the Pleadings

DSW argues full judgment in its favor is proper under Fed. R. Civ. P. 12(c). (ECF No. 45.) The motion is denied because: (1) the Amended Complaint is sufficiently plead; (2) DSW seeks an advisory opinion; (3) DSW's attempt to create an issue of fact is premature, and (4) the Court struck the Answer's exhibits.

### 1. Standard of Review

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that used to address a motion to dismiss under Rule 12(b)(6). *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).

Rule 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading will satisfy this plausibility standard if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (citation omitted). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint;" a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012).

In sum, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973).

### 2. Discussion

#### a. Count 1

Count 1 asserts that DSW violated the TCPA by using an ATDS to send text messages to Plaintiffs without their consent. (ECF No. 22 ¶ ¶ 82-87.) DSW argues that this count is subject to judgment in its favor due to the Amended Complaint's pleading deficiencies. DSW further contends that its motion should be granted because its Answer definitively establishes that Oracle Responsys did not have ATDS capabilities. Plaintiffs oppose, arguing that the Amended Complaint contains a sufficient factual predicate and that DSW's Answer does not have a preclusive effect on their claims. Plaintiffs' opposition is well-founded.

Turning to the pleading argument first, the TCPA was enacted to address certain telemarketing practices that Congress found to be an invasion of consumer privacy. *Zehala v. Am. Express*, No. 2:10-cv-848, 2011 U.S. Dist. LEXIS 109697, at *10 (S.D. Ohio Sep. 26, 2011) (Watson, J.). It regulates the use of automated telephone equipment. 47 U.S.C. § 227, *et seq*. Count 1 is premised upon Section 227(b)(1)(A)(iii) of the TCPA. That section pertinently provides:

> (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, . . . .

The Sixth Circuit directs that text messages "should be treated as a 'call' for purposes of the TCPA." *Keating v. Peterson's Nelnet*, LLC, 615 F. App'x 365, 371 (6th Cir. 2015).

14

To state a claim under the TCPA for texts, Plaintiffs must allege a sufficient factual predicate indicating that: (1) a text was sent to a cell or wireless phone, (2) by the use of any automatic dialing system or an artificial or prerecorded voice, (3) without prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A); *see also Zehala*, 2011 U.S. Dist. LEXIS 109697, at *14. The TCPA defines "automatic telephone dialing system" ("ATDS") as "equipment which has the capacity . . . (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

The Amended Complaint alleges:

> 58. The source of each of the unsolicited SMS text messages sent by Defendants, i.e., short code telephone number 748-588, is a short code telephone number that is registered as having been assigned to Defendants.

> 59. All telephone contact by Defendants and/or affiliates, subsidiaries, or agents of Defendants to Plaintiffs occurred via an ATDS ("automated telephone dialing system") as defined by 47 U.S.C. § 227(b)(1)(A) because the unsolicited telemarketing SMS text messages were sent from 748-588, which is a short code telephone number used to message consumers *en masse*, and because the hardware and software used by Defendants to send such messages have the capacity to store, produce, and dial either random or sequential numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Further, the complained of SMS text messages were written in a generic and impersonal manner, thus demonstrating that the text messages were sent to numerous other consumers.

> 60. To send the text messages, Defendants used a messaging platform (the "Platform") that permitted Defendants to transmit thousands of automated text messages without any human involvement.

> 61. The Platform has the capacity to store telephone numbers.

> 62. The Platform has the capacity to generate sequential numbers.

> 63. The Platform has the capacity to dial numbers in sequential order.

64. The Platform has the capacity to dial numbers from a list of numbers.

65. The Platform has the capacity to dial numbers without human intervention.

66. The Platform has the capacity to schedule the time and date for future transmission of text messages, which occurs without any human involvement.

(ECF No. 22.)  According to DSW, these paragraphs do nothing but repeat the elements of a TCPA claim while omitting supporting facts. (ECF No. 45 at 10.) As such, DSW argues that the Amended Complaint "merely parrots the statutory language" and fails to adequately state a claim under Rule 12(c). (ECF No. 45 at 10.)  In making this argument, DSW fails to consider the Amended Complaint in its totality. This is fatal to their assertion, as a review of the document establishes more than "threadbare recitals" of the TCPA's elements.

To begin, the Amended Complaint alleges that Plaintiffs received the text messages from SMS number 748-588, which is registered to DSW. The pleading provides screenshots of the texts showing the messages' content. The messages contain generic language about DSW's promotions and are not addressed to the recipient. The pleading details the dates and times that the texts were received and also avers the texts' frequency. The Amended Complaint asserts that Plaintiffs did not consent to receiving the texts. And, the Amended Complaint alleges that DSW used an ATDS to send the texts. The basis for this allegation is the texts' generic nature, frequency, and origination from DSW's SMS number.  While the Amended Complaint's technical ATDS allegations can be viewed as generic, this is of necessity, as Plaintiffs have no way of knowing the identity and intricacy of DSW's chosen program pre-suit. In sum, after viewing the Amended Complaint in the light most favorable to the Plaintiffs, the Court holds that

they have alleged the necessary elements of their TCPA claim while providing a sufficient factual basis for this count.  This ground for judgment is unsuccessful.

DSW's second basis for judgment on Count 1 is that its Answer definitively establishes both that it used Oracle Responsys to send the texts and that that system's inability to generate and dial random numbers make it not an ATDS. (ECF No. 44 ¶ 1; ECF No. 45 at 10-11.)  There is nothing definite in the Answer, however. Instead, DSW denies sending the texts but pleads in the alternative that *if* it had done so, Oracle Responsys *would have been* the program it used to send the texts. (ECF No. 44 introduction, ¶ 1.) The Court recognizes and respects the viability of alternative pleading. Yet, such pleading has consequences. Here, those consequences include preventing DSW from seeking judgment now by arguing both that it did and did not send the texts while simultaneously arguing that if it did, it potentially "would have" used a certain non-ATDS system. Hence, the Answer establishes neither that DSW sent the texts nor that it used a non-ATDS if it did send the texts.

What DSW seeks is, in effect, an advisory opinion that judgment in its favor would be proper *if* it did send the texts and *if* it used Oracle Responsys to do so. But under Article III, courts are required to "avoid issuing advisory opinions based upon hypothetical situations." *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir. 1995). Instead, a court's judgment "must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citation omitted). DSW's Motion for Judgment on Count 1 is denied on this ground.

Even assuming, arguendo, that DSW's Answer does admit that it did send the texts and used Oracle Responsys to do so, judgment would remain improper. The Court declines to

convert DSW's Motion for Judgment on the Pleadings to a Fed. R. Civ. P. 56 Motion for

Summary Judgment. Thus, the Court must accept the Amended Complaint's well-pleaded

allegations as true. *Ohio Police & Fire Pension Fund, v. Standard & Poor's Fin. Servs. LLC*,

700 F.3d 829, 835 (6th Cir. 2012) (citation omitted). Those allegations include that DSW used an

ATDS to send Plaintiffs spam text messages without their consent. The statements within DSW's

Answer to the contrary serve only to deny those allegations, not to negate their assumed truth.

*Rapaport*, 2012 U.S. Dist. LEXIS 90324, at *6. As such, DSW's argument that its Answer

definitively establishes that Oracle Responsys is not an ATDS because DSW says so is both

premature and not a basis for judgment.

DSW also argues that Exhibits A-D establish that Oracle Responsys is not an ATDS.

(ECF No. 45 at 11.) But the Court strikes those exhibits above. Thus, if DSW had sent the texts

and used Oracle Responsys to do so, the Answer does not establish that that Oracle Responsys

fails to qualify as an ATDS. DSW's third basis for judgment on Count 1 is unpersuasive.

The Court **DENIES** DSW's Motion for Judgment on Count 1. (ECF No. 45.)

### b. Count 2

Count 2 is LaGuardia's and Austin's claim that DSW violated the TCPA by sending them

text messages despite the fact that they were registered on Do Not Call Registry. (ECF No. 45 ¶

¶ 88-91). Generally, the TCPA provides a private right of action to an individual who is on the

registry and receives more than one telephone solicitation in a twelve-month period. A call to a

telephone number on the Do Not Call Registry is a violation of the regulations when it is made to

solicit the purchase of goods or services. 47 C.F.R. § 64.1200(f)(12). The TCPA exempts a call

from the definition of a "telephone solicitation" if "the caller has an established business

relationship" with the recipient of the call. 47 U.S.C. § 227(a)(4). An established business

relationship ("EBR") is "formed by a voluntary two-way communication between a person or entity and a residential subscriber . . . on the basis of the subscriber's purchase or transaction with the entity . . . [or] the subscriber's inquiry or application regarding products or services offered by the entity . . . ." 47 C.F.R. § 64.1200(f)(5).

DSW's Answer states that LaGuardia and Austin signed up for DSW's "VIP" club by providing DSW with their cellular telephone numbers and authorizing DSW to text those numbers. (ECF No. 44 at ¶ 3.)  The Answer also points to Exhibits E-F, purported transaction histories for the noted Plaintiffs, to show that each made purchases within the timeframe necessary to create an EBR. But as discussed above, the Court must accept the Amended Complaint's well-pleaded allegation that Plaintiffs did not consent to the text messages as true because the Court is not converting the instant motion to one for summary judgment.  Hence, the unverified Answer's VIP affirmative allegations equate to denials, not to facts. *Rapaport*, 2012 U.S. Dist. LEXIS 90324, at *6.  DSW's Motion for Judgment on Count 2 is **DENIED**.

### C.  Motion to Stay

Lastly, DSW asks the Court to stay the matter in its entirety pending resolution of *Facebook, Inc. v. Duguid*, No. 19-511, 2020 WL 3865252, at *1 (U.S. July 9, 2020) (granting certiorari) by the Supreme Court of the United States. According to DSW, the decision from that case will resolve the "threshold and central issue" in this case: whether Oracle Responsys is an ATDS. (ECF No. 74 at 7.) Plaintiffs oppose, arguing first that *Duguid's* result would not be case-dispositive and second that the balance of stay factors favor proceeding. (ECF No. 79.) Plaintiffs' arguments prevail.

### 1. Standard of Review

"A federal district court's power to stay cases on its docket is a long-standing procedural tenet." *Michael v. Ghee*, 325 F. Supp. 2d 829, 831 (N.D. Ohio 2004). Indeed, the countless cases each side cites to in support of their varying positions indicate just how discretionary stays are. (ECF Nos. 74, 79, 83-92.)

The Court applies a four-factor analysis to guide its discretion for staying litigation pending resolution of the same or related issues in another forum: "(1) the potentiality of another case having a dispositive effect on the case to be stayed, (2) the judicial economy to be saved by waiting on a dispositive decision, (3) the public welfare, and (4) the hardship/prejudice to the party opposing the stay, given its duration." *Aerpio Pharm., Inc. v. Quaggin*, No. 1:18-CV-794, 2019 WL 4717477, at *20 (S.D. Ohio Sept. 26, 2019) (Litkovitz, M.J.) (citation omitted), report and recommendation adopted at No. 1:18CV794, 2019 WL 5455111 (S.D. Ohio Oct. 24, 2019) (Dlott, J.).

### 2. Analysis

The Court begins with the dispositive effect prong. Certiorari was granted in *Duguid* as to the following question: "[w]hether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator." DSW claims that answer will resolve the "threshold issue" in this case—"whether an ATDS was used to send text messages to Plaintiffs." (ECF No. 74 at 10.) To repeat, DSW denies sending the texts. So, the threshold issue at this point is whether DSW sent the texts, not the type of system that DSW *may have* used *if* it sent the texts. For this reason, the motion to stay mis-frames the dispositive effect aspect of the analysis.

Assuming, arguendo, that DSW did send the texts to Plaintiffs via Oracle Responsys, the Answer's affirmative allegations as to that program's failure to comport with any aspect of the ATDS definition equate to denials, not "uncontroverted facts." *See Rapaport*, 2012 U.S. Dist. LEXIS 90324, at *6; *see also* ECF No. 83 at 6. Because the Amended Complaint asserts that DSW's messaging program was an ATDS, and the Answer denies that the program was an ATDS, a conflict exists as to the type of platform that may have been used. Such conflict requires discovery to resolve and renders the Supreme Court's resolution of the question before it non-dispositive on this case. Additionally, Count 2 does not involve the ATDS issue. So, even if the Supreme Court decided the issue in a manner favorable to DSW, the Court and the parties would still need to address that count. "Given the nature of evidence, where memories fade, witnesses become more difficult to locate and essential documents can be lost, it is always best to engage in discovery where litigation is apparent and inevitable." *Pittenger v. First Nat'l Bank*, No. 20-CV-10606, 2020 U.S. Dist. LEXIS 171062, at *8 (E.D. Mich. Sep. 18, 2020). This factor therefore mitigates against a stay.

Next, the Court considers the judicial economy a stay would afford and finds none. Discovery must proceed on both counts regardless of *Duguid's* resolution. Discovery is a typical aspect of every case. Requiring the parties to proceed therefore does not hamper the Court's docket. This factor leans towards denying the stay.

Third, stays are not favored because "a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council v. United States Dist. Court, S. Dist., etc.*, 565 F.2d 393, 396 (6th Cir. 1977). This public welfare aspect is especially true where, as here, there are class allegations involving "tens of thousands" of individuals. (ECF No. 2 ¶ 74.) The passage of time could result in the loss of evidence via text deletion by unknowing putative

class members and potential destruction of relevant phone records by cellphone carriers. Moreover, each side makes much of the other's alleged dilatory tactics thus far. A stay would serve only to exacerbate those claimed delays while prejudicing potential class members. This factor tends against a stay.

The fourth and final aspect is the hardship or prejudice to the party opposing the stay, given its duration. DSW argues the anticipated delay will be "limited," with an "expected" *Duguid* decision date within the first six months of 2021. (ECF No. 74 at 14.) Projecting a deadline for the Supreme Court to act is both bold and fruitless. As to hardship, the Plaintiffs argue that a stay would prejudice them by the loss of evidence as articulated in the paragraph directly above. The Court agrees. The final factor leans towards denying the stay.

Each of the four *Quaggin* factors indicate staying this case in its entirety is improper. Accordingly, the Court **DENIES** DSW's Motion to Stay. (ECF No. 74.)

### III.    CONCLUSION

Plaintiffs' Motion to Strike (ECF No. 60) is **GRANTED** in part and **DENIED** in part as detailed above. The Exhibits to Defendants' Answer (ECF NO. 44) are hereby **STRICKEN**.

DSW's Motion for Judgment on the Pleadings (ECF No. 45) is **DENIED**.

DSW's Motion to Stay (ECF No. 74) is **DENIED**.

The discovery stay (ECF No. 63) is **LIFTED**.

**IT IS SO ORDERED**.


/s/ Sarah D. Morrison
**SARAH D. MORRISION**
**UNITED STATES DISTRICT JUDGE**