UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Eric LaGuardia, *et al.*,

                Plaintiffs,        :    Case No. 2:20-cv-2311

     - vs -                      Judge Sarah D. Morrison
                                      Magistrate Judge Vascura

Designer Brands Inc., *et al.*,

                              :
                Defendants.

## OPINION & ORDER

This is a putative class action, brought under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. Because Defendants did not use an ATDS to send text messages to a putative class, and because Defendants fail to establish that they had an established business relationship ("EBR") with two of the Plaintiffs, summary judgment (ECF No. 117) is only partially proper. In reaching that determination, the Court also **DENIES** Plaintiffs' Motion to Exclude the Report of Ken Sponsler (ECF No. 130), **DENIES** Plaintiffs' request for additional discovery (ECF No. 128), and **DENIES** Plaintiffs' request for leave to amend (ECF No. 128).

## I.    BACKGROUND

This is the third dispositive motion presented to the Court in this matter. As such, all are well-versed in the case's procedural history and a truncated recitation of the background follows.

Plaintiffs Eric LaGuardia, Sophia Wingate, Lindsay Rucker, and Nicole Austin are California residents. (ECF No. 22 ¶ ¶ 7-11.) Defendant DSW Shoe

1

Warehouse, Inc. sells footwear and is a wholly owned subsidiary of Defendant Designer Brands, Inc. (ECF No. 44 ¶ ¶ 2, 12.) DSW Shoe Warehouse is a Missouri corporation headquartered in Columbus, Ohio. *Id*. ¶ 12. Designer Brands is an Ohio corporation with headquarters in Columbus. Defendants are collectively referred to as "DSW."

DSW, using the Oracle Responsys Interact platform ("Responsys"), sent Plaintiffs texts advertising DSW's products without their consent in July and August 2019. DSW sent LaGuardia and Austin one solicitation each after they told DSW to stop, even though they were on the National Do Not Call Registry ("Registry").

Plaintiffs argue that Responsys has the capacity to: (1) store telephone numbers; (2) generate sequential numbers; (3) dial numbers in sequential order; (4) dial numbers from a list of numbers; (5) dial numbers without human intervention; and (6) schedule the time and date for future transmission of text messages without human involvement. (ECF No. 22 ¶ ¶ 61-66.) Plaintiffs thus contend that DSW's program is an automated telephone dialing system ("ATDS") as defined in the TCPA.

Count 1 alleges that DSW violated § 227(b)(1)(A)(iii) of the TCPA by willfully and/or knowingly contacting Plaintiffs on their cellular telephones using an ATDS. *Id*. ¶ ¶ 82-87. Count 2 asserts that DSW violated § 227(c) of the TCPA by sending the texts to LaGuardia and Austin despite the fact that they were on the Registry

and by continuing to send the texts after they told DSW to stop. *Id*. ¶ ¶ 88-91. Plaintiffs seek Fed. R. Civ. P. 23 certification of two classes and one sub-class. *Id*. ¶ ¶ 71- 72. In addition to class certification, Plaintiffs seek compensatory, statutory punitive, and treble damages; attorney's fees; costs, and an injunction requiring DSW to cease all text "spam" activities. *Id*. ¶ 6, Prayer for Relief ¶ ¶ 1-6. DSW denies all claims. (ECF No. 44.)

The Court's October 27, 2020 Opinion & Order (ECF No. 93) denied Defendants' Motion for Judgment on the Pleadings. The Court's May 24, 2021 Opinion and Order (ECF No. 133) denied Defendants' subsequent Motion to Dismiss.

Magistrate Judge Vascura's Preliminary Pretrial Order (ECF No. 97) ("Preliminary Order") established January 15, 2021 as the deadline for DSW to file a summary judgment motion on the "threshold issues" of whether: "(1) . . . the platform used to send the at-issue texts is an ATDS as contemplated under the TCPA and (2) . . . Plaintiffs had EBRs when the at-issue texts were sent." (ECF No. 97, PageID 1025-26.) The Preliminary Order further set March 8, 2021 as the discovery deadline for those "targeted" issues while noting that "the parties must schedule their discovery in such a way as to require all responses to be served prior to the deadline and must also file any motions relating to discovery within the discovery period." *Id*. at 1025. The Preliminary Order scheduled April 5, 2021 as the Plaintiffs' deadline to oppose DSW's Motion for Summary Judgment. *Id*. at 1026.

Lastly, the Preliminary Order stayed class certification motions until after the threshold issues were resolved. *Id*. at 1023.

DSW sought, and obtained, two extensions of the dispositive motion deadline. (ECF Nos. 106, 111.) Plaintiffs requested, and received, two extensions of the discovery deadline. (ECF Nos. 120, 123.)

DSW's timely Motion for Summary Judgment is fully briefed. (ECF No. 117.) Plaintiffs' Motion to Exclude the Report of Ken Sponsler, DSW's expert, is likewise ripe. (ECF No. 130.) The Court turns to the latter before addressing the former.

## II.    MOTION TO EXCLUDE

Plaintiffs seek exclusion of Ken Sponsler's opinions on reliability grounds. Sponsler first opines that Responsys "cannot store or produce numbers to be called using a random or sequential number generator and does not dial such numbers" such that Responsys is not an ATDS. (ECF No. 117-1, PageID 1190.) Sponsler secondly opines that Responsys "requires substantial human intervention to send text messages." (ECF No. 117-2, PageID 1190).

### A. Rule 702

"[U]nder Daubert and its progeny, a party proffering expert testimony must show by a 'preponderance of proof' that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of relevant issues." *Decker v. GE Healthcare Inc*., 770 F.3d 378, 391 (6th Cir. 2014) (citations omitted). Federal R. Evid. 702 pertains to the admissibility of expert testimony and states:

4

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The rule "imposes a special obligation upon a trial judge to ensure that scientific testimony is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 137 (1999) (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993)). This basic gatekeeping obligation applies to all expert testimony. *Kumho Tire Co.*, 526 U.S. at 147.

"The trial court's role as a gatekeeper of expert testimony is not meant to serve as a replacement of the adversary system." *European Pensions Mgmt. v. Columbus Life Ins. Co.*, No. 1:16-cv-542, 2017 U.S. Dist. LEXIS 167671, at *12 (S.D. Ohio Oct. 11, 2017) (Dlott, J.) (citing *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 377 (6th Cir. 2014) (citation omitted)). "[R]ejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (citation omitted). Accordingly, "Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 516 (6th Cir. 1998) (citation omitted).

## B. ATDS

Plaintiffs do not dispute Sponsler's knowledge or experience. Nor do they contest that his ATDS opinion will assist the trier of fact to understand the evidence or determine a fact in issue. Rather, they attack Sponsler's ATDS opinion on reliability grounds. In particular, Plaintiffs argue that his opinion must be excluded because Sponsler "did not conduct a reasonably thorough investigation" such that "his report is unreliable." (ECF No. 130, PageID 1607.) This equates to a Rule 702(b) reliability challenge.

*Daubert* identifies several factors addressing a reliability determination: testing, peer review, publication, known or potential rate of error, and general acceptance. *Daubert*, 509 U.S. at 593-94. "The *Daubert* factors are neither definitive nor exhaustive and may not apply in every case." *European Pensions Mgmt. v. Columbus Life Ins. Co.*, No. 1:16-cv-542, 2017 U.S. Dist. LEXIS 167671, at *12-13 (S.D. Ohio Oct. 11, 2017) (Dlott, J.) (citing *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 407 (6th Cir. 2006)). "Red flags that caution against certifying an expert include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012). Those red flags are the source of Plaintiffs' contention that exclusion is warranted.

### 1.  Ability to <u>Store</u> Telephone Numbers

Prong one of Sponsler's ATDS opinion is that Responsys cannot store telephone numbers "to be called using a random or sequential number

generator . . . ." (ECF No. 117-2, PageID 1190.) Plaintiffs contend that this opinion is unreliable because Sponsler's "report does not detail any document or witness who would have provided him with the information necessary to opine that the Responsys system cannot store phone numbers using a random or sequential number generator." (ECF No. 130, PageID 1610.)

Plaintiffs are mistaken. The report specifies that he:

● Reviewed pleadings in this Action . . ., including the Court's October 27, 2020 Opinion and Order;

●Reviewed manuals that describe the capabilities of Responsys and are available on Oracle's website;

●Interviewed DSW's Senior Manager of Digital Applications Development, Rich Clum, regarding DSW's use of and interface with Responsys;

● Arranged and attended via videoconference a demonstration of the capabilities and customer interface of Responsys, conducted by Mr. Clum and Heather Hutchison, a DSW Analyst who has worked with Responsys;

● Observed the functionality available to DSW on the Responsys interface during the demonstration;

● Conducted a question and answer session during the demonstration on the capabilities of and DSW's interface with Responsys;

● Reviewed the declaration of DSW's Director of Data Engineering & Analytics, Michael Shebetich, regarding Responsys's capabilities and DSW's interaction with Responsys;

● Reviewed the deposition testimony of Surech Kalyanaraman, Senior Director at Oracle, from TCPA litigation—*Eldridge v. Pet Supermarket, Inc.*, No. 1:18-cv22531-KMW (Dkt. No. 77-3) (S.D. Fla.) . . . regarding Responsys's capabilities, including whether it can generate random or sequential phone numbers;

● Considered, among other parts of his testimony, Mr. Kalyanaraman's testimony that he (i) influences the features that Oracle software developers implement in Responsys's source code and (ii) is responsible for production

management for Responsys, meaning that he identifies the features and capabilities that Oracle wants its software developers to implement in Responsys and then communicates them to the software developers via a requirements document; and

● Reviewed Mr. Kalyanaraman's testimony about Responsys' capability to generate random or sequential phone numbers and inability to be programmed to do so:

Q: The -- the ability of the Respons[y]s system to produce telephone numbers through -- to generate on its own, telephone numbers without having that information uploaded into its software?
A: There is no such capability.
Q: Okay.
A: Yeah. So question number 15 is not applicable. Once again, question number 16 is also not applicable because Respons[y]s does not have a piece of software to generate numbers in a sequential fashion.
***
Q: [] Is the Respons[y]s platform capable of randomly generating a telephone number and dialing that number?
A: No.
Q: Is it -- is the Respons[y]s platform capable of generating a sequential number and dialing that number?
A: No.
***
Q: [] Could the Respons[y]s system be programmed to generate random or sequential numbers and dial those numbers?
A: No.

(ECF No. 132, PageID 1680-1682) (internal citations omitted).

The Court determines that Sponsler's review of those materials, which are of the type that are reasonably relied upon by experts in the field of global-direct marketing compliance, combined with his twenty-one years' of experience in that field, provide a sufficient foundation for his determination that Responsys cannot store telephone numbers "to be called using a random or sequential number generator . . . ." (ECF No. 117-2, PageID 1190.) Plaintiffs' Motion to Exclude this opinion is **DENIED**. (ECF No. 130.)

### 2. Ability to **Produce** Telephone Numbers

Plaintiffs seek exclusion of Sponsler's linked conclusion that Responsys is incapable of producing numbers to be called because he "failed to thoroughly investigate the true capabilities of the Responsys system . . . ." (ECF No. 134, PageID 1736.) According to Plaintiffs, that failure consisted of: (1) inspecting only the functionalities used by the Defendant and not all potential functionalities of the equipment; (2) considering Kalyanaraman's testimony even though Sponsler did not know Kalyanaraman; and (3) failing to ask about Responsys' functionalities that conflicted with his conclusion. (ECF No. 134, PageID 1739.) Plaintiffs argue these omissions "mean that his opinion ultimately cannot be tested—because it is based on incomplete data—and, for the same reason, his opinion is no more than an unfounded extrapolation." (ECF No. 134, PageID 1736.)

By highlighting what Sponsler did not do instead of what he did do, Plaintiffs attack his credibility and the weight that should be given to his opinion. But credibility and weight are jury issues. Further, Plaintiffs do not challenge Sponsler's knowledge or experience. The foundation for his production opinion is the same as for his storage opinion. The Court finds that foundation sufficient above. So the Motion to Exclude (ECF No. 130) Sponsler's opinion as to Responsys' inability "to produce numbers to be called using a random or sequential number generator" is **DENIED**. (ECF No. 117-2, PageID 1190.)

### 3.  Ability to <u>Dial</u> Telephone Numbers

Prong three of Sponsler's first opinion is that Responsys does not "dial" random or sequential numbers. While Plaintiffs' Motion (ECF No. 130) does not seek exclusion of this opinion, Plaintiffs' Reply (ECF No. 134) does.

"[A] reply brief is not the proper place to raise an issue for the first time." *United Tel. Co. of Ohio v. Ameritech Servs., Inc.*, No. 2:10-cv249, 2011 U.S. Dist. LEXIS 1746, 2011 WL 53462, at *3 n. 2 (S.D. Ohio Jan.7, 2011) (Frost, J.). Consequently, the "Court need not and will not consider" Plaintiffs' "new or newly recast arguments." *Ross v. Choice Hotels Int'l, Inc.*, 882 F. Supp. 2d 951, 958 (S.D. Ohio 2012) (Frost, J.). Plaintiffs' Motion to Exclude this aspect of Sponsler's report is **DENIED**. (ECF No. 130.)

### C.  Human Intervention

A key issue in this case is whether Responsys qualifies as an ATDS under the TCPA.  At the time Sponsler released his report, courts examined the amount of human action that was necessary for a dialing platform to operate when considering whether it qualified as an ATDS under the Act. *See Gary v. TrueBlue, Inc.*, No. 17-CV-10544, 2018 WL 3647046, at *7 (E.D. Mich. Aug. 1, 2018); *see also Gary v. TrueBlue, Inc.*, 346 F. Supp. 3d 1040, 1045–46 (E.D. Mich. 2018), aff'd, 786 F. App'x 555 (6th Cir. 2019); *see also Ramos v. Hopele of Fort Lauderdale, LLC*, 334 F. Supp. 3d 1262, 1273 (S.D. Fla. 2018). As such, Sponsler opines that Responsys "requires substantial human intervention to send text messages" such that it is not an ATDS under the TCPA. (ECF No. 117-2, PageID 1190.)

The Supreme Court decided *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), after Sponsler's report. *Duguid* addressed the issue of whether the ATDS "definition encompasses equipment that can 'store' and dial telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" *Duguid*, 141 S. Ct. at 1167. The answer? "It does not. To qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id*. In reaching that determination, the Supreme Court commented:

> all devices require some human intervention, whether it takes the form of programming a cell phone to respond automatically to texts received while in 'do not disturb' mode or commanding a computer program to produce and dial phone numbers at random. We decline to interpret the TCPA as requiring such a difficult line-drawing exercise around how much automation is too much.

*Id.* at 1175.

From this, Plaintiffs argue that Sponsler's human intervention opinion must be excluded under Fed. R. Evid. 702(a) as irrelevant because *Duguid* makes clear that human involvement is no longer a litmus test for ATDS status. (ECF No. 130, PageID 1608-1609.) DSW partially concedes this point, noting that while Sponsler's opinion "has perhaps taken on less importance since *Duguid*," "the level of human intervention required to input phone numbers into Responsys's system illustrates that . . . Responsys can neither produce nor store telephone numbers using a random or sequential number generator, further supporting the conclusion that

11

Responsys is not an ATDS." (ECF No. 132, PageID 1690-1691.) In other words, the human intervention portion of the report serves only to buttress Sponsler's opinion that Responsys is not an ATDS.

The Court concurs with DSW that in light of *Duguid*, Sponsler's human intervention conclusion serves as explanatory evidence, not as a freestanding opinion. Put differently, the human intervention discussion would help the trier of fact understand *why* Responsys cannot independently produce or store telephone numbers using a random or sequential number generator. *See* Rule 702(a). Exclusion is therefore improper.

In sum, Plaintiffs' Motion to Exclude is **DENIED**. (ECF No. 130.)

## III.    REQUEST FOR ADDITIONAL DISCOVERY

Contained within Plaintiffs' Summary Judgment Opposition is a Fed. R. Civ. P. 56(d) request to "subpoena and depose Oracle on the topic of" Responsys and whether Responsys "can 'store' telephone numbers using a random or sequential number generator." (ECF No. 128, PageID 1462; ECF No. 128-1 ¶ ¶ 4-5.) Plaintiffs assert this discovery became necessary after *Duguid* was decided on April 1, 2021. (ECF No. 128, PageID 1462; ECF No. 128-1.)

Plaintiffs did not raise their plea in a separate motion, thereby precluding the Court's review. *See* S.D. Ohio Civ. R. 7.2(a)(1); *see also Arnett v. Pontiac Police Dep't*, No. 97-1142, 1999 U.S. App. LEXIS 30219, at *2 (6th Cir. Aug. 9, 1999) (holding "district court did not err by failing to rule specifically on Arnett's request for the appointment of counsel, which was included as a component of his request for relief

in his complaint but was not made by separate motion."). Even if the Court were to consider Plaintiffs' ask, even before *Duguid* was announced, the functionality of the Responsys platform was at issue in this case. Plaintiffs had ample opportunity to obtain the information they now claim they need. Their post-deadline request for relief is untimely. For these reasons, Plaintiffs' Rule 56(d) request is **DENIED**.

## IV.    MOTION FOR SUMMARY JUDGMENT

Because DSW conclusively establishes that Responsys is not an ATDS but fails to adequately prove that the EBR exception applies to LaGuardia's and Austin's Registry claims, DSW is entitled to judgment as a matter of law on Count 1 but not on Count 2.

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

### B. Count 1 - ATDS

Count 1 alleges that DSW violated § 227(b)(1)(A)(iii) of the TCPA by willfully and/or knowingly contacting Plaintiffs on their cellular telephones using an ATDS. (ECF No. 22 ¶ ¶ 82-87.) DSW responds that Responsys lacks certain required capabilities preventing the platform from qualifying as an ATDS under the Act.

As noted, "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Duguid*, 141 S. Ct. at 1167. Sponsler's unrebutted expert opinion establishes that Responsys has neither. (ECF No. 117-2, PageID 1190.)

Faced with this unrefuted evidence, Plaintiffs note Responsys issues a sequential identification number ("ID number") for every message it sends. (ECF No. 128, PageID 1460.) Responsys then uses the ID number to track responses. *Id.* Plaintiffs assert "[t]here is no clearer example of 'storing' a telephone number 'to be called' using a 'sequential number generator' than the Responsys [sic] system of generating sequential ID numbers for each text message communication it sends and then using those ID numbers to categorize whether to call those particular phone numbers in the future—or alternatively opt them out of a campaign." *Id.*

15

Consequently, Plaintiffs argue Responsys' ability to randomly generate message ID numbers qualifies it as an ATDS.

Plaintiffs' focus is off. The ATDS definition addresses the ability to randomly or sequentially store or generate phone numbers, *not* message identification numbers. *See Tehrani v. Joie De Vivre Hosp., LLC*, No. 19-cv-08168-EMC, 2021 U.S. Dist. LEXIS 165392, at *10 (N.D. Cal. Aug. 31, 2021) (holding "number generator" in § 227(a)(1) refers to telephone numbers).

Plaintiffs' reference to *Duguid*'s footnote seven in further support of their ID number argument fares no better. Footnote seven provides:

> Duguid argues that such a device would necessarily "produce" numbers using the same generator technology, meaning "store or" in §227(a)(1)(A) is superfluous. "It is no superfluity," however, for Congress to include both functions in the autodialer definition so as to clarify the domain of prohibited devices. For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time. *See* Brief for Professional Association for Customer Engagement *et al.* as Amici Curiae 19. In any event, even if the storing and producing functions often merge, Congress may have "employed a belt and suspenders approach" in writing the statute.

*Duguid*, 141 S. Ct. at 1172 n.7 (some citations omitted; emphasis added). In essence, Plaintiffs contend that this dicta, which addresses a hypothetical in an *amicus* brief, establishes that Responsys is an ATDS because of its ability to randomly generate ID numbers and to use those numbers to determine which phone numbers to send text messages to. (ECF No. 128, PageID 1460.) A "clear majority of courts" discount such reliance. *Tehrani* aptly summarizes their holdings as follows:

- *Hufnus v. Donotpay, Inc.*, No. 20-cv-08701-VC, 2021 U.S. Dist. LEXIS 118325, at *3-4 (N.D. Cal. June 24, 2021) (finding that plaintiff's "reading of footnote 7 conflicts with Duguid's holding and rationale[;] [t]he Supreme Court explained in Duguid that the TCPA's definition of autodialer concerns devices that allow companies 'to dial random or sequential blocks of telephone numbers automatically,' not systems, such as DoNot Pay's, that randomly or sequentially dial numbers from a list that was itself created in a non-random, non-sequential way").

- *Watts v. Emergency Twenty Four, Inc.*, No. 20-cv-1820, 2021 U.S. Dist. LEXIS 115053, at *8-9 (N.D. Ill. June 21, 2021) (concluding that plaintiff had not alleged the use of an autodialer; "the alleged facts suggest that instead of randomly or sequentially generating Watts's number, EMERgency24's equipment stored Watts's number in a database and dialed that stored number because he was an employee at a business that used EMERgency24's alarm notification system").

- *Barry v. Ally Fin., Inc.*, No. 20-12378, 2021 U.S. Dist. LEXIS 129573, at *17-19 (E.D. Mich. July 13, 2021) (stating that "Plaintiff takes footnote 7 out of context"; "the 'preproduced list' of phone numbers referenced in the footnote was itself created through a random or sequential number generator").

- *Borden v. efinancial, LLC*, No. C19-1430JLR, 2021 U.S. Dist. LEXIS 153086, at *14-16 (W.D. Wash. Aug. 13, 2021) (stating that "Mr. Borden's argument relies on a selective reading of one line within footnote 7 and ignores the greater context of that footnote and the opinion").

- *Timms v. USAA Fed. Sav. Bank*, No. 3:18-cv-01495-SAL, 2021 U.S. Dist. LEXIS 108083, at *17 (D.S.C. June 9, 2021) (holding that "footnote 7 does not support Plaintiff's argument"; "the Supreme Court's statement — that an 'autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list' and 'then store those numbers to be dialed at a later time' - refers to the process as explained by PACE on page 19 of its amicus brief").

*Tehrani*, 2021 U.S. Dist. LEXIS 165392, at *18-20.

This Court adopts their reasoning. DSW's Motion for Summary Judgment on Count 1 is **GRANTED**. (ECF No. 117.)

### C. Count 2 – Do Not Call Registry

Section 227(c) of the TCPA and corresponding 47 C.F.R. 64.1200(c)(2) prohibit telephone solicitations to residential telephone subscribers who are listed in the national Registry. Count 2 asserts that DSW violated both by sending the texts to LaGuardia and Austin despite the fact that they were on the Registry and by continuing to send the texts to them after they told DSW to stop. (ECF No. 22 ¶ ¶ 88-91.) DSW argues that the texts were permissible because LaGuardia and Austin had an "EBR" with DSW and because their "stop" requests were legally insufficient. (ECF No. 117, PageID 1174-1177; ECF No. 131, PageID 1673-1675.)

The TCPA was enacted in response to consumer "outrage[] over the proliferation of intrusive, nuisance telemarketing calls to their homes." *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 745, 181 L. Ed. 2d 881 (2012). The act "directs the FCC to promulgate regulations to protect residential telephone subscribers' privacy rights." *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 U.S. Dist. LEXIS 127596, at *22 (S.D. Cal. July 8, 2021) (citing 47 U.S.C. § 227(c)(1)-(2)). *See also* 47 C.F.R. § 64.1200(c)(2). "Residential subscriber" includes cell phone users. 47 C.F.R. 64.1200(e) (citing In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd 14014, 59-64, 2003 FCC LEXIS 3673, *60-64, 29 Comm. Reg. (P & F) 830 (F.C.C. June 26, 2003) ("2003

Rule)). *See also Hand v. Beach Entm't Kc*, 456 F. Supp. 3d 1099, 1120 (W.D. Mo. 2020) (holding same). Correspondingly, cell phone users in the Registry are considered residential subscribers.[1] In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd 14014, 64, 2003 FCC LEXIS 3673, *64, 29 Comm. Reg. (P & F) 830 (F.C.C. June 26, 2003).

The TCPA provides a private right of action to an individual who is on the Registry and who receives more than one telephone solicitation in a twelve-month period. *Johansen v. Nat'l Gas & Elec. LLC*, No. 2:17-CV-587, 2018 WL 3933472, at *3 (S.D. Ohio Aug. 16, 2018) (Graham, J.), case dismissed, No. 18-3895, 2019 WL 4597740 (6th Cir. Apr. 18, 2019). A call to a telephone number on the Registry is a violation of the regulations when it is made to solicit the purchase of goods or services. 47 C.F.R. § 64.1200(f)(12). The TCPA exempts a call from the definition of a "telephone solicitation" if the caller has an EBR with the recipient of the call. 47 U.S.C. § 227(a)(4). An EBR is created by

> a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

---

[1] Neither side argues proof is necessary to reach this determination. *See Hand*, 456 F. Supp. 3d at 1121 and n. 5 (noting 2003 Rule mentions that "further proof may be required to show that a wireless subscriber uses their wireless phone in the same manner in which they would use their residential landline phone").

47 C.F.R. § 64.1200(f)(5). DSW has the burden of proof regarding the existence of EBRs. *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 397 (M.D.N.C. 2015); *Elkins v. Medco Health Sols., Inc*., No. 4:12CV2141 TIA, 2014 U.S. Dist. LEXIS 57633, 2014 WL 1663406, at *8 (E.D. Mo. Apr. 25, 2014).

Seizing on the EBR exception, DSW points out that LaGuardia and Austin provided DSW with their phone numbers when enrolling in DSW's optional VIP Rewards Program. (ECF No. 117-1, ¶ 4.) DSW further highlights that LaGuardia and Austin had made purchases at DSW within the eighteen-months prior to the last text DSW sent to each. (ECF No. 117-1, ¶ ¶ 12, 13, Exs. A-B.) LaGuardia and Austin dispute none of this.

They do, however, protest the application of the EBR exception in this instance. They argue that it only applies to calls to residential land lines, not to cell phone numbers. In support, they first cite to the FCC's Rules and Regulations Implementing the TCPA of 1991, Report and Order, CG Docket No. 02-278, FCC 12-21, ¶ 35, fn. 102 (Feb. 15, 2012) ("2012 Rule"), which provides "[w]e reiterate that the EBR exemption under our current rules only applies to prerecorded calls to residential lines. . . . [t]he EBR exemption does not apply to autodialed or prerecorded calls to wireless numbers." As noted above, cell phone numbers are treated as residential lines here. Furthermore, the Court holds *supra* that Responsys is not an autodialer. Thus, the 2012 Rule is of no assistance in this analysis.

Neither are Plaintiffs' cited cases. (ECF No. 128, PageID 1463) (citing *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 273 (3rd Cir. 2013); *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1378 (S.D. Fla. 2014), *Beiler v. GC Servs. L.P.*, No. 1:13CV869, 2014 WL 5531169, at *1 (M.D. N.C. Nov. 3, 2014); *Cartrette v. Time Warner Cable, Inc.*, 157 F. Supp. 3d 448, 452 (E.D. N.C. 2016); *Vazquez v. Triad Media Sols., Inc.*, No. 15CV07220WHWCLW, 2016 WL 155044, at *1 (D. N.J. Jan. 13, 2016); *Flores v. Access Ins. Co.*, No. 215CV02883CASAGRX, 2017 WL 986516, at *8 (C.D. Cal. Mar. 13, 2017); and *Jones v. Experian Info. Sols.*, No. CV 14-10218-GAO, 2016 WL 3945094, at *6 (D. Mass. July 19, 2016)). They each pertain to alleged violations of § 227(b), not to allegations lodged under § 227(c), which is the section at issue here. As such, the Court holds that Plaintiffs' cited bases supporting the inapplicability of the EBR exception are unpersuasive.

LaGuardia and Austin alternatively maintain that they effectively terminated any EBR with DSW by virtue of their respective "STOP" text message replies to DSW's texts. (ECF No. 128, PageID 1464-65.) DSW counters that those efforts were insufficient because Responsys is not an ATDS. (ECF No. 131, PageID 1674.) And, even if the Stop request was effective, DSW argues that the texts fall within a safe harbor provision. (ECF No. 131, PageID 1675.)

The Court need not engage in the "is STOP enough" debate because DSW fails to establish that it maintains an internal Do Not Call list.[2] The applicable

---

[2]In a footnote, Plaintiffs seek leave to amend their First Amended Complaint to add "separate allegations or Counts regarding DSW's internal DNC [Do Not Call list], or lack thereof . . . ." (ECF No. 128, PageID 1468.) Plaintiffs did not make their

regulations provide that DSW cannot text LaGuardia and/or Austin under the EBR exception *unless* DSW "has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of" DSW. 47 C.F.R. § 64.1200(d). Those procedures must include "a written policy, available upon demand, for maintaining a do-not-call list." 47 C.F.R. § 64.1200(d)(1). DSW makes no argument and provides no evidence on this point. In fact, Nicholas Hughes, DSW's Fed. R. Civ. P. 30(b)(6) deponent, testified that he was "not aware if DSW . . . has an internal Do Not Call list." (ECF No. 128-1, PageID 1545-1546.) Accordingly, genuine disputes of material fact exist precluding judgment on Count 2 at this time.

Finally, DSW's "safe-harbor" arguments, raised in its Reply in response to LaGuardia's and Austin's arguments, is simply a passing reference to 47 U.S.C. § 227(c)(5). (ECF No. 128, PageID 1471; ECF No. 131, PageID 1675); *see also Simmons v. Charter Commc'n, Inc.*, 222 F. Supp. 3d 121, 131 (D. Conn. 2016) (holding "[t]he assertion of non-liability based on compliance with the safe harbor provisions may be properly classified as an affirmative defense."). This is insufficient to satisfy DSW's burden of proof. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most

---

request in a separate motion, thereby precluding the Court's review. *See* S.D. Ohio Civ. R. 7.2(a)(1); *see also Arnett*, 1999 U.S. App. LEXIS 30219, at *2. Furthermore, the request, made after DSW's Summary Judgment Motion, is both untimely and unduly prejudicial to DSW; Plaintiffs previously amended their Complaint, this case has been pending for more than a year, and three dispositive motions have been filed.

skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation omitted).

DSW's Motion for Summary Judgment on Count 2 is **DENIED**. (ECF No. 117.)

## V.    CONCLUSION

Plaintiff's Request to Exclude (ECF No. 130) is **DENIED**.

Plaintiffs' Rule 56(d) Request (ECF No. 128) is **DENIED**.

Plaintiff's Request to Amend (ECF No. 128) is **DENIED**.

DSW's Motion for Summary Judgment (ECF No. 117) is **GRANTED** as to Count 1 and **DENIED** as to Count 2.

Counsel shall contact Magistrate Judge Vascura within seven days of this Opinion and Order to develop a case schedule.

**IT IS SO ORDERED**.

<u>/s/Sarah D. Morrison</u>
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**