# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ERIC LAGUARDIA, *et al.*, | : | |
| | : | |
|    Plaintiffs, | : | Case No. 2:20-cv-02311-SDM-CMV |
| | : | |
| v. | : | Judge Sarah D. Morrison |
| | : | |
| DESIGNER BRANDS INC., *et al.*, | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
|    Defendants. | : | |

**DEFENDANTS DESIGNER BRANDS INC.'S AND DSW SHOE WAREHOUSE, INC.'S
<u>REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL RECONSIDERATION</u>**

Defendants Designer Brands Inc. and DSW Shoe Warehouse, Inc. (together, "DSW") submit this Reply to Plaintiffs Eric LaGuardia's and Nicole Austin's (together, "Plaintiffs") Response in Opposition to Defendants' Motion for [Partial] Reconsideration, Dkt. No. 143 ("Resp."). DSW respectfully seeks reconsideration of the portion of this Court's September 9, 2021 Opinion & Order, Dkt. No. 140 ("Order") denying DSW's Motion for Summary Judgment as to Count II: the National "Do Not Call" Registry claim under Section 227(c) of the Telephone Consumer Protection Act ("TCPA").

## I. INTRODUCTION

This action has been narrowed to two Plaintiffs who allege that their status on the National Do-Not-Call Registry creates a cause of action in connection with text messages from DSW. But this Court ruled that these Plaintiffs had "established business relationships" ("EBRs") with DSW in its Order. Order at 20. As a result, Plaintiffs' remaining claim, set forth in Count II, falls outside the scope of the TCPA and the challenged text messages are not actionable. Respectfully, this case—which has been litigated in five courts over more than two years—should come to an end.[1]

First, Plaintiffs brought Count II under the Do-Not-Call ("DNC") provisions of Section 227(c) of the TCPA. 47 U.S.C. § 227(c). But Congress expressly limited any rulemaking under Section 227(c) to addressing "telephone solicitations." *Id.* § 227(c)(1). Congress further excluded from its definition of "telephone solicitation" any "**call or message . . . to any person with whom the caller has an established business relationship [EBR]**." *Id.* § 227(a)(4) (emphasis added). Once this Court determined that Plaintiffs had EBRs with DSW, Order at 20,

---

[1] DSW recognizes the substantial volume of filings by the parties in connection with this action and appreciates this Court's attention to this important issue. This action has burdened DSW and this Court. DSW has respectfully presented this motion to this Court only because Congress specifically foreclosed the very claim Plaintiffs seek to further pursue.

1

then, as a matter of law, the challenged text messages could not be considered "telephone solicitations." As a result, there was not—and could not be—a violation of Section 227(c), and any regulations promulgated under that Section are inapplicable. Plaintiffs' contention that the FCC promulgated 47 C.F.R. § 64.1200(d) ("Section 64.1200(d)") pursuant to authority granted by Section 227(c), Resp. at 2–4, is fatal to their argument that Count II should be allowed to proceed.

Plaintiffs concede that Section 64.1200(d) provides additional details regarding the TCPA's statutory "safe harbor" and "affirmative defense" to a National DNC Registry claim, each of which may be invoked by a caller to avoid liability in connection with **telephone solicitations**. Resp. at 2–3. Thus, Section 64.1200(d) is relevant in connection with a National DNC Registry claim only once a plaintiff establishes that a caller made a **telephone solicitation**. Plaintiffs failed to make such a showing because they had EBRs with DSW. Plaintiffs do not cite a single case requiring evidence of the reasonable practices and procedures affirmative defense to a National DNC Registry claim under Section 64.1200(d) **before there is a determination that the alleged calls were telephone solicitations**. Respectfully, for this reason alone, DSW is entitled to judgment in its favor as to Count II.

Second, and separately, while courts are divided over whether a private right of action exists to assert a procedural claim under Section 64.1200(d), every court that has allowed such a claim to proceed has found that it is separate and distinct from the National DNC Registry claim alleged in Count II. Plaintiffs' counsel has acknowledged this as well: when Plaintiffs' counsel have alleged a procedural claim under Section 64.1200(d) in numerous other TCPA actions, they have raised it separately and distinctly from a National DNC Registry claim in the complaints.

In this action, Plaintiffs did not assert a claim challenging DSW's internal DNC policies and procedures under Section 64.1200(d) in the First Amended Complaint, Dkt. No. 22 ("FAC").

2

Plaintiffs concede that the FAC "never mentions regulation 64.1200 at all." Resp. at 2. Because there is no such claim in this action, and because DSW has no reason to raise an affirmative defense given the EBRs with Plaintiffs, its policies and procedures are not implicated. As a result, Plaintiffs never requested that DSW's policies and procedures be included within the scope of discovery, and Magistrate Judge Vascura had no reason to permit such discovery in her Preliminary Pretrial Order. Dec. 2, 2020 Order at 3, Dkt. No. 97. Indeed, this Court denied Plaintiffs' belated request for leave to amend the FAC to add a new claim challenging DSW's internal DNC procedures as "untimely and unduly prejudicial to DSW." Order at 21 n.2. This Court should now reject Plaintiffs' veiled attempt to again expand the scope of the FAC and circumvent this Court's prior ruling to include a procedural claim under Section 64.1200(d).

Finally, Plaintiffs argue that they "terminated their EBRs" with DSW by texting "STOP" in response to a text message. Resp. at 1–2, 6. Plaintiffs are mistaken. Only a "seller-specific do-not-call request . . . terminates an established business relationship for purposes of telemarketing and telephone solicitation." 47 C.F.R. § 64.1200(f)(5)(i). As set forth below, texting "STOP" in response to a specific text message does not constitute a blanket request that a sender cease multiple channels of communications (whether by text message or telephone call).

Respectfully, this Court should reconsider its ruling on Count II and grant summary judgment in favor of DSW.

## II. ARGUMENT

In Count II, Plaintiffs allege that before receiving "commercial text[s]" from DSW, they "had been previously registered on the National 'Do Not Call' Registry pursuant to 47 U.S.C. § 227(c)," so "DSW has, therefore, committed additional violations of the TCPA, including 47 U.S.C. Section 227(c)." FAC ¶¶ 88–91. This claim is based solely on the alleged receipt of "more

3

than one telephone solicitation in a twelve-month period" in violation of Section 227(c). Order at 19 (citation omitted). In connection with Count II, Plaintiffs seek to represent a class consisting of "[a]ll persons in the United States who . . . were sent a text message by or on behalf of Defendants, more than one time within any 12-month period, where the person's telephone number had been listed on the National Do Not Call Registry." FAC ¶ 72. As set forth below, Plaintiffs' EBRs with DSW preclude their claim under Count II and any application of Section 64.1200(d).

### A. This Court Should Reject Plaintiffs' Attempt to Conflate the Requirements for a Claim under Section 227(c) with the Affirmative Defense Available for that Claim.

Plaintiffs' argument that this Court should consider whether DSW has demonstrated the "affirmative defense" of establishing an internal DNC list **before** determining whether Section 227(c) applies, Resp. at 2–4, turns their National DNC Registry claim on its head.

Section 64.1200(d) sets forth the internal "procedures for maintaining a list of persons who request not to receive telemarking calls made by" a specific company. Courts are split over whether a private right of action exists for alleged procedural violations of Section 64.1200(d). Those that have found such a right concluded that this regulation was promulgated under 47 U.S.C. § 227(c), which contains a private action.[2] But in Section 227(c), Congress only authorized the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving **telephone solicitations** to which they object." 47 U.S.C. § 227(c)(1) (emphasis added). Congress **specifically excluded** from its definition of

---

[2] *Compare, e.g.*, *Burdge v. Ass'n Health Care Mgmt., Inc.*, No. 10-0100, 2011 WL 379159, at *3–4 (S.D. Ohio. Feb. 2, 2011) (dismissing TCPA claim because "an action for a violation of 64.1200(d)(4) arises under 47 U.S.C. § 227(d)," and "that section of the TCPA does not contain a private right of action (citing *Burdge v. Ass'n Health Care Mgmt., Inc.*, No. 08-0509, 2009 WL 414595 (S.D. Ohio. Feb. 18, 2009))), *with* *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324–25 (D. Mass. 2020) (denying motion to dismiss because "§ 64.1200(d) was promulgated under § 227(c) and contains a private right of action" (collecting cases)). Plaintiffs' selective citation of these cases, while ignoring the split of authority, *see* Resp. at 2–3, is irrelevant to whether Section 64.1200(d) applies here.

4

"telephone solicitation" any "call or message . . . to any person with whom the caller has an [EBR]." *Id.* § 227(a)(4). Thus, when this Court held that Plaintiffs had EBRs with DSW, Order at 20, it also determined that there was no "telephone solicitation." As a result, there is no claim under Section 227(c), and the regulations contained in Section 64.1200(d) do not apply.

When, unlike here, there is a telephone solicitation, Section 227(c) provides "an affirmative defense" to a defendant that has "established and implemented, with due care, reasonable practices and procedures to effectively prevent **telephone solicitations** in violation of the regulations." 47 U.S.C § 227(c)(5)(C) (emphasis added). That includes the maintenance of an internal DNC list. 47 C.F.R. § 64.1200(d)(6). In other words, courts must first determine whether a "telephone solicitation" occurred in violation of Section 227(c) **before** reaching any affirmative defenses. *See Navarro v. Procter & Gamble Co.*, 515 F. Supp. 3d 718, 775 (S.D. Ohio 2021) ("[A]n affirmative defense is a 'perhaps, but' defense, which allows a party to argue that it is not liable even if the plaintiff has proved a *prima facie* case." (citations omitted)); Black's Law Dictionary 451 (8th ed. 2004) (defining "affirmative defense" as an "assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true"). Indeed, courts do not consider affirmative defenses to TCPA claims at the pleading stage, because they do "not [challenge] an element of a plaintiff's *prima facie* case." *Shelton v. Direct Energy, L.P.*, No. 19-0081, 2019 WL 4194179, at *5 (N.D. Ohio Aug. 27, 2019) (internal quotation marks and citation omitted). Therefore, DSW would have been required to establish a reasonable practices and procedures affirmative defense only if Plaintiffs had first met their burden of establishing that they received "telephone solicitations" as part of their *prima facie* case. They did not because they had EBRs. Plaintiffs' concession that Section "64.1200(d) gave [DSW] an affirmative defense to Count II," Resp. at 2–3, should end this Court's analysis.

5

Plaintiffs mischaracterize DSW's prior briefing. Resp. at 2–5 & n.1. DSW has consistently argued that Section 64.1200(d) would be relevant as to Count II only if there were no EBRs. In particular, DSW has noted that only if there were a telephone solicitation (which there was not), Section 64.1200(d)(3) would provide a "30-day safe harbor" to honor a DNC request, Dkt. No. 68 at 8; Dkt. No. 128 at 19; Dkt. No. 131 at 11, and Section 64.1200(d) would provide the standards for the statutory affirmative defense, Dkt. No. 117 at 16 n.10; Dkt. No. 131 at 10 n.12; Dkt. No. 141 at 1, 4–5. Because there was no telephone solicitation, the regulations do not apply and, respectfully, summary judgment should be entered in favor of DSW on Count II.

**B.      Plaintiffs Did Not Allege a Separate Procedural Claim Regarding Internal DNC Lists.**

In Count II, Plaintiffs allege that they were "registered on the National 'Do Not Call' Registry pursuant to 47 U.S.C. § 227(c) . . . when they received DSW's wireless" text messages. FAC ¶¶ 89–90. Plaintiffs further allege that DSW "violat[ed] the TCPA, including 47 U.S.C. Section 227(c)," and seek to certify a "Do Not Call Registry Sub-Class" of:

> All persons in the United States who from four years prior to the filing of this action were sent a text message by or on behalf of Defendants, more than one time within any 12-month period, where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, for the purpose of selling Defendants' products and/or services.

*Id.* ¶¶ 72, 91. As Plaintiffs concede, Count II "never mentions regulation 64.1200 [or any regulations] at all." Resp. at 2.

A cause of action alleging that a defendant "initiat[ed] more than one telephone solicitation within a twelve-month period" to individuals whose telephone numbers are registered "with the National Do-Not-Call Registry," is separate and distinct from a procedural cause of action alleging that a defendant did not "follow[] internal procedures for maintaining . . . an internal do-not-call list" under Section 64.1200(d). *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 654 (W.D. Tenn. 2020). Plaintiffs do not—and cannot—dispute that every court (and their own counsel) have

6

considered such claims as separate and distinct from a National DNC Registry claim. Dkt. No. 141 at 5–6 & n.3 (collecting cases).³ Knowing this, Plaintiffs sought "leave to amend their First Amended Complaint to add separate allegations or Counts regarding DSW's internal DNC" under Section 64.1200(d), which this Court denied. Order at 21 n.2 (internal quotation marks omitted).

Plaintiffs now seek to again expand this action in contravention of this Court's prior ruling by claiming that "Defendants' maintenance of proper policies and procedures for maintaining an internal do-not-call list" was "raised in the FAC." Resp. at 5. It was not. As discussed above, the FAC does not contain a single reference to DSW's internal DNC list or to any TCPA regulation. And it specifically limits the putative subclass to individuals whose telephone numbers were "listed on the National Do Not Call Registry," not all individuals. FAC ¶ 72.

Plaintiffs argue that because Count II alleges "violations of the TCPA, including 47 U.S.C. Section 227(c)," FAC ¶ 91, it "is not limited to violations of any one regulation," but instead encompasses every conceivable claim under the "implementing regulations," Resp. at 2 (emphasis omitted). But Rule 8(a)(2) requires a plaintiff to give a defendant "fair notice" of the claims alleged against it "and the ground upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal quotation marks and citation omitted)). Because "the amended complaint does not cite a specific section of these regulations," or even reference the regulations at all, the FAC does not plausibly assert any claim specifically related to DSW's internal DNC list procedures under

---

³ Plaintiffs' own authority, Resp. at 3, holds that, "[a]n action based on a telephone call that violates the do-not-call list regulations" is a "separate violation[] of the TCPA" from an action "brought pursuant to the regulations requiring certain minimum procedures for maintaining a do-not-call list" under Section 64.1200(d). *Chavrat v. NMP, Ltd. Liab. Co.*, 656 F.3d 440, 448–49, 451–52 (6th Cir. 2011) (internal quotation marks omitted).

Section 64.1200(d). *Jones v. U.S. Dep't of Educ.*, No. 15-10171, 2017 WL 9471877, at *10 (E.D. Mich. Feb. 12, 2017) (dismissing regulatory claim); *see Redman v. Francis David Corp.*, No. 10-2004, 2012 WL 4504484, at *8 (N.D. Ohio Sept. 30, 2012) ("This claim fails to meet pleading requirements because it does not list any specific FTC regulations Defendants allegedly violated."). Under Plaintiffs' theory of pleading, they have alleged every possible claim under every subsection of Sections 64.1200(c) and 64.1200(d) merely by referencing Section 227(c) in the FAC. But that does not satisfy the basic pleading requirements of Rule 8(a)(2) because DSW would "largely [be] left to guess about what specific claims Plaintiff[s] seek[] to raise." *Crowder v. Yost*, No. 21-0103, 2021 WL 4148104, at *5 (S.D. Ohio Sept. 13, 2021).

Had Plaintiffs asserted a procedural claim, DSW would have moved to dismiss it because, *inter alia*, there is no private right of action to pursue it, and Plaintiffs "lack Article III standing to sue on the reasonable-procedures claim." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). It is precisely because DSW and this Court did not have notice that such a claim was being asserted that the parties did not request (and the Court did not permit) discovery on any procedural regulatory issues. It is also why this Court held that adding a procedural claim under Section 64.1200(d) at this time would be "both untimely and unduly prejudicial to DSW." Order at 21 n.2.

C.  **Simply Responding "STOP" to a Specific Text Message Does Not Terminate an EBR.**

Plaintiffs have not challenged this Court's conclusion that they had EBRs with DSW. Order at 20. Instead, they persist with their novel argument that texting "STOP" in response to a specific text message should be deemed a blanket request to be placed on a company-specific internal DNC list for all communications, whether by text message or telephone. Resp. at 1–2, 6. As set forth in DSW's summary judgment briefing, the text and structure of the TCPA forecloses their argument. Dkt. No. 117 at 18–19; Dkt. No. 131 at 9–10. The FCC has determined that a request to be placed on an internal DNC list must be clear and unequivocal. *See In re Rules and*

8

*Regulations Implementing the TCPA of 1991*, Report and Order, 18 FCC Rcd. 14,014, 14,086–87 (2003) ("Once the consumer **asks to be placed on the company-specific do-not-call list**, the company may not call the consumer again regardless of whether the consumer continues to do business with the company." (emphasis added)). A generic "STOP" text message in response to a specific text message communication is not a request to be placed on the company-specific DNC list. *See Zelma v. Art Conway*, No. 12-0256, 2013 WL 6498548, at *2 (D.N.J. Dec. 11, 2013) (holding that "the Established Business Relationship exception applies," because "[p]laintiff's notation of 'Do Not Call' on forms provided by SkyMiles in no way severed his business relationship with Prevention Magazine").

Texting "STOP" in response to a text message is universally understood by the FCC and the courts to be the common method by which an individual may revoke consent to receive text messages using automated technology.[4] Significantly, **the FCC has confirmed** that texting "STOP" constitutes revocation of consent to receive a particular type of communication using automated technology from a sender, not **all** communications from that sender.[5] Accordingly,

---

[4] *See, e.g.*, *In re Rules and Regulations Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 7996 (2015); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) ("Some ways [plaintiff] could have communicated his **revocation** [of consent] include, but are not limited to . . . messaging 'STOP' after receiving the first text message." (emphasis added)); *Legg v. Voice Media Grp., Inc.*, 990 F. Supp. 2d 1351, 1354–55 (S.D. Fla. 2014) (texting STOP "**revoked his consent**" (emphasis added)); *Rando v. Edible Arrangements Int'l, LLC*, No. 17-0701, 2018 WL 1523858, at *4 (D.N.J. Mar. 28, 2018) (texting STOP "**revoke[s] consent to receive text messages**" (emphasis added)); *Griffith v. ContextMedia, Inc.*, 235 F. Supp. 3d 1032, 1033 (N.D. Ill. 2016) ("[Plaintiff] replied 'STOP' in an effort to **revoke her consent** to receive defendants' automated text messages." (emphasis added)).

[5] *See, e.g.*, 47 C.F.R. § 64.1200(a)(9)(iii) (permitting certain prerecorded calls and text alerts made by financial institutions using automated technology if "text messages [] inform recipients of the ability to opt out by replying 'STOP,' which will be the exclusive means by which consumers **may opt out of such messages**" (emphasis added)); *id.* § 64.1200(a)(9)(iv) (permitting certain prerecorded calls and text alerts made by healthcare providers using automated technology if "text messages [] inform recipients of the ability to opt out by replying 'STOP,' which will be the exclusive means by which consumers **may opt out of such messages**" (emphasis added)).

9

courts, including those cited by Plaintiffs, require more than simply texting "STOP" in response to a specific communication to terminate an EBR and thereby end all types of communications. *See Chavrat*, 656 F.3d at 442 (finding internal DNC request was made where "during the third call, [plaintiff] asked Defendants' live agent to place his name and residential telephone number on Defendants' do-not-call list"); *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 360, 364 (E.D. Pa. 2019) (finding internal DNC request made when "Plaintiff wrote an email to Fast Advance, copying Fast Advance's legal counsel, requesting that Fast Advance put his number on their internal do-not-call list"), *aff'd*, 805 F. App'x 156 (3d Cir 2020).[6]

Because this Court held that Plaintiffs had EBRs with DSW when they received the challenged text messages, their National DNC Registry claim fails as a matter of law, and, respectfully, judgment should be entered in favor of DSW on Count II. *See, e.g.*, *Johansen v. Nat'l Gas & Elec. LLC*, No. 17-0587, 2018 WL 3933472, at *5 (S.D. Ohio Aug. 16, 2018) (granting summary judgment for the defendant on a DNC TCPA claim based on calls made during an EBR).[7]

### III. CONCLUSION

For the foregoing reasons, DSW respectfully requests that this Court grant its Motion for Partial Reconsideration and enter judgment in favor of DSW on Count II.

---

[6] As a practical matter, if businesses were compelled to treat STOP responses to specific text messages as blanket DNC requests, consumers would unknowingly lose access to other valuable communications from their ongoing business relationship they never intended to have cease. Businesses would be besieged with complaints from those consumers who would not expect or understand that replying STOP to a specific text message string would have sweeping implications.

[7] *See also Cubbage v. Talbots, Inc.*, No. 09-0911, 2010 WL 2710628, at *3 (W.D. Wash. July 7, 2010) (same); *Smith v. Truman Rd. Dev., LLC*, No. 18-0670, 2020 WL 2044730, at *22 (W.D. Mo. Apr. 28, 2020) (same); *Hovila v. Tween Brands, Inc.*, No. 09-0491, 2010 WL 1433417, at *5 (W.D. Wash. Apr. 7, 2010) (same).

Dated: October 18, 2021

Respectfully submitted,

PEREZ & MORRIS LLC

/s/ *Joshua D. Rockwell*
Joshua D. Rockwell, Trial Attorney (0081107)
Kevin L. Murch (0066833)
8000 Ravine's Edge Court, Suite 300
Columbus, Ohio 43235
Telephone: (614) 431-1500
Facsimile: (614) 431-3885
Email: jrockwell@perez-morris.com
       kmurch@perez-morris.com

COZEN O'CONNOR

Michael W. McTigue, Jr. (*pro hac vice*)
Meredith C. Slawe (*pro hac vice*)
Daniel E. Brewer (*pro hac vice*)
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-2093
Facsimile: (215) 665-2368
Email: mmctigue@cozen.com
       mslawe@cozen.com
       dbrewer@cozen.com

John J. Sullivan (*pro hac vice*)
3 WTC, 175 Greenwich Street, 55th Floor
New York, New York 10007
Telephone: (212) 509-9400
Facsimile: (212) 509-9492
Email: jsullivan@cozen.com

*Attorneys for Defendants Designer Brands Inc. and DSW Shoe Warehouse, Inc.*

**CERTIFICATE OF SERVICE**

  I hereby certify that on October 18, 2021, a copy of the foregoing document was served on all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                    /s/ *Joshua D. Rockwell*
                    Joshua D. Rockwell