**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| ERIC LAGUARDIA, *et al.*, | Case No. 2:20-cv-02311-SDM-EPD |
| Plaintiffs, | Judge Sarah D. Morrison |
| v. | Magistrate Judge Elizabeth Preston Deavers |
| DESIGNER BRANDS INC., *et al.,* | |
| Defendants. | |

_____/

**PLAINTIFFS' UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

Plaintiffs Eric LaGuardia and Nicole Austin ("Plaintiffs") submit this unopposed Motion

and respectfully request that the Court preliminarily approve the proposed class action settlement

described in detail in the Class Action Settlement Agreement and exhibits thereto ("Agreement"),

attached hereto as **Exhibit A** and incorporated by reference, between Plaintiffs and Defendants

Designer Brands Inc. and DSW Shoe Warehouse, Inc. ("Designer Brands and DSW" or

"Defendants").

**I.      CONCISE STATEMENT OF THE RELIEF REQUESTED**

Plaintiffs file this motion requesting that the Court preliminarily approve a class action

settlement, and preliminarily certify a settlement class. Plaintiffs request that the Court grant

preliminary approval of the proposed settlement and enter an order of preliminary approval that

includes the content of the proposed order attached as Exhibit 4 to the Agreement.

The proposed preliminary approval order approves the form of notice to be given to the

class, establishes a schedule and process for the submission of any objections or requests for

exclusion from the class, and provides for a fairness hearing to be held by the Court. The parties will submit a motion requesting final approval of the settlement in advance of the fairness hearing.

## II.   STATEMENT OF THE BASIS FOR THE REQUEST

The Parties reached the Settlement Agreement after over three years of litigation, and the Agreement is the product of substantial, contentious negotiations between the Parties through mediation facilitated by mediator Robert A. Meyer of JAMS Alternative Dispute Resolution. *See* McLaughlin on Class Actions § 6:7 (12th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."). The Parties' proposed Settlement is exceedingly fair and well within the range of Preliminary Approval for several reasons. *See* Declaration of Andrew J. Shamis, attached hereto as **Exhibit B**.

Plaintiffs' operative complaint alleges putative class claims that Defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 by sending marketing text messages to consumers whose numbers were listed on the National Do Not Call Registry and without prior express consent. Defendants deny the allegations in the operative complaint but, given the risks, uncertainties, and burdens of litigation, have agreed to settle the litigation according to the terms of the Settlement Agreement. As detailed below, the parties have reached a proposed class settlement, where Defendants agreed to make available up to $4,429,180 to the approximately 63,274 members of the Settlement Class. Each individual Settlement Class Member that submits a valid and timely claim shall receive a cash payment of $70.00. If the total Settlement Class Member Payments are such that, after the Settlement Costs are paid, the remainder of the

2

Settlement Amount is insufficient to pay each Class Member $70.00, then the Settlement Class Member Payment shall be made on a *pro rata* basis.

Subject to the Court's approval, the Settlement Fund will also be used to pay: the court-approved Service Awards in the amount of $10,000 to each Plaintiff to compensate them for the time spent and risk incurred serving as the Class Representatives; Class Counsel's attorneys' fees of approximately 25% of the Settlement Fund amount; and the costs of Notice and Settlement Administration. The Parties have agreed to a direct Notice Program designed to afford Settlement Class members due process and advise them of the rights under the Settlement.

As explained below, the Settlement meets all requirements for Preliminary Approval. Therefore, Plaintiffs respectfully request that the Court preliminarily approve this Settlement, approve and appoint Kroll Settlement Administration, LLC as the Settlement Administrator; appoint Plaintiffs as the Class Representatives for the Settlement Class; the firms and attorneys listed in the Settlement Agreement as Class Counsel; order that the proposed Notice be disseminated in the forms presented with this Motion; and schedule a Final Approval Hearing.

### III. MEMORANDUM OF LEGAL AUTHORITY

#### A. Terms of the Settlement

The Settlement requires Defendants to make available a Settlement Fund pursuant to the terms of the Settlement Agreement that will: (1) allocate up to $4,429,180 for the purpose of payment to all Settlement Class members in the amount of up to $70.00 per claimant; (2) pay attorneys' fees and costs of approximately 25% of the fund, to be paid from the Settlement Fund; (3) make payment of the Service Award of $10,000.00 to each Plaintiff, to be paid from the Settlement Fund and (4) pay the costs of the Class Notice and Administration, to be paid from the

Settlement Fund. See, generally, Exhibit A. Defendants are not required to make available any amounts other than the Settlement Fund.

If the case were to proceed through final judgment in this Court, and then an appeal to the Sixth Circuit, both sides would bear further risk. The putative class would bear the risk of recovering nothing if class certification were denied or reversed on appeal, or if judgment was entered in favor of Defendants or a judgment in favor of the class was overturned on appeal.

### B. The Notice Program

Pending this Court's approval, Kroll Settlement Administration, LLC will serve as the Settlement Administrator and will be responsible for administrating the Notice program. The Notice program consists of several different components: (1) Email Notice, (2) Text Notice, and (3) Long-Form Notice on the Settlement Website. The forms of the proposed Notices are attached to the Agreement as Exhibits 1-3 to the Settlement Agreement (exhibit A). The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application and the request for a Service Award to Plaintiffs; the date of the Final Approval Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement, and other important documents.

### 1. *Email Notice*

A large number of Settlement Class Members will be sent Email Notice. A copy of the Email Notice is attached to the Settlement Agreement as Exhibit 1. The Settlement Administrator will be provided with a large number of Email addresses for Settlement Class members and will

determine the remaining Settlement Class members' Email addresses by conducting an Email address look-up. The Email Notice shall be completed no later than 30 days after the entry of the Preliminary Approval Order. A reminder email be sent to the potential Settlement Class Members 30 days after the Email Notice. This reminder shall not affect any deadlines in this proposed settlement.

**2. *Text Notice***

All potential Settlement Class Members will be sent Text Notice. A copy of the Text Notice is attached to the Settlement Agreement as Exhibit 2. The Settlement Administrator will be provided with the telephone numbers for the Settlement Class Members that were used by Defendants to send the text messages that are the subject of this lawsuit. The Text Notice shall be completed no later than 30 days after the entry of the Preliminary Approval Order. A reminder text be sent to the potential Settlement Class Members 30 days after the Text Notice. This reminder shall not affect any deadlines in this proposed settlement.

**3. *Long-Form Notice and Settlement Website***

The Settlement Administrator will establish a Settlement Website as a means for Settlement Class members to obtain notice of, and information about, the Settlement. The Settlement Website will be established as soon as practicable following Preliminary Approval, and before commencement of the Notice Program. The Settlement Website will include an online portal to file Claim Forms, hyperlinks to the Settlement Agreement, the Long-Form Notice, the Preliminary Approval Order, and other such documents as Class Counsel and counsel Defendants agree to post or that the Court orders be posted on the Settlement Website. These documents will remain on the Settlement Website at least until a final judgment is entered.

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries. Settlement Class Members may call and hear automated responses or request a copy of the Long-Form Notice to be sent to them by mail or email.

### C. Claims Process

The Claims Process here is straightforward, easy to understand for Settlement Class members, and designed so that they can easily make a Claim.  Shamis Decl. ¶ 4.  Settlement Class members will make a claim by submitting a valid Claim Form to the Settlement Administrator, which will then be evaluated for timeliness and completeness.  A copy of the Claim Form is attached to the Settlement Agreement as Exhibit 5.  Claim Forms may be submitted electronically on the Settlement Website. The Claim Form requires basic information from Settlement Class members: (1) name; (2) current address; (3) cellular telephone number(s) at which she or he was sent Text Messages from Defendants; and (4) a current contact telephone number.  Once a Settlement Class member submits a Claim Form that is approved by the Settlement Administrator, the Settlement Class Member will then be eligible to receive a cash payment.  In the event a Claim Form is deficient, in that information is missing or inaccurate, the Settlement Administrator will attempt to contact the Settlement Class Member, and the Settlement Class Member will have another opportunity to submit a valid Claim Form. Untimely and invalid Claim Forms will be rejected, and those Settlement Class Members will not receive a Cash Benefit.  Claim Forms must be submitted within 120 days after commencement of the Notice Program, which shall be completed within 30 days of the entry of a Preliminary Approval Order.

### D. Certification of the Settlement Class for Settlement Purposes is Warranted.

6

Settlement of class actions is generally favored and encouraged. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Certification of the Settlement Class for settlement purposes is proper under Fed. R. Civ. P. 23(a) and 23(b)(3). The proposed Settlement Class is defined as follows:

> All persons in the United States who between September 1, 2018, and September 1, 2024 1) were sent a "marketing"* text message from Defendants, 2) thereafter responded with the word "stop" or the equivalent, and 3) thereafter received a marketing text message from Defendants.
>
> *Marketing means offering or advertising the commercial availability or quality of any property, goods, products, or services.

The Court may certify a class action for settlement purposes upon satisfaction of the requirements of Civ. R. 23. *See Amchem Products Inc. v. Windsor*, 521 U.S. 591, 609 (1997). Plaintiffs submit that certification of the proposed Settlement Class is appropriate. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Id*. At 620. It is well established that a class may be certified solely for purposes of settlement if a settlement is reached before a litigated determination of the class certification issue and "[t]he Court has broad discretion in determining whether to certify a class." *See Damron v. Sims*, No. CIV.A 2:09-CV-50, 2010 WL 2663207, at *1 (S.D. Ohio Feb. 9, 2010) (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988); *see also Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006).

Respectfully, this Court should conclude that it is likely to certify the Settlement Class and approve the Settlement as fair, adequate, and reasonable. *See* Rule 23(e)(1). Certification will allow Notice of the Settlement terms to issue to Settlement Class members; of their right to be heard on its fairness; of their right to opt-out or object; and of the Final Approval Hearing. *See* Manual for

Compl. Lit., §§ 21.632, 21.633. Defendants do not oppose certification for settlement purposes. Each Fed. R. Civ. P. 23(a) and (b)(3) requirement is satisfied here for the Settlement Class. Although Defendants do not oppose certification of the Settlement class, and has agreed to settle the Settlement Class claims as set forth herein, Defendants do not concede and indeed dispute that certification of a litigation class, as opposed to a settlement class, would be appropriate here, and the Parties have stipulated in the Agreement that this Agreement does not constitute a waiver of any arguments or defenses Defendants have to a litigated class if the proposed Agreement is not approved.

The numerosity requirement is satisfied for purposes of settlement because Defendant's records and spreadsheet data demonstrate there are approximately 63,274 members of the Settlement Class. This easily satisfies the numerosity requirement. *See generally Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (explaining that "while there is no strict numerical test, substantial numbers usually satisfy the numerosity requirement").

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The claims must depend on a common contention of which "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998) (to satisfy commonality there "need only be one issue common to the class"). Here, the commonality requirement is satisfied because there are multiple questions of law and fact centering on Defendant's text messaging program—that are common to the Settlement Class—which are alleged to have injured all Settlement Class members in the same way and would generate common answers.

Rule 23(a)(3) requires that the class representative's claim(s) be typical of the claims of the Settlement Class. Fed. R. Civ. P. 23(a)(3). Typicality is established where the plaintiff's claim "arises from the same event or practice or course of conduct [as class members]" and are "based on the same legal theory." *In re American Medical Systems, Inc.*, 75 F.3d at 1082. In other words, "as goes the claim of the named plaintiff"—favorably or unfavorably—"so go the claims of the class." *Sprague*, 133 F.3d at 399; *see also Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561-562 (6th Cir. 2007) ("A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory.'") (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1069, 1082 (6th Cir.1996)). Here, the typicality requirement is satisfied because the Plaintiffs claims are based on precisely the same legal theory and "pattern or practice" as every Settlement Class member: that Defendant's text messages violated the TCPA. The Plaintiffs are typical of absent Settlement Class members because they received the same or similar text messages and suffered the same injuries as them and because they will all benefit from the relief achieved.

Rule 23(a)(4) requires that "the representative parties ... fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This involves two criteria: "1) the representative must have common interests with unnamed [class] members…and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, at 543. The court should "review[] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Id*. Here, Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement

Class members have no diverging interests. Further, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions.

Rule 23 requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance is established where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564. An absence of individual issues is not necessary. *See Young*, 693 F.3d at 544. Here, Plaintiffs readily satisfy the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. The necessity for the Court to deal with any individual issues in the litigation context is also attenuated in the settlement context.

As to the superiority factor, "cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Young*, 693 F.3d 532 at 545. To determine if class-wide adjudication is proper, courts consider: (A) the interest in individually controlling prosecution; (B) whether other litigation has commenced; (C) the desirability of concentrating litigation; and (D) manageability. *Beattie*, 511 F.3d at 564. Here, common issues are central to the litigation and the individual statutory damages absent evidence of a willful violation are $500 per class member, which easily satisfies the first prong of the superiority analysis. *See generally Chapman v. Tristar Prods*., No. 1:16-CV-1114, 2017 U.S. Dist. LEXIS 61767, at *16 (N.D. Oh. Apr. 24, 2017) ("The most compelling rationale for finding superiority in a class action is the

10

existence of a negative value suit, which is where the costs of enforcement in an individual action would exceed the expected individual recovery"). The remaining prongs also favor class treatment: no action was "already commenced" by any member of the class, it is desirable and efficient to concentrate Class Members' identical claims in this forum, and Plaintiffs are unaware of any difficulties in the management of this Settlement. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. See Fed. R. Civ. P. 23(b)(3).

For these reasons, certification of the Settlement Class is appropriate.

### E. Preliminary Approval is Warranted.

At the preliminary approval stage, the Court's task is to evaluate whether the Settlement Agreement is within the "range of reasonableness." 4 *Newberg on Class Actions* § 11.26. There is a strong federal policy "favoring settlement of class actions." *UAW v. General Motors Corp.*, 497 F.3d 615, 633 (6th Cir. 2007). Preliminary approval—which simply permits Notice of the settlement to be provided to the Class—is a relatively limited inquiry where the court's role is to "evaluate whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Hyland v. HomeServices of Am., Inc.*, No. 3:05-CV-612, 2012 U.S. Dist. LEXIS 4818, at *2 (W.D. Ky. Jan. 17, 2012) (cleaned up). These requirements are readily satisfied here, as demonstrated above.

As will be set forth in greater detail in the Motion for Final Approval, the Fed. R. Civ. P. 23(e) factors all favor approval. *See generally Cook v. Gov't Emples. Ins. Co.*, No. 6:17-cv-891-ORL-40KRS, 2020 U.S. Dist. LEXIS 111956, at *16-17 (M.D. Fla. Jun. 22, 2020) (explaining that

11

Rule 23 was amended to add factors relevant to approval of class settlements, which was intended to highlight the "core concerns" of Rule 23, but not to displace factors prescribed by appellate courts). The factors outlined in *UAW*, 497 F.3d at 631—which remain relevant to the analysis—also favor approval.

### 1.  *The Rule 23 Threshold Favors Approval.*

Fed. R. Civ. P. 23(e)(2) contains two threshold procedural requirements: adequate representation and arms-length negotiations. Both favor preliminary approval here. The adequate representation analysis under Rule 23(e) "is distinct from Rule 23(a)(4) and is meant to address whether the class representatives possessed sufficient information and knowledge of the claims, issues, and defenses prior to negotiating and settling the claims." *Cook*, 2020 U.S. Dist. LEXIS 111956, at *18. This overlaps with one of the *UAW* factors, i.e., "the amount of discovery engaged in by the parties[.]" 497 F.3d at 631. Here, Plaintiffs engaged in over three years of litigation and had engaged in significant discovery and motion practice prior to reaching settlement. Moreover, Plaintiffs' attorneys have litigated numerous similar class actions and have detailed knowledge about the strengths and weaknesses of the claims. The Rule 23 adequate representation factor and the *UAW* "amount of discovery" factor both clearly favor preliminary approval. *See generally Satterly v. Airstream, Inc.*, 2020 U.S. Dist. LEXIS 210868, at *16-17 (S.D. Oh. Sep. 25, 2020) (that plaintiffs had "exchanged written discovery and relevant information, engaged in further independent investigation, confirmed damages calculations with a third-party expert, and conducted additional legal research regarding the claims and defenses in the lawsuits" militated in favor of approving a class settlement).

As for the second procedural factor, settlement was reached only with the assistance of Mediator Robert A. Meyer of JAMS Alternative Dispute Resolution, an experienced and well-

respected mediator. The negotiations were unquestionably conducted at arms' length. Moreover, the Parties extensively litigated numerous issues, including fully briefing the dispositive motion to dismiss, motion for judgment on the pleadings, and motion for partial summary judgment. Thus, the Rule 23 "arms' length" and the *UAW* "lack of fraud or collusion" factor both weigh in favor of preliminary approval. *See generally Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at \*2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion"); *Bourne v. Ansara Rest. Grp., Inc.*, 2016 U.S. Dist. LEXIS 114399, at \*6 (E.D. Mich. Aug. 26, 2016) (risk of collusion "is minimal" where parties fully briefed a motion to dismiss prior to reaching settlement).

### 2. *The Rule 23(e) Substantive Factors Favors Approval.*

Fed. R. Civ. P. 23(e)(2)(C)-(D) prescribe the factors relevant to determining whether a proposed Settlement is substantively adequate: the costs and risk of trial and appeal, the method of claim distribution, the terms of attorneys' fees, and whether class members are treated equitably vis a vi each other.

Plaintiffs believe the Settlement is beneficial to the Class for several reasons, as can be seen between a comparison of the likelihood of ultimate success and the relief secured through the settlement.[1] *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 130467, at \*47-50 (N.D. Ohio, Sep. 23, 2016) (analyzing the fairness of a proposed

---

[1] Comparing (a) the benefits secured through settlement with (b) the benefits potentially available at trial divided by the chances of success is consistent both with Fed. R. Civ. P. 23(e)(2)(C)(i) and with two *UAW* factors, i.e., "the complexity, expense and likely duration of the litigation and the likelihood of success on the merits." 497 F.3d at 631 (cleaned up).

settlement by comparing the benefits provided by the settlement to the damages potentially available at trial in light of the odds of success); *see generally In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) ("The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured."). Although Plaintiffs intend to explicate why the settlement is beneficial to the class in greater detail when moving for final approval, Plaintiffs briefly note that as set forth above, the likelihood of ultimate success is uncertain. This Action involved several major litigation risks that loomed in the absence of settlement including, but not limited to, contested class certification, contested summary judgment, trial, as well as appellate review. Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Preliminary Approval.

Given these risks, the value of the Settlement—at $70 per class member—is significant and impressive compared to other TCPA class settlements. *See Charvat v. Valente, No.* 12:5746, 2019 U.S. Dist. LEXIS 187225, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) (average award of $22.17 per member with each call valued at between $7.41 and $8.42); *Gehrich v. Chase Bank, N.A.*, 316 F.R.D. 215, 227-28 (N.D. Ill. 2016) (award of $52.50 per member); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ("Although thirty dollars per claimant 'falls on the lower end of the scale,' it is nonetheless 'within the range of recoveries' in TCPA class actions."); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (average award of $39.66 per member); *Wilkins v. HSBC Bank Nevada, N.A.*, 2015 U.S. Dist. LEXIS 23869, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (approving settlement of $2.95 per class member); *Rose v. Bank of Am. Corp.,* 2014 U.S. Dist. LEXIS 121641, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of settlements and approving $20 to $40 per member); *Mahoney*

14

*v. TT of Pine Ridge, Inc.,* No. 17-80029-CIV-MIDDLEBROOKS, 2017 U.S. Dist. LEXIS 217470, at *23 (S.D. Fla. Nov. 17, 2017) (approving claims made settlement whether claimants had options of "$4.00 cash award or a $15.00 voucher" and stating "the Court agrees with the Parties that '[t]he proposed structure maximizes the total amount available to the Settlement Class while simultaneously considering Defendant's immediate ability to pay the class', and therefore the recovery by claimants is fair, adequate, and reasonable."); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (approving settlement of $13.75 per class member.).

Additionally, the Notice the Parties agreed to use is robust and comprehensive. Defendants agreed to send individual Notice by Email and by SMS message, thus providing significant assurance that Class members will receive Notice. (Exhibit A); *see also Hogan v. Cleveland Ave Rest. Inc.*, No. 2:15-CV-2883, 2019 U.S. Dist. LEXIS 212214, at *10 (S.D. Oh. Dec. 10, 2019) (noting the "robust notice" in determining whether to preliminarily approve a class settlement). "Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Compl. Lit. § 21.312 (internal quotation marks omitted). The best notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Navy Federal & Trust Co.*, 339 U.S. 306, 314 (1950). "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts. Those who cannot be readily identified must be given the best notice practicable under the circumstances." Manual for Compl. Litig., § 21.311.

The proposed Notice Program satisfies due process and Rule 23 as it provides for direct notice through the Email Notice and Text Message Notice. *See* Fed. R. Civ. P. 23(c)(2); *Frost v. Household Realty Corp.*, 61 F. Supp. 3d. 740, 744 (S.D. Ohio 2004); *Vassalle v. Midland Funding, LLC*, No. 3:11-cv-00096, 2014 WL 5162380, at *11 (N.D. Ohio. Oct. 14, 2014) (approving notice where "notice was disseminated via individual mailing to all Class Members identified in the customer data files of [the defendant], and also by publication"). Moreover, the Settlement provides for Long Form Notice available on the Settlement Website, and an automated toll-free telephone line for Settlement Class Members to call with inquiries and receive answers to frequently asked questions.

Second, the "method of processing class-member claims" is simple: The Claim form will be pre-filled, and Settlement Class Members must simply attest to the information, insert their contact information, and send the Claim form back or submit their claim through the Settlement Website that will be provided. Further, the Settlement Class Members are not required to provide any back-up documentation. See *Wilson v. EverBank*, 2016 U.S. Dist. LEXIS 15751, at *32-33 (S.D. Fla. Feb. 3, 2016) (finding significant that class members need not submit any evidence or documentation beyond merely "checking a box" which "should take no more than a few minutes for the average claimant to complete."); *Manjunath A. Gokare, P.C. v. Fed. Express Corp.*, No. 2:11-CV-2131-JTF-CGC, 2013 U.S. Dist. LEXIS 203546, at *9 (W.D. Tenn. Nov. 22, 2013) (approving a settlement where "the claim form is extremely simple, includes a postage-paid, pre-addressed envelope and does not require Settlement Class Members to…provide any back-up documentation.").

Third, the terms of the attorneys' fees award weigh in favor of approval of the proposed Settlement. See Fed. R. Civ. P. 23(e)(2)(C)(iii). The analysis here is "distinct from the Rule 23(h)"

analysis, which addresses whether the attorneys' fees amount is reasonable on its own terms, and "instead addresses if and how the attorneys' fees impacted the terms of the Settlement." *Cook*, 2020 U.S. Dist. LEXIS 111956, at *24. Here, the attorneys' fees amount did not impact the substantive Settlement terms at all—indeed, the parties did not even discuss attorneys' fees until after all other Settlement terms were finalized. Finally, Settlement Class Members are clearly treated equitably, in that they will receive the same Notice, the same claim process, are agreeing to precisely the same release, and are entitled to the same benefit—a $70 cash payment.[2]

As such, all the Rule 23(e)(2)(C)-(D) factors militate in favor of approval.

### 3. *The Remaining UAW Factors Favor Approval.*

The *UAW* factors that are independent of the Rule 23 factors—i.e., the opinions of class counsel and the public interest, see 497 F.3d at 631—also support approval of the proposed Agreement.[3] Class Counsel possess extensive knowledge of the relative strengths and weaknesses of the underlying claim, and it is their reasoned judgment that the proposed Settlement is in the best interests of the Class. *See* Shamis Decl. *See also Brent v. Midland Funding, LLC*, 2011 U.S. Dist. LEXIS 98763, at *49-50 (N.D. Oh. Sep. 1, 2011) ("The Court gives great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of the settlement."); *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, district courts should be hesitant to substitute its own

---

[2] While the Settlement provides for Plaintiffs to petition for a Service Award of $10,000 each, courts generally analyze Service Awards standing alone, and not within the rubric of Fed. R. Civ. P. 23(e)(2)(D). *See, e.g., In re Sonic*, 2019 U.S. Dist. LEXIS 135573, at *16-18 (analyzing Service Awards separately from Rule 23(e)(2)(D)). Whether the proposed Service Awards are reasonable will be addressed in the forthcoming fee petition. *See also Shanahan*, 2021 U.S. Dist. LEXIS 50516, at *13 (approving Service Awards of $10,000.00 as reasonable).

[3] The final factor is the response from the Class, but that factor is irrelevant until the hearing on Final Approval, after Notice is provided and Settlement Class Members are given the opportunity to opt out or object.

judgment for that of counsel"). Moreover, "settlement fosters the goals of certainty, finality and economy, which lie at the heart of our general preference for settlement of class actions." *Berry v. School Dist.*, 184 F.R.D. 93, 106 (W.D. Mich. 1998). And because of the valuable compensatory relief secured and the beneficial change in business practice, the Settlement "does its best to ensure that Defendants can continue to provide valuable service to Class Members in an atmosphere that will foster trust and confidence." *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 372 (S.D. Oh. 1990).

For these reasons, all Rule 23(e) and UAW factors militate in favor of preliminary approval of the proposed Settlement.

### 4. *The Claims-Made Structure Does Not Undermine Approval.*

The Settlement includes a claims-made structure, which does not impact the "fairness, reasonableness, or adequacy of proposed settlement." *Hamilton v. SunTrust Mortg. Inc.*, 2014 U.S. Dist. LEXIS 154762, at *18 (S.D. Fla. Oct. 24, 2014). *See also Andrews v. State Auto Mutual Ins. Co.*, 2023 WL 7018839 (S.D. Oh. October 25, 2023) (granting final approval of claims-made structure class settlement); *Janet Davis et al v. Geico Casualty Company et al*, No. 2:19-cv-02477-GCS-EPD (S.D. Ohio, October 12, 2023) (same). Defendants made clear it would only settle with the claims-made structure. (Shamis Decl. at ¶ 12). And as courts have explained, whether a settlement compares favorably to a hypothetical settlement to which the parties did not agree is irrelevant. *See, e.g., Casey v. Citibank, N.A.*, 2014 U.S. Dist. LEXIS 156553, at *6 (N.D. N.Y. Aug. 21, 2014) (while direct payment may have resulted in more class members receiving some payment, "there is no reason to believe the defendants would agree to such terms" and thus the feasibility of direct payment "is irrelevant") (citing *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) (because the inquiry into a proposed settlement structure "is

18

limited to whether the settlement is lawful, fair, reasonable and adequate[,] . . . [an objector] must do more than just argue that she would have preferred a different settlement structure")); *Montoya v. PNC Bank, N.A.*, 2016 U.S. Dist. LEXIS 50315, at *49 (S.D. Fla. Apr. 13, 2016) (claims-made settlement offered the best and "only real relief" possible in settlement because defendants "would not have agreed" to direct-pay structure). The question is not whether a claims-made settlement compares favorably to a hypothetical, nonexistent settlement but rather whether the Settlement is fair and reasonable on its own terms. *See Casey*, 2014 U.S. Dist. LEXIS 156553 ("The Court does not have the authority to impose a preferred payment structure upon the settling parties").

The Agreement removes the risk that the Class will recover nothing due to an unfavorable ruling on class certification, summary judgment, or any appeal therefrom. For all such reasons, and as will be more fully explained in the Motion for Final Approval, Plaintiffs believe the Agreement is fair and reasonable to the Class.

Finally, for the convenience of the Court, below is a proposed preliminary schedule outlining the dates set forth in the Settlement Agreement, which comports with the Schedule outlined in the proposed Order preliminarily approving of the proposed Settlement, which is affixed as Exhibit 4 to the Settlement Agreement.

| Event | Date | Timeline |
|---|---|---|
| Deadline for Completion of Notice | | 30 days after entry of the Preliminary Approval Order |
| Deadline for filing Motion for Final Approval of the Settlement Agreement, Class Counsel's Fee Application and expenses, and for a Service Award | | 30 days after the Opt-out and objection deadline |
| Deadline for opting-out of the Settlement Class and for submission of Objections to Settlement Agreement | | 60 days after Email Notice and Text Notice are sent |

| Deadline for Responses to Objections | | 15 days before the Final Approval Hearing |
|---|---|---|
| Final Approval Hearing | | [No earlier than 150 days after Preliminary Approval] |
| Last day Class Claimants may submit a Claim Form | | 120 days after Email Notice and Text Notice are sent |

## IV.    CONCLUSION

Plaintiffs respectfully request that the Court grant preliminary approval of the proposed settlement (attached as Exhibit A) and enter an order of preliminary approval that includes the content of the proposed order attached as Exhibit 4 to the Agreement. The proposed preliminary approval order approves the form of notice to be given to the class, establishes a schedule and process for the submission of any objections or requests for exclusion from the class, and provides for a fairness hearing to be held by the Court. Plaintiffs anticipate later requesting final approval of the settlement in advance of the fairness hearing.

Dated November 27, 2024

Respectfully submitted,

*/s/ Andrew Shamis*
**Shamis & Gentile, P.A.**
Andrew J. Shamis (trial attorney)
ashamis@shamisgentile.com
*/s/ Garrett Berg* (pro hac vice)
gberg@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, FL 33132
Telephone: 305-479-2299
Facsimile: 786-623-0915

*Counsel for Plaintiffs and the class*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2024, a copy of the foregoing document was served on all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Andrew Shamis*
Andrew Shamis