**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| ERIC LAGUARDIA, *et al.*, | Case No. 2:20-cv-02311-SDM-EPD |
| Plaintiffs, | Judge Sarah D. Morrison |
| v. | Magistrate Judge Elizabeth Preston Deavers |
| DESIGNER BRANDS INC., *et al.*, | |
| Defendants. | |
| _____/ | |

**PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES,**
**EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS**

**I.     INTRODUCTION**

Pursuant to the Settlement Agreement ("S.A.") [Doc. No. 277-1][1] preliminarily approved by the Court on January 28, 2025 [Doc. No. 280], Plaintiffs respectfully move for an order awarding (1) $1,107,295 for attorneys' fees (25% of the $4,429,180 total Settlement Amount); (2) $27,922.72 for reimbursement of Settlement Class Counsel's costs and expenses; and (3) Service Awards of $10,000 for each Settlement Class Representative. As demonstrated herein, Settlement Class Counsels' attorneys' fees request is appropriate under the "percentage of the fund" method, which is the preferred approach for determining a reasonable fee in a common fund case such as this one. The requested fee percentage is 25%, which is well within the range typically approved in the Sixth Circuit and is further supported by the discretionary lodestar cross-check analysis. Settlement Class Counsel's expenses are also reasonable under the circumstances and the request

---

[1] All capitalized terms not defined herein have the same meaning as in the Settlement Agreement.

1

for $10,000 Service Awards for each Plaintiff is an amount that is frequently approved by Courts within this District.

## II. BACKGROUND

Plaintiffs' operative complaint alleges putative class claims that Defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 by sending marketing text messages to consumers after they had already made a request to not receive future marketing texts from them. Defendants deny the allegations in the operative complaint but, given the risks, uncertainties, and burdens of litigation, have agreed to settle the litigation according to the terms of the Settlement Agreement. As detailed below, the parties have reached a proposed class settlement, where Defendants agreed to make available up to $4,429,180 to the approximately 63,274 members of the Settlement Class. Each individual Settlement Class Member that submits a valid and timely claim shall receive a cash payment of $70.00. If the total Settlement Class Member Payments are such that, after the Settlement Costs are paid, the remainder of the Settlement Amount is insufficient to pay each Class Member $70.00, then the Settlement Class Member Payment shall be made on a *pro rata* basis.

This Settlement represents an excellent result for the Settlement Class in this litigation and was obtained against a well-funded defense by Defendants, which was represented by a large defense firm (Baker & Hostetler LLP) that is highly experienced in defending class actions. Although Plaintiffs believe in the merits of their claims, this litigation was inherently risky and complex. Plaintiffs would face risks at each stage of litigation. Against these risks, it was through the hard-fought litigation, negotiations, and the skill and hard work of Class Counsel and the Plaintiffs, that the Settlement was achieved for the benefit of the Settlement Class.

Class Counsel zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement only several years of extensive investigation, discovery, litigation, and prolonged arm's length negotiations. Even after coming to an agreement on the central terms, Class Counsel worked for months to finalize the Settlement Agreement and associated exhibits pertaining to notice, preliminary approval, and final approval.

As compensation for the substantial benefit conferred upon the Settlement Class, Class Counsel respectfully move the Court for an award of attorneys' fees of $1,107,295 and out-of-pocket expenses totaling $27,922.72 to be paid from the Settlement Fund. The fee request represents 25% of the total $4,429,180 total Settlement Amount. This request is contemplated by the Settlement Agreement, and Class Counsel apprised the Court of this request in its Unopposed Motion for Preliminary Approval (filed on November 27, 2024). This amount was also clearly delineated in the Long Form Notice (attached to the Settlement Agreement as Exhibit 3 within Doc. 277-1), and available on the Settlement Website in the FAQ section and in the Documents section where the Settlement Agreement can be viewed. Zero class members have objected to the Settlement, the attorneys' fees, expenses, and service awards, and only two have opted-out. Shamis Decl., ¶ 11, attached as **Exhibit A**.

### III.  ATTORNEYS' FEES

#### A.  Class Counsel's Attorneys' Fee Request is Fair and Reasonable

Rule 23(h) of the Federal Rules of Civil Procedure expressly authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Through the Settlement Agreement, Defendants have agreed to pay Class Counsel attorneys' fees, expenses, and Service Awards. Settlement Agreement, ¶¶ 96, 104. Defendant

agreed "to not oppose Class Counsel's request for attorneys' fees of up to 25% of the Settlement, or $1,107,295 and costs (not including Settlemetn Costs) up to $34,000." *Id.* ¶ 96.

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). The Sixth Circuit "require[s] only that awards of attorneys' fees in common fund cases be reasonable under the circumstances." *Id.* at 516. "District courts apply a two-part analysis to assess the reasonableness of an attorney fee petition." *O'Donnell v. Fin. Am. Life Ins. Co.*, No. 2:14-cv-1071, 2018 WL 11357092, at *5 (S.D. Ohio Aug. 24, 2018). "First, the court must determine the appropriate method to calculate the fees, using either the percentage of fund or the Lodestar approach." *Id.* "Second, the Court must consider six factors to assess the reasonableness of the fee." *Id.* (citing *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)). The Court should provide a concise and clear explanation of the reasoning for adopting a particular method and the factors considered to arrive at the fee. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Rawlings*, 9 F.3d at 516. Here, Class Counsel's request for attorneys' fees is appropriately assessed using the percentage of the fund analysis.

      **B.**    **Class Counsel's Attorneys' Fee Request is Fair and Reasonable**

Courts have long recognized the common fund doctrine, under which attorneys who create a recovery benefitting a group of people may be awarded their fees and costs from the recovery. *See, e.g., Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). In *Boeing*, the Supreme Court held that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed. *Id.* Courts have "the historic power of equity" to permit a party recovering a fund for the benefit of others to recover his costs, including his attorney fees, from the fund itself or from the other parties enjoying the benefit. *Alyeska Pipeline*

*SVC Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975). Indeed, "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing*, 444 U.S. 472, 478. This is known as the "common fund doctrine" and it is premised upon the principle "that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1277 (S.D. Ohio 1996) (citing *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164 (1939)); *Boeing*, 444 U.S. at 478).

"Counsel who creates a common fund for the benefit of a class is entitled to a payment of fees and expenses from the fund relative to the benefit achieved." *Harsh v. Kalida Mfg., Inc.*, No. 3:18-CV-2239, 2021 WL 4145720, at *7 (N.D. Ohio Sept. 13, 2021); *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008, at *12 (S.D. Ohio Jan. 26, 2011) (because "counsel's efforts create a substantial common fund for the benefit of the class, they are, therefore, entitled to payment from the fund based on a percentage of that fund"); *see also New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 633 (W.D. Ky. 2006); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 900 (S.D. Ohio 2001). Pursuant to the terms of this Settlement, Defendant will create a fund of up to $4,429,180 for the benefit of the Class.

In the Sixth Circuit, the "percentage of the fund has been the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share." *Lott v. Louisville Metro Gov't*, No. 3:19-CV-271-RGJ, 2023 WL 2562407, at *3 n.4 (W.D. Ky. Mar. 17, 2023) (quotation omitted); *Robles v. Comtrak Logistics, Inc.*, No. 15-CV-2228, 2022 WL 17672639, at *10 (W.D. Tenn. Dec. 14, 2022) ("The percentage-of-the-fund method, however, tends to be favored over the lodestar approach by courts in this circuit."); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010) ("percentage of the fund has been the

5

preferred method for common fund cases"); *In re: Southeastern Milk Antitrust Litig.*, No. 2:07-CV 208, 2012 WL 12875983 at *2 (E.D. Tenn. July 11, 2012) ("[T]he percentage-of-the-fund method, however, clearly appears to have become the preferred method in common fund cases.").

In the Sixth Circuit, attorneys' fees awarded pursuant to the percentage of the fund method "typically range from 20 to 50 percent of the common fund." *Lott*, 2023 WL 2562407, at *3; *Connectivity Sys. Inc.*, 2011 WL 292008, at *12 (same); *Brotherton*, 141 F. Supp. 2d at 902 (same).[2] Here, Plaintiffs request an award of attorneys' fees equal to 25% of the total Settlement Amount created, well within the typical range. *See*, *e.g.*, *Hunter v. Booz Allen Hamilton Inc.*, No. 2:19-CV-00411, 2023 WL 3204684, at *8 (S.D. Ohio May 2, 2023) ("When using the percentage-of-the-fund method, courts in the Sixth Circuit generally approve of awards that are one-third (1/3) of the total settlement."); *Zilinsky v. LeafFilter N., LLC*, No. 2:20-CV-6229, 2023 WL 2696554, at *6 (S.D. Ohio Mar. 29, 2023) (awarding attorneys' fees of "one-third of the total Settlement Fund"); *Hargrove v. Jefferson Cnty. Bd. Of Educ.*, 2022 WL 188190, at *10 (W.D. Ky. Jan. 20, 2022) (finding that a 40% fee is "hardly the 'windfall' that courts should be wary of when assessing the reasonableness of such fees"); *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2022 WL 4385345, at *2 (E.D. Mich. Sept. 22, 2022) (a fee request of 1/3 of the class action settlement fund "is within the range of fee awards made by courts in this Circuit"); *Walker v. Nautilus, Inc.*, No. 2:20-cv-3414-EAS (S.D. Ohio June 27, 2022) (awarding attorneys' fees of 1/3 of the $4.25 million common fund); *Love v. Gannett Co.*, No. 3:19-cv-296, 2021 WL 4352800, at *5 (W.D. Ky. Sept. 24, 2021) (approving 33.85% of fund as reasonable attorneys' fees); *Dillworth v. Case Farms*

---

[2] *See also In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 1029, 1046 (S.D. Ohio 2001) ("the range of reasonableness … has been designated as between twenty to fifty percent of the common fund"); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund"), *rev'd on other grounds*, 24 F. App'x 520 (6th Cir. 2001).

*Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (approving fee equal to 33% of settlement fund).

Further, the Sixth Circuit has emphasized that "[t]he entire fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not." *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, at *283 (6th Cir. May 13, 2016) citing *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007). "[T]he Supreme Court found value in the work of class counsel that provided a fund from which class members could access their claims." *Gascho*, 822 F.3d 269, at *285.

Courts in this Circuit have recently granted attorneys' fees of one-third of the common fund in data breach class action cases, which are in many ways similar to TCPA cases. *See Migliaccio v. Parker Hannifin, Corp.*, No. 1:22-cv-835-DAP (N.D. Ohio Aug. 2, 2023; Doc. 42, ¶ 7) ($583,333.33 fee award from a $1,750,000 common fund in a data breach class action settlement); *Tucker v. Marietta Area Health Care Inc.*, No. 2:22-cv-184-SDM (S.D. Ohio Dec. 8, 2023; Doc. 38, ¶ 7) (same); *Phelps v. Toyotetsu N. Am.*, No. 6:22-cv-106 (E.D. Ky. Oct. 25, 2023; Doc. 47, PageID # 542) (granting attorneys' fees of one-third of the common fund in a data breach class action settlement.

The Sixth Circuit has adopted the following factors (often referred to as the *Ramey* factors) to consider when determining what constitutes a reasonable fee in a common fund case:

1) the value of the benefit rendered to the plaintiff class (i.e., the results achieved);

2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

3) whether the services were undertaken on a contingent fee basis;

7

    4)   the value of the services on an hourly basis (the lodestar cross-check);

    5)   the complexity of the litigation; and

    6)   the professional skill and standing of counsel involved on both sides.[3]

Each factor supports Class Counsel's fee request here.

### 1. The Results Achieved in this Litigation

The first *Ramey* factor requires the Court to evaluate the benefit of the settlement to the Class and is often cited as the most important factor. *Bowling*, 922 F. Supp. at 1280. The Settlement has a total value of $4,429,180 and provides for a $70 cash payment for all Settlement Class Members that opt-in. S.A.¶¶ 42, 86. If the total Settlement Class Member Payments are such that, after the Settlement Costs are paid, the remainder of the Settlement Amount is insufficient to pay each Class Member $70, then the Settlement Class Member Payment shall be made on a *pro rata basis*. *Id*. at ¶ 86. Settlement Costs means all fees and costs approved by the Court and all administration costs including notice and administration costs, attorneys' fees and costs, and any Service Awards. *Id*. at ¶ 43. As of May 21, 2025, the Settlement Administrator has billed $110,686.92 for services and fees incurred in the administration of this matter and estimates that it will bill an additional $47,600 to complete the administration. *See* Declaration of Paul Ferruzzi ("Kroll Decl.") at ¶ 17, attached as **Exhibit D**.

Furthermore, the theoretical recovery per Class Member in this case of $70 per person exceeds the amount recovered in other similar TCPA class action settlements. *See Charvat v. Valente*, No. 12:5746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) (average award of $22.17 per member with each call valued at between $7.41 and $8.42); *Gehrich v. Chase Bank, N.A.*, 316

---

[3] *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *6 (S.D. Ohio July 11, 2014) (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974), *cert. denied*, 422 U.S. 1048 (1975)).

F.R.D. 215, 227-28 (N.D. Ill. 2016) (award of $52.50 per member); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ("Although thirty dollars per claimant 'falls on the lower end of the scale,' it is nonetheless 'within the range of recoveries' in TCPA class actions."); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (average award of $39.66 per member); *Wilkins v. HSBC Bank Nevada, N.A.*, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (approving settlement of $2.95 per class member); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of settlements and approving $20 to $40 per member); *Mahoney v. TT of Pine Ridge, Inc.*, 2017 WL 9472860, at *7 (S.D. Fla. Nov. 17, 2017) (approving claims made settlement whether claimants had options of "$4.00 cash award or a $15.00 voucher" and stating "the Court agrees with the Parties that '[t]he proposed structure maximizes the total amount available to the Settlement Class while simultaneously considering Defendant's immediate ability to pay the class', and therefore the recovery by claimants is fair, adequate, and reasonable."); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (approving settlement of $13.75 per class member.).

Given the risk of proceeding further into litigation, the value obtained from bringing, prosecuting, persevering, and settling this litigation should not be underestimated. Moreover, in addition to the inherent risk as to the outcome, achieving a result that resolves this litigation *now* is valuable in that it avoids the certain delay of continuing litigation with the possibility of appeals. Any delay in the process could be of great detriment to the Class. *See Connectivity Sys. Inc.*, 2011 WL 292008, at *4 ("Given the time value of money, a future recovery, even one greater than the proposed Settlement Amount, may be less valuable to the Settlement Class than receiving the benefits of the Settlement Agreement now."). The results achieved here are substantial and timely, and support Class Counsel's fee request.

### 2. The Requested Fee Provides Adequate Incentive to Undertake this Representation for the Benefit of Others

Awarding Class Counsel the requested attorneys' fee amount provides an incentive for qualified and experienced attorneys to undertake this type of speculative and risky litigation. Thus, "class counsel's expenditure of time and money benefitted small claimants who lack the resources to prosecute a case of this nature." *Hainey v. Parrott*, No. 1:02-CV-733, 2007 WL 3308027, at *3 (S.D. Ohio Nov. 6, 2007). Without counsel willing to take the risk of challenging companies like Defendants, Plaintiffs would have been left with no recourse since the cost to pursue their individual claims far exceeded their damages. *Myers v. Mem'l Health Sys. Marietta Mem'l Hosp.*, No. 15-CV-2956, 2022 WL 4079559, at *6 (S.D. Ohio Sept. 6, 2022) ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own." (quoting *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012)); *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 WL 757123, at *8 (S.D. Ohio Feb. 18, 2021) ("Without a class action, the individual plaintiffs would not have had a strong incentive to pursue recovery because any monetary award would have been severely outweighed by the costs to litigate their cases."). As the Sixth Circuit put it:

> Consumer class actions, furthermore, have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources. If we are to encourage these positive societal effects, class counsel must be adequately compensated— even when significant compensation to class members is out of reach (such as when contact information is unavailable, or when individual claims are very small).

*Gascho*, 822 F.3d 269, at *287. Accordingly, this second factor also supports the requested attorneys' fee award.

### 3. Class Counsel Undertook this Representation on a Contingent Basis

10

The third *Ramey* factor "stands as a proxy for the risk that attorneys will not recover compensation for the work they put into a case." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 765 (S.D. Ohio 2007) (citing *Bowling*, 922 F. Supp. at 1282). Some courts consider the risk of non-recovery to be the most important factor in the fee determination. *Id*. (citing cases). "[C]ontingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery." *Whitlock v. FSL Mgmt., LLC*, No. 3:10-cv-00562, 2015 WL 9413142, at * 9 (W.D. Ky. Dec. 22, 2015) (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d at 1043).

Class Counsel agreed to undertake this litigation on a contingent basis. Shamis Decl., ¶ 8. Class Counsel took a considerable risk here in advancing all costs (which presently totals $27,922.72), while receiving no compensation for the work they have performed from several years ago to present. Moreover, had there been no recovery, Class Counsel would not have been paid a fee or reimbursement for their expenses. *Id.* Therefore, this factor weighs in support of Class Counsel's fee request.

### 4. The Value of the Services Supports the Fee Requested

Although performing a cross-check on the percentage method using Class Counsel's lodestar is optional and solely within the Court's discretion, *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed. App'x 496, 500 (6th Cir. 2011), courts may perform a lodestar cross-check to ensure counsel does not receive a windfall. *Love*, 2021 WL 4352800, at *6; *see also In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 764. The purpose of the exercise is "not to supplant the court's detailed inquiry into the attorney's skill and efficiency in recovering the settlement" using the percentage of the fund and *Ramey* factors, but instead merely to ensure that the fee award is still "roughly aligned with the amount of work the attorneys contributed." *Id*.

"The Court performs a lodestar cross-check by comparing the lodestar multiplier used in

11

this case to lodestar multipliers used in similar cases." *Id.* at 767. "In contrast to employing the lodestar method in full, when using a lodestar cross-check, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *Id.* (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005)). The Sixth Circuit has instructed that when "determining fee awards, courts should not 'become green-eyeshade accountants,' but instead must content themselves with 'rough justice.'" *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2022 WL 3048376, at *6 (S.D. Ohio Aug. 2, 2022) (quoting *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 618 (6th Cir. 2021) (internal punctuation altered)); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 n.16 (3d Cir. Pa. 2005) ("the lodestar cross-check is 'not a full-blown lodestar inquiry' and a court 'should be satisfied with a summary of the hours expended by all counsel at various stages with less detailed breakdown than would be required in a lodestar jurisdiction.'") (quoting Report of the Third Circuit Task Force, Selection of Class Counsel, 208 F.R.D. 340, 423 (2002)).[4]

Over the past several years, Class Counsel and their co-counsel have spent more than 1,500 hours prosecuting this litigation. Shamis Decl., ¶ 18. *See also* Exhibit 2 attached thereto. Class Counsel will necessarily spend substantial additional time from this point to conclusion of the case, time that will not be reflected in this fee application. Class Counsel and their co-counsel's current lodestar is $1,118,420.50. *Id.* The requested $1,107,295 fee is 25% of the value of the $4,429,180 total Settlement Amtount, and less than Class Counsel's current lodestar. Thus, when cross-

---

[4] *Accord* The Manual For Complex Litigation (Fourth) § 14.122 (2004) ("the lodestar is at least useful as a cross-check . . . using affidavits and other information provided by the fee applicant"); *Milliron v. T-Mobile United States*, 423 F. App'x 131, 136 (3d Cir. 2011) ("the crosscheck is not the primary analysis in this type of case and does not entail 'mathematical precision []or bean-counting,'"); *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986) ("Counsel have provided the Court with helpful charts summarizing the hours logged and the rate requested by each of the attorneys involved in this case.").

checked, the requested fee is equivalent to the application of a current multiplier of x0.99.

"Because of the inherent risks of litigation, courts in this district award multipliers of 'between approximately 2.0 and 5.0.'" *Karpik*, 2021 WL 757123, at *8 (citing *In re Broadwing, Inc. ERISA Litg.*, 252 F.R.D. 369, 381 (S.D. Ohio 2016). Class counsel's negative lodestar falls well below the reasonable range. *See Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977, at *7 (S.D. Ohio Oct. 3, 2018) (citing *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving 3.06 multiplier and citing cases with multipliers ranging from 4.3 to 8.5)); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 767 (approving multiplier of 5.9); *Myers*, 2022 WL 4079559, at *6 ("Awards of common-fund attorney fees in amounts two to three-times greater than the lodestar have been found reasonable"); *Rudi v. Wexner*, 2022 WL 1682297, at *5 (S.D. Ohio May 16, 2022) ("2.75 multiplier falls a the low end of that reasonable range").

In sum, Class Counsel's fee request is reasonable based on a percentage of the common fund, and on the discretionary lodestar cross-check.

### 5. The Complexity of the Litigation Supports the Requested Fee

The fifth *Ramey* factor requires the Court to consider the complexity of the case. Although nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly complex class action in an especially risky area.

Success at class certification has also been very tough hurdle in recent TCPA cases. Even if this Court were to certify a contested class, the inherent risks attendant to trying a TCPA class action would magnify the difficult legal questions at issue here. *See*, *e.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *12 (N.D. Cal. Aug. 17, 2018) ("class certification was not guaranteed, in part because Plaintiffs had a scarcity of precedent to

13

draw on"). Although Plaintiffs believe they would ultimately prevail in such a trial, a verdict for the defense would be entirely possible. While Class Counsel remain confident in Plaintiffs' claims, there is a recognized element of risk in any litigation, particularly complex and expensive TCPA class litigation.

### 6. The Professional Skill of Counsel Supports the Requested Fee

The last *Ramey* factor addresses the professional skill of counsel. Here, Class Counsel has substantial experience representing plaintiffs in TCPA class actions. Class Counsel devote a substantial percentage of their practices to TCPA and privacy litigation, and are frequently appointed as class counsel in data privacy cases across the country. Shamis Decl., ¶¶ 3, 4, 5. *See also* Exhibit 1, attached thereto. Defendant has likewise been represented by counsel who specialize in defending class action cases from Baker Hostetler LLP. Class Counsel's professionalism, experience, and skill support the requested fee.

### 7. The Fee Request is Supported by the Class Representatives

The utilization of the common fund doctrine as a basis for the payment of attorneys' fees and expenses is employed in addition to, and independent of, the contingent fee contract between lawyer and client. Bolstering the foregoing common fund considerations, the Plaintiffs support the payment of fees and expenses as requested in the instant motion.

Based upon the foregoing, a fee of $1,107,295 representing 25% of the $4,429,180 total Settlement Amount is fair and reasonable, is within the range established in the Sixth and other Circuits and is within the range established by federal courts in Ohio.

## IV. CLASS COUNSEL'S EXPENSES

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs in the prosecution of claims, and in obtaining

14

settlement, including but not limited to expenses incurred in connection with document productions, consulting with and deposing experts, travel and other litigation-related expenses." *Karpik*, 2021 WL 757123, at *9 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 534-35 (E.D. Mich. 2003)). "[T]he categories of expenses for which Plaintiffs' counsel seek reimbursement are the type routinely charged to hourly fee-paying clients and thus should be reimbursed out of the settlement fund … [including] the cost of experts and consultants … computerized research; travel and lodging expenses; photocopying cost; filing and witness fees; postage and overnight delivery; and the cost of court reporters and depositions." *Fruit of the Loom*, 234 F.R.D. at 635 (approving expenses submitted pursuant to these categories).

The Settlement Agreement provides that Defendans will not oppose Class Counsel's request for up to $34,000 of costs. Class Counsel has incurred approximately $27,922.72 in costs and expenses. Shamis Decl., ¶ 19. As set forth in the Class Counsel's Declaration, each expense for which Class Counsel seeks reimbursement was necessary and directly related to this litigation. *Id*. Accordingly, Class Counsel is entitled to this cost reimbursement.

## V. SERVICE AWARDS

The Settlement Agreement also provides that Class Counsel will apply to the Court for Service Awards in the amount of $10,000 to each Plaintiff. S.A., ¶ 104. Class Counsel moves for approval of the Service Awards under principles of equity and the prior practice and case law in the district courts within the Sixth Circuit. Furthermore, the Class Representative Service Awards here are similar to what has been approved in other class action settlements; *Lutz v. Electromed, Inc.*, No. 0:21-cv-02198 (D. Minn.; Doc. 73) (approving $9,900 service award); *Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *1 (S.D. Ohio Oct. 23, 2008) (approving $10,000 incentive award to each class representative); *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998)

(incentive award of $25,000 in $14 million settlement); *In re Remeron End-Payor Antitrust Litig.*, No. Civ. 02-2007 FSH, 2005 WL 2230314 (D. N.J. Sept. 13, 2005) (value of settlement was $36 million; incentive payments totaling $75,000 for named plaintiffs).

"Service awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class.'" *Rudi*, 2022 WL 1682297, at *5 (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dilworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted).

The Plaintiffs indicated their desire and willingness to undertake the responsibilities and fiduciary duties on behalf of the class. *See* Declaration of Nicole Austin ("Austin Decl.") at ¶¶ 7-19, attached as **Exhibit B** and Declaration of Eric LaGuardia ("LaGuardia Decl.") at ¶¶ 8-15, attached as **Exhibit C**. This is a voluntary obligation that goes well beyond the pursuit of their individual claims. Plaintiffs remained in close contact with Class Counsel, throughout the litigation; they also reviewed the Pleadings and other court filings and approved the Settlement. Shamis Decl., ¶20. Plaintiffs also had to endure invasions of their privacy and put in many hours throught the pendeancy of this case. *See* Austin Decl. at ¶¶ 14-19, LaGuardia Decl. at ¶¶ 9-15. Without their willingness to undertake these obligations on behalf of the Class Members, the recovery in this case would not have occurred. Accordingly, a Service Award of $10,000 to each Plaintiff for their extensive time and work on this case on behalf of all Class Members is appropriate.

VI. **CONCLUSION**

Based upon the foregoing, Plaintiffs respectfully request this Court approve the payment from the Settlement Fund of (1) $1,107,295 for reasonable attorneys' fees; (2) $27,922.72 for reimbursement of Class Counsel's reasonable expenses; and (3) $10,000 for each Plaintiff as a Service Award, as well as any further relief that this Court deems just and equitable.

Dated: June, 2, 2025

Respectfully submitted,

By: */s/ Andrew Shamis*
Andrew J. Shamis, Esq.
Ohio Bar No. 100846
**SHAMIS GENTILE**
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: (305) 479-2299
ashamis@shamisgentile.com

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I, Andrew Shamis, hereby certify that on June 2, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

By: */s/ Andrew Shamis*
Andrew J. Shamis, Esq.