# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ERIC LAGUARDIA, *et al.*, | Case No. 2:20-cv-02311-SDM-EPD |
| Plaintiffs, | Judge Sarah D. Morrison |
| v. | Magistrate Judge Elizabeth Preston Deavers |
| DESIGNER BRANDS INC., *et al.,* | |
| Defendants. | |

_____/

## PLAINTIFFS' UNOPPOSED MOTION
## FOR FINAL APPROVAL OF CLASS SETTLEMENT

Plaintiffs Eric LaGuardia and Nicole Austin ("Plaintiffs") respectfully submit this unopposed Motion and move this Court for final approval of the class action settlement reached between the Parties.

## INTRODUCTION

Representative Plaintiffs Eric LaGuardia and Nicole Austin moved previously for preliminary approval of a settlement with Defendants Designer Brands, Inc. and DSW Shoe Warehouse, Inc. ("Defendants"), the terms and conditions of which are set forth in the Class Action Settlement Agreement (the "Agreement"), attached to the Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement filed November 27, 2024 [ECF No. 277]. The Court granted preliminary approval of the Class Action Settlement on January 28, 2025 [ECF No. 280].

The Class Notice program has now been completed, with Text Message Notice and Email Notice having been sent to Settlement Class Members as instructed by the Court's Preliminary Approval Order. *See* Declaration of Paul Ferruzzi of Kroll Settlement Administration LLC re:

1

Settlement Administration ("Kroll Decl.") ¶¶ 3-9, attached as **Exhibit A**. The opt-out and objection deadline has passed, and only two Settlement Class Members have opted-out and zero objection(s) have been filed. *Id*. at ¶¶ 15,16.

The preliminarily approved Settlement provides a substantial monetary recovery for Class Members. Accordingly, Plaintiffs respectfully request that this Court enter an order, *inter alia*, as follows: (1) granting Final Approval to the Settlement; (2) certifying the proposed Settlement Class for settlement purposes; (3) granting Plaintiffs' Motion for Attorneys' Fees and Class Representative Service Awards; and (4) entering Final Judgement. A proposed order is attached hereto.

## FACTUAL BACKGROUND

**I.    THE LITIGATION**

The history of this litigation is set forth in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement filed on November 27, 2024 [ECF No. 277]. For purposes of efficiency, Plaintiffs incorporate the Statement of the Basis for the Request section contained in that Brief. The Court granted Plaintiffs' Motion for Preliminary Approval of the Settlement on January 28, 2025. *See* ECF No. 280, Order preliminarily Approving Class Action Settlement and Certifying the Settlement Class ("Prelim Approval Order"). The Court, *inter alia*, (1) preliminarily approved the Settlement as fair, reasonable, and adequate, (2) conditionally certified the Settlement Class, (3) appointed Settlement Class Counsel, (4) approved the Settlement Class Notice, and scheduled a Final Approval Hearing for July 31, 2025. *Id*.

**II.   THE SETTLEMENT**

   A. Overview

The Settlement requires Defendants to make available a Settlement Fund pursuant to the terms of the Settlement Agreement that will: (1) allocate up to $4,429,180 for the purpose of

2

payment to all Settlement Class members in the amount of up to $70.00 per claimant; (2) pay attorneys' fees of approximately 25% of the total Settlement Amount, to be paid from the Settlement Fund; (3) make payment of the Service Award of $10,000.00 to each named Plaintiff, to be paid from the Settlement Fund and (4) pay the costs of the Class Notice and Administration, to be paid from the Settlement Fund. As of May 21, 2025, the Class Action Settlement Administrator has received 2,143 valid claims. Kroll Decl., ¶ 13. The claims period remains open until June 30, 2025. *See* Prelim. Approval Order at ¶ 28.

### B. The Settlement Class

The proposed Settlement Class is defined as the following:

> All persons in the United States who, between September 1, 2018, and September 1, 2024, 1) were sent a "marketing"* text message from Defendants, 2) thereafter responded with the word "stop" or the equivalent, and 3) thereafter received a marketing text message from Defendants.
>
> *marketing means offering or advertising the commercial availability or quality of any property, goods, products, or services.

Prelim. Approval Order ¶ 6. In exchange for the consideration described above, the Settlement Class shall release Defendants and the Released Parties from any claims that arose during the Class Period that in any way related to (1) the claims or facts in or related to the pleadings in the Action, (2) texts or any form of communications from the Released Parties, or (3) any claims under the TCPA, its implementing regulations, or any similar state statutes or common-law claims. Agreement at ¶ 33.

### C. Release

The Release is narrowly tailored. As of the Effective Date of the Settlement, Plaintiffs and each Settlement Class Member who does not opt out or object agrees to release "any and claims, causes of action, suits, obligations, debts, rights, demands, liens, actions, agreements, promises, liabilities, damages, losses, controversies, claims for damages, equitable, legal, and/or administrative

3

relief, interest, costs, expenses, accounting fees, and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, statute, regulation, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, that arose during the Class Period against the Released Parties, in any way related to (1) the claims or facts in or related to the pleadings in the Action, (2) texts or any form of communications from the Released Parties, or (3) any claims under the TCPA, its implementing regulations, or any similar state statutes or common-law claims. Agreement at ¶¶ 33, 100, 101.

### D. The Notice Program

Following the Court's preliminary approval of the Settlement and appointment of Kroll Settlement Administration ("Kroll") as the Settlement Administrator (see Prelim. Approval Order at ¶ 14), Kroll created a dedicated Settlement Website on January 25, 2025. Kroll Decl. ¶ 4. The Settlement Website "went live" on January 27, 2025, and contains a summary of the Settlement, allows Settlement Class Members to contact the Settlement Administrator with any questions or changes of address, provides answers to frequently asked questions, and provides notice of important dates such as the Final Approval Hearing, Claims Deadline, Objection Deadline, and Opt-Out Deadline. *Id*. The Settlement Website also contains downloadable copies of relevant documents including the Settlement Agreement, Preliminary Approval Order, Long-Form Notice, Claim Form, and allowed Settlement Class Members an opportunity to file a Claim Form online. *Id*.

On February 10, 2025, Kroll established a toll-free telephone number for Settlement Class Members to call and obtain additional information regarding the Settlement through an Interactive Voice Response ("IVR") and voice mail system and Kroll designated a post office box to receive opt-

out request, claims forms, notices of intent to object, and other correspondences from Settlement Class Members. *Id* at ¶¶ 5, 6.

On February 28, 2025, Kroll caused 63,274 Text Notices to be sent and 66,785 Email Notices to be sent to Settlement Class Members. Kroll Decl. ¶ 7. Kroll made reasonable efforts to ensure up-to-date Settlement Class Member contact information. *Id*. ¶ 3. On March 31, 2025, Kroll caused 62,418 reminder Text Notices and 65,131 reminder Email Notices to be sent to those Settlement Class Members who had not yet filed a claim. *Id*. at ¶ 8.

The Email Notice included, among other information, a description of the material terms of the Settlement, a date by which Settlement Class Members may exclude themselves from, or "opt-out" of, the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date on which the Final Approval Hearing is scheduled to occur; and the address of the Settlement Website at which Settlement Class Members may access the Settlement Agreement and other related documents and information. The Text Notice included language notifying the recipient that they may be entitled to a $70 payment and included a link to the Settlement Website and the toll-free number.

Moreover, the robust Notice plan that this Court approved at the preliminary approval stage was effective. *See* Declaration of Andrew J. Shamis ("Shamis Decl."), at ¶¶ 14-16 attached hereto as **Exhibit B**. Although Settlement Class Members still have several weeks to submit a claim, the Notice plan has already achieved a claims rate of approximately 3.3%, which is higher than the claims rates of 1-2% typically seen in other similar class action settlements. *See* In *re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1090 (N.D. Ill. 2021) (citing cases for the proposition that "the average claims rate for classes above 2.7 million class members is less than 1.5%."); *See also Spillman v. RPM Pizza, LLC*, 2013 WL 2286076, at *2 (M.D. La. May 23, 2013) (finally approving TCPA Settlement and finding claim rate of "less than one percent" to be "consistent with other TCPA class action

5

settlements"); *Lee v. Global Tel\*link Corp.*, 2018 WL 4625677 (C.D. Cal. 2018) (finally approving TCPA class settlement with a claim rate of 1.8%); *Bayat v. Bank of the West*, 2015 WL 1744342, at *6 (N.D. Cal. 2015) (finding class settlement in TCPA claim to be fair, adequate, and reasonable where there was only a 1.9% claim rate for damages, and 1.1% for injunctive relief); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377–78, 1384 (S.D. Fla. 2007) (approving settlement with a claim rate of approximately 1.2%); *Kolnek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (final approval where claim rate was 2.5%); *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) (low claim rate "does not suggest unfairness."). As the *Keil* court put it:

> [E]ven if 97% of the class did not exercise their right to share in the fund, their opportunity to do so was a benefit to them. See Boeing Co. v. Van Gemert, 444 U.S. 472, 480 S. Ct. 745, 62 L. Ed. 2d 676 (1980) ('Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.').

*Keil*, 862 F.3d at 697.

### E. Opt-Outs and Objections

The Notices informed Settlement Class Members of their right to opt-out or object. Settlement Class Members may opt out of the Settlement Class at any time before the Opt-Out Deadline. Agreement ¶¶ 63, 64. The Opt-Out Deadline was on May 2, 2025. Prelim. Approval Order ¶ 28. The Email Notice and Long Form Notice informed Settlement Class Members of their right to object to the Settlement and/or to aspects of Class Counsel's application for attorneys' fees, costs, and expenses, and/or Service Award. The deadline for Objections was May 2, 2025. Prelim. Approval Order ¶ 28. Following Notice to the Class, the Settlement Administrator received only two (2) requests for exclusion and zero (0) objections. Kroll Decl. ¶ 16.

### F. Attorneys' Fees, Costs, and Expenses and Service Award

On June 2, 2025, Settlement Class Counsel filed a Motion requesting approval of attorneys' fees, costs, and Class Representative service awards. *See* ECF No. 281 ("Fee Motion"). Settlement Class Counsel have moved for an approval of attorneys' fees of 25% of the total Settlement Amount or $1,107,295, costs of $27,922.72, and Settlement Class Representative service awards totaling $20,000 ($10,000 per representative). Defendants do not oppose this Motion in any respect, and no Settlement Class Member has filed an Objection to the Settlement. Kroll Decl. ¶ 16.

### III. FINAL CLASS CERTIFICATION IS APPROPRIATE

Certifying the Class in this case is appropriate under Federal Rule of Civil Procedure 23. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Each of the Fed. R. Civ. P. 23(a) and (b)(3) requirements are satisfied here for the Settlement Class.

The prerequisite of numerosity is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(A)(1). "There is no specific number below which class action relief is automatically precluded. Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir.1976); *see also Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 105 F.R.D. 506, 508 (S.D. Ohio 1985) (certifying 23-person class and stating "there is no reason to encumber the judicial system with 23 consolidated lawsuits when one will do.").

The Settlement Class consists of approximately 63,274 individual Class Members. This makes clear that joinder of all Class Members is infeasible, and thus, numerosity is satisfied. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (explaining that "while there is no strict numerical test, substantial numbers usually satisfy the numerosity requirement").

7

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The claims must depend on a common contention of which "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998) (to satisfy commonality there "need only be one issue common to the class"). For commonality, "there need only be one question common to the class, so long as the resolution of that question will advance the litigation." *Philips v. Philip Morris Cos. Inc.*, 298 F.R.D. 355, 363 (N.D. Ohio 2014) (internal quotation marks and alteration omitted). Here, because all Class Members continued to receive Defendant's telemarketing texts after they had requested to be opted-out, common questions of law and fact are common to the class (i.e. did Defendants sent telemarketing texts to Plaintiffs and the proposed class? Did Defendants continue sending their telemarketing texts to Plaintiffs and the proposed class after they had requested to be opted-out and a reasonable amount of time had passed since the opt out? Did Defendants act knowingly or willfully?) Accordingly, there are multiple questions of law and fact that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

Rule 23(a)(3) requires that the class representative's claim(s) be typical of the claims of the Settlement Class. Fed. R. Civ. P. 23(a)(3). Typicality is established where the plaintiff's claim "arises from the same event or practice or course of conduct [as class members]" and are "based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). In other words, "as goes the claim of the named plaintiff"—favorably or unfavorably—"so go the claims of the class." *Sprague*, 133 F.3d at 399. Plaintiffs' claims are typical of all proposed Class Members and are essentially identical to their fellow Class Members' claims. Plaintiffs are typical of absent Settlement

8

Class Members because they received the same violative communication and suffered the same legal injuries as them and because they will all benefit from the relief achieved.

Rule 23(a)(4) requires that "the representative parties ... fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiffs and Class Counsel satisfy the adequacy of representation requirement under Rule 23(a)(4), which "serves to uncover conflicts of the interest between named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625. Rule 23(a)(4) ensures that the named representatives "will fairly and adequately protect the interests of the class." Adequacy has two components: "1) [T]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Vassalle v. Midland Funding, LLC*, 708 F.3d 747, 757 (6th Cir. 2013) (alteration in original)). Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and the absent Settlement Class Members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class Members have no diverging interests. Further, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions. Class Counsel negotiated the terms of the Settlement Agreement and believe the Settlement to be fair, reasonable, adequate, and in Plaintiffs' and the Class's best interests. Class Counsel have previously served as class counsel in dozens of successful class action cases. Shamis Declaration, **Exhibit B**, at ¶¶ 2-4. Class Counsel have diligently identified, researched, and prosecuted all potential claims in an efficient and timely manner resulting in this Settlement Agreement.

Rule 23 requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

23(b)(3). Predominance is established where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole...predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007). "The fact that a defense may arise or may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Id.* (internal quotation marks omitted); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013) ("Rule 23(b)(3), however, does not require a plaintiff seeking class certification to prove that every element of her claim is susceptible to classwide proof." (internal quotation marks and alterations omitted)). An absence of individual issues is not necessary. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir. 2012).

Here, the predominance requirement is met because the overwhelming majority of issues of law and fact are common to all class members. Common questions regarding Defendants' liability under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, are the central issues of the case and can be resolved for all members of the Settlement Class in a single adjudication. Though there may be a few individualized facts applying to various members of the Class, that should not and does not bar class certification. Further, courts have routinely held that "individualized calculations of damages do not defeat the predominance requirement." *Enea v. Bloomberg, L.P.*, S.D.N.Y. No. 12 CIV. 4656 GBD FM, 2014 WL 1044027, *7 (Mar. 17, 2014); *see also Casey v. Coventry Healthcare of Kansas, Inc.*, W.D. Mo. No. 08-0201-CV-W-DGK, 2010 WL 3636140, *5 (Sept. 10, 2010) ("Numerous courts have recognized that damages are inherently individualized and do not present a major obstacle to certification."); *In re Workers' Comp.*, 130 F.R.D. 99, 110 (D.Minn.1990) (noting that individualized damages issues "are rarely a barrier to certification"); *Beattie*, 511 F.3d at 564 ("'[c]ommon issues may predominate when liability can be determined on a class-wide basis, even

10

when there are some individualized damage issues."') (citation omitted) (alteration in original); *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) (in a fraud-based RICO action against HMOs alleging a nationwide conspiracy to underpay doctors, the fact that individualized determinations were necessary to determine the extent of damages allegedly suffered by each plaintiff was not sufficient to defeat class certification because common questions of law and fact predominated over individual issues); *Owner-Operator Indep. Drivers Assn., Inc. v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 285 (N.D. Ill. 2005) ("Common issues may predominate when liability can be determined on a class wide basis, even when there are some individualized damages issues."); Alba Conte and Herbert Newberg, Newberg on Class Actions § 4.25 (4th ed. 2002)) (same). Thus, the predominance requirement of Rule 23(B)(3) is met.

As to the superiority factor, "cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Young*, 693 F.3d at 545. To determine if class-wide adjudication is proper, courts consider: (A) the interest in individually controlling prosecution; (B) whether other litigation has commenced; (C) the desirability of concentrating litigation; and (D) manageability. *Beattie*, 511 F.3d at 564. Here, there are approximately 63,000 class members. One single class action case is not only a fair and efficient method by which to adjudicate this large number of claims, it is by far the *most* fair and *most* efficient method by which to handle these claims. Thousands of individual lawsuits brought on these facts would immensely burden the judiciary and disadvantage all parties involved. Class members would be poorly served by trying to recover for their individual claims because the small amount of damages corresponding to each individual claim would make prosecution economically impractical. And once the possible costs of expert opinions is anticipated, the economic barrier to individual suits becomes only exponentially higher. *See generally Chapman v. Tristar Prods.*, No. 1:16-CV-1114, 2017 WL 1433259, at *8 (N.D. Oh. Apr. 24, 2017)

11

("The most compelling rationale for finding superiority in a class action is the existence of a negative value suit, which is where the costs of enforcement in an individual action would exceed the expected individual recovery") (cleaned up); *see also Mullins v. Premier Nutrition Corp.*, N.D. Cal. No. 13-CV-01271-RS, 2016 WL 1535057, *8 (Apr. 15, 2016) ("Cases, such as this, 'where litigation costs dwarf potential recovery' are paradigmatic examples of those well-suited for class wide prosecution.") (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir.1998)). A class action presents the best, and only, realistic means through which Class Members may obtain relief for their harm.

The remaining prongs also favor class treatment: no action was "already commenced" by any member of the class, it is desirable and efficient to concentrate Class Members' identical claims in this forum, and Plaintiffs are unaware of any difficulties in the management of this action. Because common issues of law and fact predominate over individual issues, and the class action is the superior method of resolving TCPA class actions, Rule 23(B)(3) and all other requirements for class certification have been satisfied, this Court should grant final class certification for settlement purposes.

### IV. THE NOTICE PROGRAM WAS THE BEST PRACTICABLE NOTICE AND COMPORTED WITH DUE PROCESS.

Kroll followed the Preliminary Approval Order by executing the Notice Program, handling the Class's claims and inquiries about the Settlement, submitting weekly settlement claims update, and reporting the number of objections and requests to opt out of the settlement's benefits. Shamis Decl., at ¶15; Kroll Decl., at ¶¶ 3-14. Notably, Kroll reported that there were no objections to the Settlement and only two requests to opt out. Kroll Declaration, at ¶ 16. This indicates that Settlement was well received by the Class and the Settlement is fair, reasonable, and adequate. Thus, and for the same reasons as set forth in the Motion for Preliminary Approval and this Court's Order Preliminarily

Approving Class Action Settlement, the Notice provided to the Settlement Class members constitutes the best notice practicable and comports with due process requirements.

### V. THE TERMS OF THE SETTLEMENT ARE FAIR, REASONABLE AND ADEQUATE

There is a strong federal policy "favoring settlement of class actions." *UAW v. General Motors Corp.*, 497 F.3d 615, 633 (6th Cir. 2007). The Fed. R. Civ. P. 23(e) factors—adequate representation, arms' length negotiations, and the relief provided to the Class—all favor approval. *See generally Cook v. Gov't Emples. Ins. Co.*, No. 6:17-cv-891-ORL-40KRS, 2020 U.S. Dist. LEXIS 111956, at *16-17 (M.D. Fla. Jun. 22, 2020) (explaining that Rule 23 was amended to add 11 textual factors relevant to approval of class action settlements, which was intended to focus litigants and courts on the "core concerns" of Rule 23, but not to displace the relevant factors prescribed by appellate courts). The factors outlined in *UAW*, 497 F.3d at 631 that do not overlap with the Rule 23 factors—the opinions of Class Counsel and the public interest—also favor approval.

#### 1. The Rule 23 Threshold Factors Favor Approval

Fed. R. Civ. P. 23(e)(2) contains two threshold or procedural requirements: adequate representation and arms-length negotiations. Both favor final approval of the proposed Settlement.

The adequate representation analysis under Rule 23(e) "is distinct from Rule 23(a)(4) and is meant to address whether the class representatives possessed sufficient information and knowledge of the claims, issues, and defenses prior to negotiating and settling the claims." *Cook*, 2020 U.S. Dist. LEXIS 111956, at *18. This overlaps with one of the *UAW* factors, i.e., "the amount of discovery engaged in by the parties[.]" 497 F.3d at 631. Both are meant to ensure that the Class Representatives had sufficient information and knowledge such that they were able to make an informed decision concerning the pros and cons of settlement versus continuing litigation. *See Moore v. Medical Fin.*

*Servs.*, 2021 WL 6333304, at *3 (W.D. Tenn. Nov. 30, 2021) ("Parties must have engaged in enough discovery to evaluate the merits of the case and determine the appropriate settlement value.").

As described in the Motion for Preliminary Approval and Supporting Declaration, Plaintiffs and experienced class counsel support this settlement. Here, Plaintiffs engaged in over three years of litigation and had engaged in significant discovery and motion practice prior to reaching settlement. Moreover, Plaintiffs' attorneys have litigated numerous similar class actions and have detailed knowledge about the strengths and weaknesses of the claims. It remains the strong opinion of proposed Settlement Class Counsel that the Settlement presents a favorable result for the Class. The Rule 23 adequate representation factor and the UAW "amount of discovery" factor both clearly favor preliminary approval. *See generally Satterly v. Airstream, Inc.*, 2020 WL 6536342, at *6 (S.D. Oh. Sep. 25, 2020) (that plaintiffs had "exchanged written discovery and relevant information, engaged in further independent investigation, confirmed damages calculations with a third-party expert, and conducted additional legal research regarding the claims and defenses in the lawsuits" militated in favor of approving a class settlement).

Additionally, the settlement was reached only with the assistance of mediator Robert A. Meyer of JAMS Alternative Dispute Resolution, an experienced and well-respected mediator. The negotiations were unquestionably conducted at arms' length. Thus, the Rule 23 "arms' length" and the *UAW* "lack of fraud or collusion" factor both weigh in favor of final approval. *See generally Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties").

2. **The Rule 23 Substantive Factors Favor Approval**

Fed. R. Civ. P. 23(e)(2)(C)-(D) prescribe the factors relevant to determining whether a proposed Settlement is substantively adequate: the costs and risk of trial and appeal, the method of claim distribution, the terms of attorneys' fees, and whether class members are treated equitably vis-à-vis each other.

Plaintiffs believe the Agreement is beneficial to the Class for several reasons, as can be seen between a comparison of the likelihood of ultimate success and the relief secured through the settlement. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 2016 WL 5338012 (N.D. Oh. Sep. 23, 2016) (analyzing the fairness of a proposed settlement by comparing the benefits provided by the settlement to the damages potentially available at trial in light of the odds of success); *see generally In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) ("The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured."); *Cook*, 2020 U.S. Dist. LEXIS 111956, at *19-20 (explaining that "courts should estimate the potential recovery if ultimately successful versus the risks of losing outright, and determine whether the relief provided comports therewith").

The complexity, expense and duration of the litigation all weigh heavily in favor of final approval. While Plaintiffs strongly believe in the merits of their case, they also understand that Defendants will assert a number of potentially case-dispositive defenses including consent-based defenses, opt-outs handled within a reasonable amount of time defenses, etc. Contested class certification is another hurdle that would have to be met. Plaintiffs would likely face several strong legal defenses and difficulties in demonstrating commonality, and predominance. Such defenses, if successful, could drastically decrease or eliminate any recovery for Plaintiffs and putative class members. Given the complexity of the issues and the amount in controversy, the defeated party would

likely appeal any decision on either certification or merits. Given these risks, the value of the Settlement—at $70 per class member—is significant and impressive compared to other TCPA class settlements. *See Charvat v. Valente, No.* 12:5746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) (average award of $22.17 per member with each call valued at between $7.41 and $8.42); *Gehrich v. Chase Bank, N.A.*, 316 F.R.D. 215, 227-28 (N.D. Ill. 2016) (award of $52.50 per member); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ("Although thirty dollars per claimant 'falls on the lower end of the scale,' it is nonetheless 'within the range of recoveries' in TCPA class actions."); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (average award of $39.66 per member); *Wilkins v. HSBC Bank Nevada, N.A.*, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (approving settlement of $2.95 per class member); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of settlements and approving $20 to $40 per member); *Mahoney v. TT of Pine Ridge, Inc.*, 2017 WL 9472860, at *7 (S.D. Fla. Nov. 17, 2017) (approving claims made settlement whether claimants had options of "$4.00 cash award or a $15.00 voucher" and stating "the Court agrees with the Parties that '[t]he proposed structure maximizes the total amount available to the Settlement Class while simultaneously considering Defendant's immediate ability to pay the class', and therefore the recovery by claimants is fair, adequate, and reasonable."); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (approving settlement of $13.75 per class member.). Given the risks, costs, and potential delays inherent in litigating this class action to judgment, this factor weighs heavily in favor of final approval.

While Plaintiffs are confident in the strength of their claims, they are also pragmatic in their awareness of the various defenses available to Defendant, as well as the risks inherent to continued litigation. Defendant consistently denied the allegations raised by Plaintiffs and made clear at the outset that it would vigorously defend the case. Through the Settlement, Plaintiffs and Class Members

gain significant benefits without having to face further risk of not receiving any relief at all. This weighs in favor of final approval. Further, the Notice to which the Parties agree is robust and comprehensive. Defendants agreed to send individual Notice by direct email on two separate occasions, and by text message on two separate occasions, thus providing significant assurance that Class Members will receive Notice. *See Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519, at *18 (S.D. Fla. Nov. 9, 2015) (robust notice plan is evidence terms of settlement are fair and reasonable).

Next, the "method of processing class-member claims" is simplicity itself: Class members must simply fill a claim form, attest to the information and send the Claim form back or simply fill out the claim form on the Settlement Website. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2019 WL 3773737, at *15 (N.D. Oh. Aug. 12, 2019) (approving claim form requiring class members to fill address and contact information, the location of the Sonic location where they made their purchase, and the last four digits of the payment card number they used to make the purchase and whether the fraud occurred before February 28, 2018).

Further, the terms of the attorneys' fees award weighs in favor of approval of the proposed Settlement. See Fed. R. Civ. P. 23(e)(2)(C)(iii). The analysis here is "distinct from the Rule 23(h)" analysis, which addresses whether the attorneys' fees amount is reasonable on its own terms, and "instead addresses if and how the attorneys' fees impacted the terms of the Settlement." *Cook*, 2020 U.S. Dist. LEXIS 111956, at *24. Here, the attorneys' fees amount did not impact the substantive Settlement terms at all—indeed, the parties did not even discuss attorneys' fees until after all other Settlement terms were finalized. Shamis Decl. at ¶ 20. As such, Rule 23(e)(2)(C)(iii) favors approval of the proposed Settlement.

Lastly, objections to the settlement and reaction of the Class are important factors to consider. Here, the reaction of the class has been overwhelmingly positive. There have been no objections and only two exclusions out of a Class of over 63,000. The Class has spoken and overwhelmingly approves the Settlement. This strongly weighs in favor of approving the Settlement. Indeed, a "certain number of objections [and opt-outs]" are expected and even a low number is evidence that a proposed settlement is fair and reasonable. *See In re Skechers Toning Shoe Prods. Liab. Litig.*, 2013 WL 2010702, at * 7 (W.D. Ken. May 13, 2013). All the more so here, where there were no objections at all. *See Amos v. PPG Indus.*, No. 2:05-cv-70, 2019 WL 3889621, at *10 (S.D. Oh. Aug. 16, 2019) ("[N]o objections were filed, which creates the inference that all or most of the class members had no concerns about the proposed settlement. This positive response weighs in favor of approving the settlement.").

As such, all the Rule 23(e)(2)(C)-(D) factors militate in favor of final approval.

### 3. The Remaining UAW Factors Favor Approval

The UAW factors that are independent of the Rule 23 factors—i.e., the opinions of class counsel and the public interest, *see* 497 F.3d at 631—also support approval of the proposed Agreement. Class Counsel possess extensive knowledge of TCPA litigation, as well as the relative strengths and weaknesses of the underlying claims, and it is their reasoned judgment that the proposed Settlement is in the best interests of the Class. Shamis Decl. at ¶¶ 9-13, 29; *see also Brent v. Midland Funding, LLC*, 2011 WL 3862363, at *18 (N.D. Oh. Sep. 1, 2011) ("The Court gives great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of the settlement"); *see also See Greco v. Ginn Dev. Co., LLC*, 635 Fed. Appx. 628, 632 (11th Cir. 2015) (absent evidence of collusion or fraud, a court "should be hesitant to substitute its own judgment for that of counsel") (quotation omitted). Moreover, "settlement fosters the goals of certainty, finality and

economy, which lie at the heart of our general preference for settlement of class actions." *Berry v. School Dist.*, 184 F.R.D. 93, 106 (W.D. Mich. 1998). And because of the valuable compensatory relief secured, the proposed Settlement "does its best to ensure that Defendants can continue to provide valuable service to Class Members in an atmosphere that will foster trust and confidence." *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 372 (S.D. Oh. 1990).

This Court should grant final approval of this Settlement because it: (1) was the result of several months of settlement negotiations between the parties after several years of litigation; (2) was after Class Counsel received information from Defendant regarding the class data; (3) provides for class certification; and (4) creates a substantial recovery for Plaintiffs and all the Class Members.

Class Counsel has submitted a motion for attorneys' fees in the amount of $1,107.295, and a $10,000 Service Award for each of the Class Representatives, totaling $20,000 in Service Awards. Defendants generally agreed to these amounts within the Settlement Agreement. Class Counsel had expended substantial time and efforts representing the Class in this matter. Class Counsel will continue to expend time working on behalf of the Class to answer Class Members' questions about the Settlement and in ensuring they receive their claimed Settlement benefits. *Id*.

## CONCLUSION

Plaintiffs respectfully request the Court grant their motion for final approval of class action settlement and enter an order that includes the content of proposed order attached as **Exhibit C** hereto.

Dated: June 2, 2025

Respectfully Submitted,

By: */s/ Andrew Shamis*
**Shamis & Gentile, P.A.**
Andrew J. Shamis, Esq. (trial attorney)
ashamis@shamisgentile.com
Ohio Bar No. 100846

14 NE 1st Ave., Suite 705<br>
Miami, Florida 33132<br>
Telephone: (305) 479-2299<br>
Facsimile: 786-623-0915

*Counsel for Plaintiffs and the class*

## CERTIFICATE OF SERVICE

I, Andrew Shamis, hereby certify that on June 2, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

By: */s/ Andrew Shamis*
Andrew J. Shamis, Esq.